Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
Nicholas A. Roethlisberger (SBN 280497)
nroethlisberger@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350
Fax: (415) 367-1539

Maeve L. O'Connor (*pro hac vice*)
moconnor@debevoise.com
Elliot Greenfield (*pro hac vice*)
egreenfield@debevoise.com
Matthew J. Sorensen (*pro hac vice*)
mjsorensen@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendants
VMWARE, INC., PATRICK P. GELSINGER and ZANE ROWE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>VMWARE, INC., PATRICK P. GELSINGER, and ZANE ROWE,<br><br>    Defendants. | Case No.: 5:20-cv-02182-EJD<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:  April 22, 2021<br>Time:  9:00 a.m.<br>Judge:  Honorable Edward J. Davila<br>Ctrm.:  4 |

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...........................................................................................................1

**ARGUMENT** ...................................................................................................................................3

I.      PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(b)............................3

        A.      Plaintiff Fails to Plead an Actionable Misstatement or Omission. .......................3

                1.      VMware's Historical Statements Concerning Its Backlog and Revenue Recognition Were Not False or Misleading...............................................3

                2.      Defendants' Forward-Looking Statements About VMware's Future Performance Are Protected by the PSLRA's Safe Harbor Provision. .......4

                3.      Defendants' Statements of Corporate Optimism and Puffery Are Not Actionable. ...............................................................................................5

        B.      Plaintiff Fails to Plead Scienter.............................................................................6

                1.      Plaintiff's Conclusory Assertions Are Insufficient to Plead Scienter........7

                2.      Plaintiff's Allegations Based on Stock Sales Do Not Support an Inference of Scienter. ...............................................................................7

                3.      Plaintiff's Remaining Allegations Do Not Support an Inference of Scienter. ...................................................................................................8

        C.      Plaintiff Fails to Plead Loss Causation. ...............................................................10

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20A. ..........................10

III.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY. ...........................12

**CONCLUSION** ..............................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Azar v. Yelp, Inc.*,
　No. 18-cv-0400, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...........................................7

*Berson v. Applied Signal Tech., Inc.*,
　527 F.3d 982 (9th Cir. 2008) ........................................................................................4, 5

*Brody v. Transitional Hosps. Corp.*,
　280 F.3d 997 (9th Cir. 2002) ..............................................................................................11

*Browning v. Amyris, Inc.*,
　No. 13-cv-2209, 2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ...........................................8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
　632 F.3d 751 (1st Cir. 2011)................................................................................................8

*In re Daou Sys., Inc. Sec. Litig.*,
　411 F.3d 1006 (9th Cir. 2005) ........................................................................................7, 9

*In re Immersion Corp. Sec. Litig.*,
　No. 09-cv-4073, 2011 WL 871650 (N.D. Cal. Mar. 11, 2011) ............................................8

*In re MRV Commc'ns., Inc. Derivative Litig.*,
　No. 08-cv-3800, 2010 WL 5313442 (C.D. Cal. Dec. 27, 2010)...........................................9

*In re Quality Sys., Inc. Sec. Litig.*,
　865 F.3d 1130 (9th Cir. 2017) .............................................................................................6

*In re Refco, Inc. Sec. Litig.*,
　503 F. Supp. 2d 611 (S.D.N.Y. 2007).................................................................................11

*In re VeriFone Sec. Litig.*,
　11 F.3d 865 (9th Cir. 1993) .................................................................................................4

*KMIEC v. Powerwave Techs., Inc.*,
　No. 12-cv-0222, 2013 WL 10106769 (C.D. Cal. Oct. 23, 2013) .........................................9

*Loos v. Immersion Corp.*,
　762 F.3d 880 (9th Cir. 2014) .............................................................................................10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
　540 F.3d 1049 (9th Cir. 2008) .......................................................................................4, 10

*Meyer v. Greene*,
　710 F.3d 1189 (11th Cir. 2013) .........................................................................................10

