Asim M. Bhansali (SBN 194925)
*abhansali@kblfirm.com*
Nicholas A. Roethlisberger (SBN 280497)
*nroethlisberger@kblfirm.com*
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
(415) 630-2350

Maeve L. O'Connor (*pro hac vice*)
*mloconnor@debevoise.com*
Elliot Greenfield (*pro hac vice*)
*egreenfield@debevoise.com*
Matthew J. Sorensen (*pro hac vice*)
*mjsorensen@debevoise.com*
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

Attorneys for Defendants
VMWARE, INC., PATRICK P. GELSINGER and ZANE ROWE

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>VMWARE, INC., PATRICK P. GELSINGER, and ZANE ROWE,<br><br>    Defendants. | Case No.: 5:20-cv-02182-EJD<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:  March 17, 2022<br>Time:  9:00 a.m.<br>Judge:  Hon. Edward J. Davila<br>Ctrm.:  4 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT.................................................................................................................................2

I.     PLAINTIFF'S NEW ALLEGATIONS DO NOT SUPPORT A SECURITIES FRAUD CLAIM. ................................................................................................................2

     A.     Routine Business Meetings Do Not Support Plaintiff's Fraud Claim. ..................2

     B.     Computerized Sales Records Do Not Support Plaintiff's Fraud Claim.................4

II.     THE COURT ALREADY HELD THAT PLAINTIFF'S OTHER ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM UNDER SECTION 10(b). ............................................................................................................4

     A.     Plaintiff Fails to Plead an Actionable Misstatement or Omission. ......................4

          1.     VMware's Historical Statements of Fact Were Not False or Misleading..................................................................................................5

          2.     Defendants' Forward-Looking Statements About VMware's Future Performance Are Protected by the PSLRA's Safe Harbor Provision. ..................................................................................................6

          3.     Defendants' Statements of Corporate Optimism and Puffery Are Not Actionable. ..................................................................................7

     B.     Plaintiff Fails to Plead Scienter.............................................................................7

          1.     Plaintiff's Allegations Based on Stock Sales Do Not Support an Inference of Scienter. ................................................................................8

          2.     Plaintiff's Remaining Allegations Do Not Support an Inference of Scienter. ......................................................................................................9

     C.     Plaintiff Fails to Plead Loss Causation. ..............................................................10

III.     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20A. .........................11

IV.     PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY. ..........................12

V.     DISMISSAL WITH PREJUDICE IS WARRANTED...................................................12

CONCLUSION............................................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berson v. Applied Signal Technology Inc.*,
   527 F.3d 982 (9th Cir. 2008) ....................................................................................................5

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ..................................................................................................11

*DeMarco v. DepoTech Corp.*,
   149 F. Supp. 2d 1212 (S.D. Cal. 2001) ....................................................................................6

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011) ..................................................................................................12

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ................................................................................................12

*Foskaris v. Experian Info. Sols., Inc.*,
   808 F. App'x 436 (9th Cir. 2020) ...........................................................................................12

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ......................................................................................9

*HT Litig. Tr. v. Jess Rae Booth*,
   303 F. App'x 502 (9th Cir. 2008) ...........................................................................................12

*In re Daou Sys., Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ..................................................................................................7

*In re Downey Sec. Litig.*,
   No. 08-cv-3261, 2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ................................................3

*In re HI/FN, Inc. Securities Litigation*,
   No. 99-cv-4531, 2000 WL 33775286 (N.D. Cal. Aug. 9, 2000) ...............................................3

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ..................................................................................................10

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ..................................................................................................7

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ......................................................................................9

*In re Twitter, Inc. Sec. Litig*,
   506 F. Supp. 3d 867 (N.D. Cal. 2020) ......................................................................................6

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ..............................................................................................4, 9

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ...............................................................................................10

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ...................................................................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  No. 10-cv-03451, 2012 WL 1868874 (N.D. Cal. May 22, 2012) ......................................3, 4

*Rodriguez v. Gigamon Inc.*,
  325 F. Supp. 3d 1041 (N.D. Cal. 2018) .................................................................................7, 9

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ...............................................................................................10

*Scheller v. Nutanix, Inc.*,
  450 F. Supp. 3d 1024 (N.D. Cal. 2020) ..................................................................................3