*Neubronner v. Milken*,
　6 F.3d 666 (9th Cir. 1993) .................................................................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
No. 10-cv-3451, 2012 WL 1868874 (N.D. Cal. May 22, 2012)...............................................8

*Rodriguez v. Gigamon Inc.*,
325 F. Supp. 3d 1041 (N.D. Cal. 2018) ...........................................................................6, 7

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ..............................................................................................9

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
No. 18-cv-6720, 2020 WL 5408056 (N.D. Cal. Sept. 9, 2020)....................................10, 11

*Shaw v. Digital Equip. Corp.*,
82 F.3d 1194 (1st Cir. 1996) ...............................................................................................8

*Welgus v. TriNet Grp., Inc.*,
No. 15-cv-3625, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017)...............................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ........................................................................................6, 7, 9

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A).................................................................................................7

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the AC.[1]

### PRELIMINARY STATEMENT

Plaintiff's Opposition fails to address the fundamental deficiencies in the AC and does not substantively respond to Defendants' arguments.  Plaintiff is unable to identify anything false or misleading about VMware's public statements concerning its backlog or any facts to support its assertion that VMware's backlog was artificially inflated.  Nor does Plaintiff make any attempt to explain how VMware's backlog possibly could have concealed operational weaknesses when the amount of backlog was publicly disclosed each quarter.  Indeed, Plaintiff's own allegations demonstrate that investors were able to readily determine whether reported revenue in a given quarter resulted from new sales or a decrease in backlog.

Instead, the Opposition relies on repeated assertions – unsupported by *any* factual allegations – that VMware management "deliberately inflated" backlog, "deceptively deferred revenue," operated a "slush fund" and engaged in "cookie jar accounting."  (Opp'n 1-5, 7-10, 12, 14-15, 19, 21-22.)  Plaintiff makes no attempt to support these accusations with facts, citing only to paragraphs of the AC that are themselves entirely conclusory.  These conclusory assertions are entitled to no weight on a motion to dismiss, particularly in light of the stringent pleading requirements of Rule 9(b) and the PSLRA.

Setting aside the Opposition's unsupported accusations, the facts alleged in the AC show only that VMware's backlog was high during a period of high demand and, not surprisingly, declined when the Company experienced less demand.  A decline in backlog does not imply that it had been artificially inflated in earlier periods.  Those allegations fall far short of pleading a false or misleading statement, scienter or loss causation.

*First*, Plaintiff fails to identify a false or misleading statement concerning VMware's backlog.  Plaintiff abandons its allegations that VMware should have recognized revenue for

---

[1] Capitalized terms not defined herein have the same meaning as in the Memorandum of Points and Authorities in Support of the Motion to Dismiss ("Mem.").

sales in the quarter they were made, rather than when the software was actually delivered as required by GAAP. Plaintiff also abandons its claim that VMware failed to warn investors that backlog was not indicative of future results, as VMware included that precise warning in its SEC filings each quarter. As to Defendants' alleged statements – all of which are (*i*) accurate statements of historical fact concerning backlog and revenue, (*ii*) forward-looking statements protected by the PSLRA's "safe harbor" provision or (*iii*) inactionable expressions of corporate optimism or "puffery" – Plaintiff relies on conclusory assertions that backlog was "inflated" and revenue was "deceptively deferred," without citation to factual allegations in support.

*Second*, the Opposition points to no particularized facts alleged in the AC that would give rise to a "strong inference" of scienter as required by the PSLRA. Plaintiff's repeated assertions that VMware inflated backlog to conceal operational problems is entirely conclusory, unsupported by particularized factual allegations and inconsistent with the explicit disclosure made by VMware in its SEC filings each quarter. Unable to identify any factual allegations supporting an inference of scienter, Plaintiff falls back on various other allegations about stock sales, supposed GAAP violations and the resignation of a non-defendant – none of which are even suggestive of fraud, much less come close to satisfying the stringent pleading standard of the PSLRA.