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
  485 F. Supp. 3d 1113 (N.D. Cal. 2020) .................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..............................................................................................................8

*Washtenaw Cty. Emps. Ret. Sys. v. Celera Corp.*,
  No. 10-cv-02604, 2012 WL 3835078 (N.D. Cal. Sept. 4, 2012)...........................................10

*Wozniak v. Align Tech, Inc.*,
  No. 09-cv-3671, 2011 WL 2269418 (N.D. Cal. June 8, 2011) ..............................................3

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...............................................................................................7

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)...........................................................................................................8

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the SAC.[1]

**PRELIMINARY STATEMENT**

Plaintiff's Opposition does not substantively respond to Defendants' arguments regarding the inadequacy of the SAC's new allegations. Plaintiff is unable to explain how a list of routine business meetings unaccompanied by any allegations as to what happened at those meetings – *e.g.*, what information was presented or what decisions, if any, were made – could support a claim of securities fraud. Nor does Plaintiff explain how the allegation that contracts were recorded in a computer system accessible by management is indicative of fraud, particularly in the absence of any particularized facts indicating that the system actually was used to improperly manipulate backlog.

Plaintiff also makes no attempt to explain how VMware could possibly have used backlog to conceal purported operational weaknesses when the amount of backlog was publicly disclosed each quarter. Indeed, in the Opposition, Plaintiff cites allegations showing that analysts covering VMware were able to easily determine how reported revenue was reflective of new orders versus the fulfillment of backlog.

Rather than address these core deficiencies, Plaintiff devotes the bulk of the Opposition to repeating the same conclusory assertions that VMware "deliberately inflated" its backlog to create a "slush fund" and engaged in "cookie jar accounting" – unsupported allegations that the Court already found insufficient to satisfy the stringent pleading standard of Rule 9(b) and the PSLRA. And, notwithstanding the Court's determination that statements were either forward-looking statements protected by the PSLRA's "safe harbor" provision or inactionable corporate puffery, Plaintiff repeats the same arguments the Court already rejected. With respect to scienter, Plaintiff continues to rely almost entirely on alleged stock sales, which the Court found do not give rise to the "strong inference" of scienter required by the PSLRA. As to loss

---

[1] Capitalized terms not defined herein have the same meaning as in the Memorandum of Points and Authorities in Support of the Motion to Dismiss ("Mem.").

causation, Plaintiff cannot explain how the disclosure of declining backlog indicates that it had previously been improperly inflated.

Plaintiff does not deny that its control person claims under Section 20(a) and its insider trading claim against Mr. Gelsinger under Section 20A require Plaintiff to plead an underlying violation of Section 10(b), which Plaintiff fails to do.  Plaintiff's Section 20A claim also fails for the independent reason that Plaintiff's purchase of VMware stock – four days after Mr. Gelsinger's sale and at a lower price – was not "contemporaneous" with that sale.

The Court should dismiss the SAC with prejudice and reject Plaintiff's request to amend its complaint for a third time.  The paltry new allegations in the SAC make clear that the burden on the Court and the parties of yet another amendment is not warranted.

<u>ARGUMENT</u>

**I.      PLAINTIFF'S NEW ALLEGATIONS DO NOT SUPPORT A SECURITIES FRAUD CLAIM.**

The Opposition does not address Defendants' arguments why the SAC's new allegations fail to remedy the shortcomings identified by the Court.  (Mem. 2-3, 11-12, 15-16; Opp'n 9-10.) The Court previously held that Plaintiff's core theory of improper backlog manipulation relied entirely on "conclusory statements" (Order at 12), and Plaintiff's new allegations concerning business meetings and a computerized system to track orders do not remedy that deficiency. Those new allegations are insufficient to plead an actionable misrepresentation and do nothing to support an inference of scienter.

**A.      Routine Business Meetings Do Not Support Plaintiff's Fraud Claim.**

Plaintiff does not dispute that its allegations concerning various meetings at which senior management purportedly had "an opportunity" to discuss sales and backlog say nothing whatsoever about what *actually happened* at any of those meetings.  (SAC ¶¶ 61-73; Opp'n 9-10; Mem. 11.)  The SAC includes no particularized allegations as to what information was actually presented or what decisions, if any, were made at any of the alleged meetings. Allegations that state only the dates, times and locations of meetings – without the substance – provide no support for Plaintiff's fraud claims.  Nor does the mere occurrence of routine

business meetings close in time to stock sales by Mr. Gelsinger or Mr. Rowe render those sales suspicious.  (Opp'n 16-18.)