*Third*, Plaintiff simply ignores Ninth Circuit authority holding that disappointing financial results and an inquiry from the SEC are not "corrective disclosures" that reveal any fraud and therefore are insufficient to plead loss causation.

Plaintiff's claim against Mr. Gelsinger under Section 20A fails because Plaintiff does not plead an underlying violation of Section 10(b) and for the independent reason that Plaintiff's purchase of VMware stock – four days after Mr. Gelsinger's sale and at a lower price – was not "contemporaneous" with that sale.

The Court should dismiss the AC in its entirety.

/ / /

/ / /

## ARGUMENT

**I.     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(b).**

    **A.     Plaintiff Fails to Plead an Actionable Misstatement or Omission.**

        The Opposition confirms Plaintiff's failure to plead an actionable misstatement or omission, as the only statements in the AC that Plaintiff cites are (*i*) accurate statements of historical fact concerning VMware's backlog and revenue, (*ii*) forward-looking statements about the Company's future performance protected by the PSLRA's safe harbor provision or (*iii*) inactionable corporate "puffery."  (Opp'n 7-14; Mem. 7-11.)

           **1.     VMware's Historical Statements Concerning Its Backlog and Revenue Recognition Were Not False or Misleading.**

        Plaintiff does not dispute that VMware's reporting of its backlog and revenue were accurate statements of historical fact, and Plaintiff's assertions that those statements were misleading are unsupported by fact, law or common sense.  (Opp'n 7-10; Mem. 7-9.)  In particular, Plaintiff makes no attempt to defend its core theory that VMware's backlog concealed revenue weakness in fiscal year 2020.  That theory makes no sense, as the amount of backlog was publicly disclosed each quarter, allowing investors to easily determine whether reported revenue in a given quarter resulted from new sales alone or a combination of new sales and a decrease in backlog.  (Mem. 1, 5.)  Indeed, Plaintiff admits that financial analysts did just that, "contemporaneously" noting that "a good portion of 1QF20 product billings were actually 4QF19 deals that got invoiced in 1QF20."  (Opp'n 6 (quoting AC ¶ 48).)  Nor does Plaintiff defend its repeated allegation that VMware should have recognized revenue for sales of software when those sales were "secured," rather than – as ASC 606 requires – when the software license was delivered or shipped to the customer or end user.  (Mem. 8.)  And, confronted with VMware's statement in each of its quarterly SEC filings that the amount of backlog is not "indicative of future sales or revenue," Plaintiff now abandons its claim that VMware failed to disclose that backlog was "not indicative of future results."  (Mem. 8; AC ¶ 39.)

/ / /

Plaintiff relies entirely on conclusory assertions that VMware management "deliberately inflated" backlog and "deceptively deferred revenue" (Opp'n 7-15) and, rather than attempting to support these accusations with facts, cites only to paragraphs of the AC that are themselves entirely conclusory.  (*See*, *e.g.*, AC ¶¶ 2-3, 22.)  These conclusory assertions are entitled to no weight, particularly in light of the stringent pleading requirements of Rule 9(b) and the PSLRA. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) ("[T]his Circuit has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are per se false based on the plaintiff's allegations of fraud generally."); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  (Mem. 6-7.)

Plaintiff's heavy reliance on the Ninth Circuit's decision in *Berson v. Applied Signal Technology Inc.*, 527 F.3d 982 (9th Cir. 2008), is misplaced, as that decision has no bearing on the allegations in this case.  (Opp'n 7-8, 10, 12.)  In *Berson*, the plaintiff alleged with particularity, based on statements from confidential witnesses, that the defendant had "touted" its backlog while misleadingly including large amounts that were unlikely ever to be recognized as revenue because the customers had issued "stop-work orders."  527 F.3d at 984-86 & n.1. Here, by contrast, Plaintiff alleges no facts indicating that VMware "touted" its backlog or that its reported backlog included any revenue that would not be recognized in the next financial quarter.  VMware accurately disclosed the amount and composition of its backlog each quarter, and it expressly cautioned investors that, among other things, the amount of backlog "will fluctuate from period to period" and is not "indicative of future sales or revenue."  (Mem. 7-9.)