As courts in this Circuit have consistently held, where "Plaintiff alleges only the existence of meetings, and the general topics discussed" but fails to "describe[] the contents of any of the meetings," such "vague and conclusory allegations do not give rise to an inference" of fraud "let alone a strong inference."  *Wozniak v. Align Tech, Inc.*, No. 09-cv-3671, 2011 WL 2269418, at *12 (N.D. Cal. June 8, 2011); *see also Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (dismissing complaint that "alleges that the declining pipeline and problems generating new leads were discussed at the all-hands meetings attended by both individual defendants, [but] does not provide any specific information about any particular meeting or the content of what was discussed"); *In re Downey Sec. Litig.*, No. 08-cv-3261, 2009 WL 736802, at *13 (C.D. Cal. Mar. 18, 2009) ("[V]ague and conclusory statements by [confidential witnesses] that [defendant] regularly attended meetings is not probative of scienter, particularly in the absence of additional facts, such as . . . what was discussed at those meetings.").

Plaintiff's reliance on *In re HI/FN, Inc. Securities Litigation* is misplaced because the complaint in that case did not merely allege "the dates of the meetings, locations, [and] the particular defendants who attended" but also – unlike the SAC in this case – specified "the information conveyed" at those meetings.  No. 99-cv-4531, 2000 WL 33775286, at *8 (N.D. Cal. Aug. 9, 2000).  (Opp'n 9.)  Plaintiff's allegations concerning the general topics of VMware's meetings – the Company's stock price, sales, backlog, pipeline, operations, finance and accounting, among others – add nothing because they are the type of commonplace business matters that senior executives at any company would meet to discuss.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-cv-03451, 2012 WL 1868874, at *19-20 (N.D. Cal. May 22, 2012) (holding that "attenuated inferences" drawn from defendants' attendance at routine business meetings "are insufficient to create the requisite 'cogent,' 'compelling,' and 'strong' inference of scienter required under the PSLRA").

**B.      Computerized Sales Records Do Not Support Plaintiff's Fraud Claim.**

Similarly, Plaintiff's speculation in the Opposition that VMware's "automatic booking system" was used to improperly manipulate backlog is unsupported by particularized facts and therefore insufficient to plead a misrepresentation or scienter.  (Opp'n 9-10; SAC ¶¶ 22-27; Mem. 11-12.)  That Mr. Gelsinger and Mr. Rowe had access to the Salesforce system is utterly unremarkable and does not support an inference that Mr. Gelsinger, Mr. Rowe or anyone else used it to improperly manipulate backlog.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035-36 (9th Cir. 2002) (allegations that defendant "could regularly track its sales data" held insufficient to state a claim where plaintiffs failed to "identify any internal reports of 'sales data,' much less plead, in any detail, the contents of any such report or the purported data"); *Intuitive Surgical*, 2012 WL 1868874 at *19 (allegations that defendant "had a sophisticated computer system that tracked the company's sales, product usage, and other data, and that this data was available to each Defendant" insufficient to state a claim).  Plaintiff's unsupported assertions about the timing of commissions similarly do not indicate that any improper accounting occurred and therefore do not plead a misrepresentation, much less scienter.  (Opp'n 21 (citing SAC ¶¶ 25-26, 165).)

**II.      THE COURT ALREADY HELD THAT PLAINTIFF'S OTHER ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM UNDER SECTION 10(b).**

As the Opposition makes clear, Plaintiff's attempt to plead securities fraud rests on conclusory statements and assertions that the Court has already rejected.  Aside from the generalized allegations regarding business meetings and computerized sales records discussed above, Plaintiff's allegations are unchanged from the prior complaint and fail to satisfy the PSLRA's requirement of particularized facts demonstrating an actionable misstatement or omission, a strong inference of scienter and loss causation.