### 2. Defendants' Forward-Looking Statements About VMware's Future Performance Are Protected by the PSLRA's Safe Harbor Provision.

Contrary to Plaintiff's assertion, Defendants never suggested that "backlog is forward looking" or "subject to the PSLRA safe harbor."  (Opp'n 10.)  As the Ninth Circuit correctly concluded in *Berson*, backlog is "a snapshot of how much work the company has under contract right now," not a "projection" of earnings or statement about "future economic performance."

527 F.3d at 990.   VMware described backlog in substantially identical terms in its SEC filings, explaining that backlog "is comprised of unfulfilled purchase orders or unfulfilled executed agreements received at the end of a given period," and is not "indicative of future sales or revenue." (Mem. 8-9.)  Indeed, the Ninth Circuit's recognition in *Berson* that backlog is not indicative of future results undermines, rather than supports, Plaintiff's theory that VMware's backlog misled investors about the Company's future performance.

With respect to the forward-looking statements identified by Defendants, Plaintiff does not dispute that they are predictions of future financial performance and simply notes that some of the cited paragraphs of the AC "also contain representations of current fact." (Opp'n 11; Mem. 9-10.)  To the extent that certain paragraphs in the AC include both forward-looking statements and statements of present fact, Plaintiff does not explain why the statements of present fact are false or misleading.  Nor does Plaintiff challenge the meaningful cautionary language accompanying VMware's forward-looking statements.  (Opp'n 12; Mem. 10.) Instead, Plaintiff again relies on conclusory assertions that the cautionary language was not adequate because "Defendants had already deceptively deferred revenue" or had "already artificially inflated backlog" – assertions unsupported by any factual allegations.  (Opp'n 12.)

### 3. Defendants' Statements of Corporate Optimism and Puffery Are Not Actionable.

The remaining statements quoted in the AC clearly are inactionable puffery – statements of corporate optimism – and Plaintiff's half-hearted assertion that Defendants have taken those statements "out of context" is without merit.  (AC ¶¶ 64, 70, 73, 88-89, 91, 93-96, 103-04, 107, 114-16, 119-121; Opp'n 13-14.)  These statements include:

- "Our execution is good and the market for technology is strong."
- "We're comfortable with the SaaS mix and the hybrid cloud mix that we're growing here at VMware."
- The Company is "very well positioned to execute on our plans for the full year."
- "Overall, we continue to be optimistic."

/ / /

- "[W]e're comfortable with what we're seeing early and feel good about our forecast for the year."
- "[W]e are pleased with our strong financial performance in Q2."
- "Q3 was another solid quarter for VMware, and we're pleased with our results."
- "So we feel really good about the pipeline heading into the fourth quarter and the solid guide for the year."

(AC ¶¶ 64, 70, 89, 93, 94, 103, 114, 120.)  Such statements are not actionable under the securities laws (Mem. 11), and the cases that Plaintiff cites are not to the contrary.  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (holding that statements regarding company's pipeline "went beyond 'feel good' optimistic statements" where they provided a "concrete description" of the pipeline, including that "the number and type of prospective sales in the pipeline was unchanged, or even growing, compared to previous quarters"); *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1046, 1055 (N.D. Cal. 2018) (holding that defendants went beyond "just providing subjective or emotive descriptions" by specifically stating that the company was "on track to deliver . . . accelerating top-line revenue growth and expanding profitability").

In contending that certain of Defendants' statements are "factual representations" rather than puffery, Plaintiff points to paragraphs that Defendants never characterized as puffery in the first place.  (Opp'n 13 (citing AC ¶¶ 3-4, 21, 24-26, 49, 139).)  Nor would it have made sense to do so as none of the paragraphs cited by Plaintiff even includes any alleged statements by Defendants.