**A.      Plaintiff Fails to Plead an Actionable Misstatement or Omission.**

The Opposition confirms that Plaintiff is unable to plead an actionable misstatement or omission.  The only statements that Plaintiff cites are (*i*) accurate statements of historical fact concerning VMware's backlog and revenue, (*ii*) forward-looking statements about the

Company's future performance protected by the PSLRA's safe harbor provision or (*iii*) inactionable corporate puffery.  (Opp'n 7-15; Mem. 8-14.)

Plaintiff makes no attempt to defend its core theory that VMware's backlog concealed revenue weakness in fiscal year 2020.  That theory makes no sense, as the amount of backlog was publicly disclosed each quarter, allowing investors to easily determine whether reported revenue in a given quarter resulted from new sales alone or a combination of new sales and a decrease in backlog.  (Mem. 3, 12.)  Indeed, Plaintiff concedes that financial analysts did just that, "contemporaneously" noting that "a good portion of 1QF20 product billings were actually 4QF19 deals that got invoiced in 1QF20."  (Opp'n 7, 23 (quoting SAC ¶ 54).)

### 1.   VMware's Historical Statements of Fact Were Not False or Misleading.

Plaintiff does not dispute that it made no changes to its allegations concerning VMware's backlog disclosures and revenue recognition practices.  Plaintiff's contentions that the Company violated GAAP or "intentionally held" contracts and "artificially inflated" backlog in order to "smooth" revenue are again unsupported by particularized facts and contradicted by the provisions of GAAP upon which Plaintiff relies.  (Opp'n 7-9; Mem. 8-10.)  The Court already found those allegations insufficient.  (Order 12-13.)

Plaintiff's reliance on *Berson v. Applied Signal Technology Inc.*, 527 F.3d 982 (9th Cir. 2008), is misplaced, as that decision has no bearing on the allegations in this case.  (Opp'n 1-3, 8, 10-11.)  There, the plaintiff alleged with particularity, based on statements from confidential witnesses, that the defendant had "touted" its backlog, which misleadingly included large receivables that were highly unlikely ever to be recognized as revenue because customers had issued "stop-work orders."  *Applied Signal*, 527 F.3d at 984-86 & n.1.  Here, by contrast, Plaintiff alleges no facts indicating that VMware "touted" its backlog or that its reported backlog included any revenue that would not be recognized in the next financial quarter. VMware accurately disclosed the amount and composition of its backlog each quarter, and it expressly cautioned investors that, among other things, the amount of backlog "will fluctuate period to period" and is not "indicative of future sales or revenue."  (Mem. 9-10.)

The Opposition's discussion of Mr. Gelsinger's comment on a February 28, 2019 earnings call that the Company's strong fiscal results *in the quarter ended February 1, 2019* had been "driven by broad-based strength . . . in all 3 geographies" is misleading in that Plaintiff incorrectly suggests that the statement relates to how VMware would perform in the *next quarter*. (Opp'n 10; Ex. N at 3.) Furthermore, Plaintiff's assertion that Mr. Gelsinger must have known on February 28, 2019 that the Americas segment would later experience a slowdown is unsupported by contemporaneous facts and is a classic attempt to plead fraud by hindsight. *See In re Twitter, Inc. Sec. Litig*, 506 F. Supp. 3d 867, 890 (N.D. Cal. 2020) ("[P]laintiffs cannot merely speculate in hindsight that because defendants ran into a sales slowdown and reduced revenue . . . that earlier statements of good financial health must have been inaccurate."); *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1226 (S.D. Cal. 2001) ("Plaintiffs' hindsight-driven reassessment . . . does not establish that any of Defendants' tentative and optimistic statements were false or misleading when made."). Plaintiff again cites to the occurrence of routine sales meetings with no factual allegations regarding the information presented at those meetings. (Opp'n 10 (citing SAC ¶¶ 62-63).)

### 2. Defendants' Forward-Looking Statements About VMware's Future Performance Are Protected by the PSLRA's Safe Harbor Provision.

As the Court already held, VMware's predictions about its future performance are forward-looking statements, accompanied by meaningful cautionary language, and therefore protected by the PSLRA's safe harbor provision. (Order 16-17; Mem. 12-14.) Plaintiff's allegations concerning those statements are entirely unchanged in the SAC, and the Opposition concedes that at least portions of the statements identified by VMware are forward-looking. (Opp'n 11-12.) Plaintiff falls back on the argument that certain portions of those statements are not forward-looking, but those portions are either inactionable corporate puffery or not alleged with particularity to be false or misleading. (Opp'n 11-12; Mem. 10-14.)