### B.   Plaintiff Fails to Plead Scienter.

Plaintiff's response regarding scienter highlights the complete lack of particularized factual allegations supporting any inference of scienter, much less the "strong inference" of scienter required by the PSLRA.  (Opp'n 15-21; Mem. 11-15.)  Plaintiff fails to identify any factual allegations – as opposed to conclusory assertions – indicating that Defendants "made false or misleading statements either intentionally or with deliberate recklessness."

/ / /

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005)).

### 1. Plaintiff's Conclusory Assertions Are Insufficient to Plead Scienter.

Strikingly, although Plaintiff repeatedly asserts that VMware management "deceptively deferred revenue" and "deliberately inflated" backlog in order to conceal problems that allegedly materialized in the next fiscal year, Plaintiff is unable to cite *any* particularized facts supporting those assertions. (Opp'n 15.) Plaintiff's argument on this point is limited to *two sentences*, which are entirely conclusory and cite to paragraphs of the AC that are equally conclusory. (Opp'n 15 (citing AC ¶¶ 2, 23-24, 27, 30-31).) Plaintiff's conclusory assertions and accusations come nowhere close to meeting the PSLRA's stringent pleading standard for scienter, which requires Plaintiff to "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A).

### 2. Plaintiff's Allegations Based on Stock Sales Do Not Support an Inference of Scienter.

Unable to identify any particularized facts supporting an inference of scienter, Plaintiff quickly moves on to its allegations regarding stock sales by Mr. Gelsinger and Mr. Rowe, but that argument fares no better. (Opp'n 16-19.) Plaintiff does not contest that five of Mr. Gelsinger's six sales and ten of Mr. Rowe's twelve sales were made pursuant to Section 10b5-1 plans, which definitively rebuts any inference of scienter at the pleading stage. (Mem. 14-15.) Plaintiff's assertion that it is "premature" for the Court to consider the Section 10b5-1 plans (Opp'n 18) is "out of step with the weight of authority in the Ninth Circuit" which requires courts to "consider plausible explanations for the defendants' conduct when assessing scienter." *Azar v. Yelp, Inc.*, No. 18-cv-0400, 2018 WL 6182756, at *4 (N.D. Cal. Nov. 27, 2018) (internal quotations omitted); *see also Rodriguez*, 325 F. Supp. 3d at 1056 (holding scienter not adequately pleaded based on stock sales and noting that "automatic sales made pursuant to Rule 10b5-1 plans do not support a strong inference of scienter"). And Plaintiff fails to show that the few remaining sales are suspicious, as VMware's stock price continued to increase in the weeks

and months after those sales, rebutting any inference that they were calculated to maximize personal benefit.  (Mem. 14-15; Opp'n 18.)

Plaintiff's focus on the overall value of the stock sold by Defendants and other VMware employees (Opp'n 16-17) is misguided because, "[u]nder Ninth Circuit law, the absolute value of the stock sale does not on its own give rise to an inference of scienter," *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-cv-3451, 2012 WL 1868874, at *22 (N.D. Cal. May 22, 2012), and stock sales by other VMware employees are not relevant because no claims are alleged against them and there are no allegations regarding their prior sales history.  *See Welgus v. TriNet Grp., Inc.*, No. 15-cv-3625, 2017 WL 6466264, at *18 (N.D. Cal. Dec. 18, 2017) (allegations of stock sales of non-defendants did not support an inference of scienter); *Browning v. Amyris, Inc.*, No. 13-cv-2209, 2014 WL 1285175, at *17 n.5 (N.D. Cal. Mar. 24, 2014) (same); *In re Immersion Corp. Sec. Litig.*, No. 09-cv-4073, 2011 WL 871650, at *7 n.6 (N.D. Cal. Mar. 11, 2011) (same).  Plaintiff cites no authority from this Circuit to the contrary.[2]

### 3. Plaintiff's Remaining Allegations Do Not Support an Inference of Scienter.

Plaintiff also points to an assortment of other allegations – Mr. Gelsinger and Mr. Rowe's status as officers of the Company, alleged GAAP violations and the resignation of a non-defendant officer – none of which give rise to a strong inference of scienter.