/ / /

/ / /

### 3.  Defendants' Statements of Corporate Optimism and Puffery Are Not Actionable.

Plaintiff does not dispute that its allegations regarding Defendants' statements of corporate optimism are unchanged from those in the AC, which the Court held were not actionable.  (Opp'n 13-15; Order 17-19.)  Plaintiff's assertion that Defendants failed to specify the statements they "contend to be mere corporate optimism" is without merit.  (Mem. 14 (citing SAC ¶¶ 83, 89, 92, 107-08, 110, 112-15, 122-23, 126, 133-35, 138-40); Opp'n 14.)  These allegations include, for example, statements that the Company was "well positioned," its execution was "good," its results were "solid," and its management was "comfortable," "pleased" and feeling "really good."  (SAC ¶¶ 83, 89, 108, 112, 113, 122, 133, 139.)

The cases Plaintiff cites are not to the contrary.  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (statements regarding company's pipeline "went beyond 'feel good' optimistic statements" where they provided a "concrete description" of the pipeline, including that "the number and type of prospective sales in the pipeline was unchanged, or even growing, compared to previous quarters"); *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1046, 1051, 1055 (N.D. Cal. 2018) (holding that defendants went beyond "just providing subjective or emotive descriptions" by specifically stating that the company was "on track to deliver . . . accelerating top-line revenue growth and expanding profitability").

### B.  Plaintiff Fails to Plead Scienter.

Plaintiff's Opposition rehashes the same arguments about the same allegations that the Court already held were insufficient to raise the "strong inference" of scienter required by the PSLRA.  (Opp'n 15-22; Mem. 14-20; Order 19-27.)  Plaintiff again fails to identify any factual allegations – as opposed to conclusory assertions – indicating that Defendants "made false or misleading statements either intentionally or with deliberate recklessness."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005)).  As the Court noted, Plaintiff's core theory of improper backlog manipulation relies entirely on "conclusory statements" appearing in "two

paragraphs" of the "nearly 50-page amended complaint." (Order at 12.) The same is true for the SAC.

As discussed above, Plaintiff's speculative allegations regarding attendance at routine business meetings and access to the Company's automated system for tracking executed contracts add nothing to the scienter analysis because Plaintiff alleges no particularized facts specifying what information was discussed at those meetings or indicating that the automated system actually was used to improperly manipulate backlog. (SAC ¶¶ 22-27, 61-73.) Indeed, although Plaintiff appears to have access to an unidentified source within VMware – based on the allegations of specific dates, times and conference rooms used for business meetings – Plaintiff remains unable to allege any particularized facts supporting its assertions of fraud.

Once again, Plaintiff's conclusory assertions and accusations – considered individually or holistically – come nowhere close to meeting the PSLRA's stringent pleading standard for scienter, which requires Plaintiff to "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007) (The inference of scienter "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.")

### 1. Plaintiff's Allegations Based on Stock Sales Do Not Support an Inference of Scienter.

As the Court already held, Mr. Gelsinger's and Mr. Rowe's stock sales do not support a strong inference that they acted with actual knowledge or deliberate recklessness. (Order 20-23, 26-27; Opp'n 16-20; Mem. 16-18.) Plaintiff abandons its argument that stock sales by non-Defendants are relevant to scienter. (Mem. 18-19.)

As noted above, Plaintiff's new allegations regarding the proximity of sales to routine business meetings – without any particularized allegations about what occurred at the meetings – do not cast suspicion on the timing of those stock sales, the vast majority of which were set in advance pursuant to 10b5-1 plans. (Opp'n 17-18.) And Plaintiff's argument concerning the timing of the sales relative to the Company's earnings disclosures is without merit because

executives "commonly make stock transactions following the public release of quarterly earnings." *Lipton*, 284 F.3d at 1037; *Gigamon*, 325 F. Supp. 3d at 1057 (same).  (Opp'n 16-18; Mem. 18.)