*First*, Plaintiff's reliance on Mr. Gelsinger's and Mr. Rowe's positions as CEO and CFO of the Company to suggest that they must have known of allegedly improper backlog

---

[2] Plaintiff cites to a footnote in a First Circuit decision, but even that court rejected the plaintiff's allegations of the "bare facts" of sales by non-defendant employees because the plaintiff – like Plaintiff here – "does not provide any information about the trades indicating that they were unusual." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 762 n.5 (1st Cir. 2011).  That decision cites an earlier First Circuit decision, which noted sales by non-defendants but found them to be of "marginal" relevance. *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1224 (1st Cir. 1996).

accounting fails because Plaintiff does not allege facts supporting any purportedly improper accounting. (Opp'n 19.) Moreover, "[w]here a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

*Second*, Plaintiff's reliance on alleged GAAP violations similarly fails because Plaintiff does not allege any such violation, much less that Mr. Gelsinger or Mr. Rowe was aware of it. (Opp'n 19-20.) Furthermore, the mere publication of "inaccurate accounting figures" cannot establish an inference of scienter "even when in violation of GAAP," unless such a violation is "significant" and pleaded "with particularity." *Daou*, 411 F.3d at 1022. Here again, Plaintiff offers only conclusory assertions that "backlog numbers were deliberately inflated at the direction of management" (Opp'n 15) and fails to identify *any* particularized factual allegations supporting the existence or extent of any purported backlog inflation scheme. Plaintiff's authority is easily distinguished on this basis. *See In re MRV Commc'ns., Inc. Derivative Litig.*, No. 08-cv-3800, 2010 WL 5313442, at *7-8 (C.D. Cal. Dec. 27, 2010) (scienter adequately pleaded where each of the defendants "approved and documented backdated stock options," withheld relevant information from auditors and "received backdated stock options" themselves); *KMIEC v. Powerwave Techs., Inc.*, No. 12-cv-0222, 2013 WL 10106769, at *3-4 (C.D. Cal. Oct. 23, 2013) (scienter adequately pleaded where plaintiffs alleged, based on statements by confidential witnesses, that defendants directly approved phony end-of-quarter bulk orders in order to artificially inflate revenue).

*Third*, the resignation of a non-party officer (Opp'n 20) does not support an inference of scienter as to the Defendants, particularly where Plaintiff does not "allege sufficient information to differentiate between a suspicious change in personnel and a benign one." *Zucco Partners*, 552 F.3d at 1002. Plaintiff alleges nothing about the non-party officer's resignation other than its timing. (AC ¶¶ 6, 141.)

/ / /

/ / /

### C.    Plaintiff Fails to Plead Loss Causation.

Plaintiff ignores Ninth Circuit authority making clear that neither disappointing financial results nor an SEC request for information constitutes a "corrective disclosure" sufficient to plead loss causation.  (Opp'n 21-23; Mem. 15-16.)  Plaintiff's failure to plead loss causation is a separate and independent basis for dismissal.

*First*, Plaintiff ignores the Ninth Circuit's clear holding in *Loos v. Immersion Corp.* that "disappointing financial results" are "insufficient to establish loss causation as a matter of law." 762 F.3d 880, 887 (9th Cir. 2014).  Instead, Plaintiff must demonstrate that the market "learned of and reacted to *the fraud*." *Id.* (quoting *Metzler*, 540 F.3d at 1063) (alteration omitted) (emphasis added).  (Mem. 15-16.)  Contrary to Plaintiff's suggestions, VMware's allegedly disappointing financial results and declining backlog in fiscal year 2020 does not imply that backlog had been "inflated" in earlier quarters and therefore does not reveal any "fraud." (Opp'n 22.)