Although Plaintiff attempts to minimize the fact that Mr. Gelsinger and Mr. Rowe actually *increased* their VMware holdings during the class period, that increase in personal financial exposure to the Company's financial performance is indicative of good faith, not scienter.  (Opp'n 18; Mem. 17.)  *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 647 (S.D.N.Y. 2007) ("Purchasing shares in the company is indeed inconsistent with a belief that the drug's effectiveness has been fraudulently overstated, because that fact will inevitably become known; one does not buy seats on a sinking ship.").  That Mr. Gelsinger and Mr. Rowe acquired VMware securities through their employment rather than market purchases makes no difference, and Plaintiff's cited authority is not to the contrary.  In *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010), the court found that the acquisition of stock was not inconsistent with scienter where – unlike here – "a defendant may have believed that he could eventually sell his shares at a profit by continuing to hide the fraud." *Id.* at 201.  Here, by contrast, Plaintiff contends that the decrease in backlog revealed the purported fraud and that Mr. Gelsinger and Mr. Rowe were aware that the decrease in backlog would be disclosed.

### 2.   Plaintiff's Remaining Allegations Do Not Support an Inference of Scienter.

As the Court already concluded, Plaintiff's assortment of other allegations – Mr. Gelsinger's and Mr. Rowe's status as officers of the Company, disclosures of declining backlog, and the resignation of an accounting officer – do not give rise to a strong inference of scienter.  (Order 24-27.)

*First*, Plaintiff's reliance on Mr. Gelsinger's and Mr. Rowe's positions as CEO and CFO of the Company to suggest that they must have known of allegedly improper backlog accounting fails because Plaintiff does not allege facts supporting any improper accounting. (Opp'n 20-21.)  Furthermore, "[w]here a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the

defendants' actual exposure to information, it will usually fall short of the PSLRA standard." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). Contrary to Plaintiff's contention, the SAC lacks any such "additional detailed allegations" giving rise to a strong inference that Mr. Gelsinger and Mr. Rowe were aware of information contradicting their alleged statements.

*Second*, Plaintiff's argument that the magnitude of VMware's declining backlog is indicative of scienter is entirely circular. (Opp'n 22.) Plaintiff has no answer to the obvious fact that a decline in backlog in a given quarter does not imply that it was artificially inflated in prior quarters, and none of the cases cited by Plaintiff are to the contrary. *See Washtenaw Cty. Emps. Ret. Sys. v. Celera Corp.*, No. 10-cv-02604, 2012 WL 3835078, at *3 (N.D. Cal. Sept. 4, 2012) (finding magnitude relevant to scienter where company had issued a restatement admitting that its prior financial reports were incorrect); *South Ferry*, 542 F.3d at 786 (holding that allegations of knowledge based on management role are sufficient only in "rare circumstances" where it would be "absurd" to suggest that management was unaware of the information).

*Third*, Plaintiff does not respond to Defendants' argument that the resignation of VMware's chief accounting officer does not support an inference of scienter because it occurred before the SEC sent its inquiry to the Company. (Opp'n 22 n.10; Mem. 19-20.)

**C.      Plaintiff Fails to Plead Loss Causation.**

Plaintiff does not respond to Defendants' argument that disclosures of declining backlog are not "corrective" because they do not reveal any fraud, only disappointing financial results, and Plaintiff concedes that the mere disclosure of the SEC's investigation is insufficient to plead loss causation. (Opp'n 22-24; Mem. 20.) Ninth Circuit law is clear that neither type of disclosure is sufficient to plead loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) ("[A]ny decline in a corporation's share price following the announcement of an investigation *can only be attributed to market speculation about whether fraud has occurred*" and "cannot form the basis of a viable loss causation theory.") (emphasis added); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392-94 (9th Cir. 2010) (disclosure of disappointing financial

results is insufficient to establish loss causation, which requires that "the market learns of a defendant's fraudulent act or practice").

### III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20A.

Plaintiff does not dispute that its Section 20A claim against Mr. Gelsinger must be dismissed if it fails to plead a "predicate violation of the securities laws." *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1135 (N.D. Cal. 2020).  The Section 20A claim should also be dismissed because Plaintiff did not purchase VMware stock "contemporaneously" with any of Mr. Gelsinger's sales.  (Opp'n 24-25; Mem. 21-22.)