*Second*, Plaintiff fails to address the Ninth Circuit's holding in *Loos* that the "announcement of an investigation does not 'reveal' fraudulent practices to the market" and therefore is also insufficient to plead loss causation.  762 F.3d at 890.  (Opp'n 23; Mem. 16.) "The announcement of an investigation reveals just that – an investigation – and nothing more." *Loos*, 762 F.3d at 890 (quoting *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013)). "Consequently, any decline in a corporation's share price following the announcement of an investigation can only be attributed to market speculation about whether fraud has occurred. This type of speculation cannot form the basis of a viable loss causation theory." *Id.*

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20A.

Plaintiff's Section 20A claim against Mr. Gelsinger should be dismissed because Plaintiff fails to plead a "predicate violation of the securities laws." *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, No. 18-cv-6720, 2020 WL 5408056, at *14 (N.D. Cal. Sept. 9, 2020).

The Section 20A claim should also be dismissed for the separate and independent reason that Plaintiff does not allege a purchase of VMware stock that is "contemporaneous" with a sale by Mr. Gelsinger.  *Id.* Plaintiff purchased VMware stock four days after Mr. Gelsinger's March

1, 2019 sale, at a lower price, and therefore could not possibly have traded with Mr. Gelsinger or been harmed by his trading. (Mem. 16-17.)

Although the Ninth Circuit has not precisely defined the term "contemporaneous," it has clearly articulated the purpose of the "contemporaneous" requirement:  to ensure that "only private parties who have traded with [an insider] at an unfair advantage will be able to maintain insider trading claims." *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).  The "premise" of the requirement is "that there is a need to filter out plaintiffs who could not possibly have traded with the insider, given the manner in which public trades are transacted." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1002 (9th Cir. 2002).  Accordingly, "a shareholder must have traded *with an insider* or have traded *at about the same time as an insider* to be harmed by the insider's trading." *Id.* at 1005 (emphasis added).[3]  Those district courts that consider "contemporaneous" trading to be the same day (or the day after) best reflect the Ninth Circuit's strong guidance on this point (Mem. 16-17), and those that treat trades four or five days apart (or even longer) as "contemporaneous" are inconsistent with it. (Opp'n 24.)

Furthermore, the fact that Plaintiff purchased VMware stock at a price *lower* than Mr. Gelsinger's sale price forecloses any argument that Plaintiff satisfies the "contemporaneous" trading requirement. (Mem. 17.)  Plaintiff's assertion that the court in *Align Technology* did not find this fact "determinative" is incorrect. (Opp'n 24.)  "[C]ourts have consistently held that shares purchased below the defendant's sale price *cannot* satisfy the contemporaneity requirement, because it is *impossible* that those trades occurred with defendant at an unfair advantage." *Align Tech.*, 2020 WL 5408056, at *15 (emphasis added).

---

[3] That the plaintiffs in *Neubronner* and *Brody* asserted insider trading claims under Section 10(b) rather than Section 20A has no bearing on the analysis. (Opp'n 23 n.8.) Section 20A "creates a private right of action to enforce the existing prohibition on insider trading under § 10(b) caselaw, and does not create a new definition of insider trading." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 665 (S.D.N.Y. 2007).

**III.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY.**

Plaintiff does not dispute that the Section 20(a) claim for control person liability must be dismissed if the underlying Section 10(b) claim is dismissed.  (Opp'n 23 n.7; Mem. 17-18.)

### CONCLUSION

For the reasons stated above and in Defendants' opening brief, the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

Dated: March 1, 2021

KWUN BHANSALI LAZARUS LLP
DEBEVOISE & PLIMPTON LLP

By: */s/ Asim M. Bhansali*

Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
Nicholas A. Roethlisberger (SBN 280497)
nroethlisberger@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350
Fax: (415) 367-1539

Maeve L. O'Connor (*pro hac vice*)
moconnor@debevoise.com
Elliot Greenfield (*pro hac vice*)
egreenfield@debevoise.com
Matthew J. Sorensen (*pro hac vice*)
mjsorensen@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendants
VMWARE, INC., PATRICK P. GELSINGER
and ZANE ROWE