The cases Plaintiff cites in which courts have treated trades made four or five days apart (or even longer) as "contemporaneous" are inconsistent with the Ninth Circuit's clear statement that the "premise" of the timing requirement is the "need to filter out plaintiffs who could not possibly have traded with the insider," *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1002 (9th Cir. 2002), and to "ensure[] that only private parties who have traded with [an insider] who had an unfair advantage will be able to maintain insider trading claims." *Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).  Accordingly, "a shareholder must have traded *with an insider* or have traded *at about the same time as an insider* to be harmed by the insider's trading." *Brody*, 280 F.3d at 1005 (emphasis addtraned).  Courts that consider "contemporaneous" trading to be the same day (or the day after) best reflect the Ninth Circuit's clear guidance.  (Mem. 21-22.)  Plaintiff has no response to *Brody* or *Neubronner*.  (Opp'n 24-25.)

The fact that Plaintiff purchased VMware stock at a price *lower* than Mr. Gelsinger's sale price independently forecloses Plaintiff's argument that it satisfies the "contemporaneous" trading requirement.  (Mem. 22.)  Plaintiff's assertion that the court in *Align Technology* did not find this fact "determinative" is simply incorrect.  (Opp'n 24.)  "[C]ourts have consistently held that shares purchased below the defendant's sale price *cannot* satisfy the contemporaneity requirement, because it is *impossible* that those trades occurred with defendant at an unfair advantage." *Align Tech.*, 485 F. Supp. 3d at 1136 (emphasis added).

/ / /

/ / /

## IV.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY.

Plaintiff does not dispute that the Section 20(a) claim for control person liability must be dismissed if the underlying Section 10(b) claim is dismissed.  (Opp'n 24 n.11; Mem. 22.)

## V.    DISMISSAL WITH PREJUDICE IS WARRANTED.

The Court should reject Plaintiff's half-hearted request for leave to amend the complaint yet again, made in the concluding sentence of the Opposition, and dismiss the SAC with prejudice.  (Opp'n 25; Mem. 22-23.)  Plaintiff has repeatedly failed to state a claim for securities fraud notwithstanding the Court's "detailed instructions as to what [Plaintiff] needed to do to fix the problems with [its] complaint."  *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011).  The meager new allegations in the SAC – which do nothing to address the deficiencies identified in the Court's Order – make clear that further amendment would be futile.

Plaintiff fails to identify any new allegations it would include in a third amended complaint in order to state a claim for securities fraud, much less attach a proposed amended complaint.  *See Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 439 (9th Cir. 2020) (dismissal with prejudice appropriate where plaintiff "failed to attach a proposed amended complaint in violation of the local rules and, more significantly, did not otherwise explain why the amendment would not be futile"); *HT Litig. Tr. v. Jess Rae Booth*, 303 F. App'x 502, 503 (9th Cir. 2008) ("[A] party who contends his complaint could be saved by amendment must present such amendment to the trial court either in opposition to the motion to dismiss or in a motion to reopen the judgment.").  In *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003), cited by Plaintiff, the plaintiffs identified a report from a special committee of the defendant's board of directors that the plaintiffs would rely on to specify the details of the alleged securities law violation that the district court found lacking.  *Id.* at 1053.  Here, Plaintiff offers nothing of the sort.

Dismissal with prejudice is warranted in light of Plaintiff's woefully inadequate SAC, rote repetition of arguments that the Court previously has rejected, and failure to so much as hint at how a third amended complaint would cure the SAC's myriad deficiencies.

## **CONCLUSION**

For the reasons stated above and in Defendants' opening brief, the Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: December 17, 2021

KWUN BHANSALI LAZARUS LLP
DEBEVOISE & PLIMPTON LLP

By: */s/ Asim M. Bhansali*
Asim M. Bhansali (SBN 194925)
*abhansali@kblfirm.com*
Nicholas A. Roethlisberger (SBN 280497)
*nroethlisberger@kblfirm.com*
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
(415) 630-2350

Maeve L. O'Connor (*pro hac vice*)
*mloconnor@debevoise.com*
Elliot Greenfield (*pro hac vice*)
*egreenfield@debevoise.com*
Matthew J. Sorensen (*pro hac vice*)
*mjsorensen@debevoise.com*
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

Attorneys for Defendants VMWARE, INC.,
PATRICK P. GELSINGER and ZANE ROWE