ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
        – and –
SCOTT H. SAHAM (188355)
ASHLEY M. KELLY (281597)
TING H. LIU (307747)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
scotts@rgrdlaw.com
akelly@rgrdlaw.com
tliu@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> VMWARE, INC., et al., <br><br> Defendants. | Case No. 5:20-cv-02182-EJD <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |

Pursuant to the Court's Order Regarding Statement of Recent Decision (ECF 81), Lead Plaintiff Northeast Carpenters Pension Fund ("Plaintiff") hereby submits this Supplemental Memorandum in Further Opposition to Defendants' Motion to Dismiss, along with a Redline Complaint incorporating the September 12, 2022, U.S. Securities and Exchange Commission ("SEC") Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("SEC Order") therein.[1]  The SEC Order fully corroborates the allegations of the Second Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "SAC") (ECF 63) and provides further detail supporting the allegations contained therein. *See* ¶¶84-114.

In their Motion to Dismiss Second Amended Complaint (ECF 64) (the "Motion to Dismiss" or "MTD"), defendants had falsely claimed that "Plaintiff's core theory of fraud – that VMware manipulated its backlog in order to conceal purported operational weaknesses – does not make sense." MTD at 3.  The SEC Order and VMware's agreement to pay $8 million to resolve the SEC investigation eviscerates that assertion. The SEC's findings are as detailed as they are incriminating – and wholly corroborate Plaintiff's backlog manipulation allegations – which this Court has already found to be a viable theory.  *See* Order Granting in Part and Denying in Part Motion to Dismiss With Leave to Amend (ECF 60) ("MTD Order") at 12.

Courts routinely consider SEC orders and comparable agency documents in ruling upon a motion to dismiss.  "Because the Ninth Circuit has relied on comparable documents when deciding motions to dismiss Section 10(b) and antitrust claims, . . . it is appropriate to do so here." *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 593 (N.D. Cal. 2019) (denying motion to dismiss); *see also In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 706-07 (9th Cir.

---

[1]  "Redline Complaint" refers to the Redline Second Amended Consolidated Complaint for Violations of the Federal Securities Laws, attached hereto as Exhibit A. The SEC Order (ECF 77-1) is incorporated into the Redline Complaint at ¶¶84-114.  All "¶" and "¶¶" references herein are to the Redline Complaint.

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 5:20-cv-02182-EJD                                    - 1 -
4862-4301-3718.v1

2012) (reversing dismissal of 10(b) claims and relying on allegations in an SEC complaint incorporated into the plaintiff's pleadings); *McPhail v. First Command Fin. Plan., Inc.*, 2006 WL 8455139, at *3 n.5 (S.D. Cal. July 27, 2006) (denying in part motion to dismiss noting "courts generally have allowed plaintiffs to satisfy particularity and scienter requirements with the findings of an administrative agency when the agency's findings are relevant to plaintiffs' claims" and citing cases); *In Re Stable Rd. Acquisition Corp.*, 2022 WL 2762213, at *3 (C.D. Cal. July 13, 2022) (denying motion to dismiss in part after considering SEC order); *In re Under Armour Sec. Litig.*, 540 F. Supp. 3d 513, 518, 521 (D. Md. 2021) (reversing prior grant of motion to dismiss holding that although "the [SEC] Order is not dispositive of the issues in this case," the SEC's findings "lend[] support to the allegations").  The allegations contained in the Redline Complaint further support Plaintiff's claims and mandate denial of Defendants' Motion to Dismiss.[2]

I.    **The SEC's Factual Findings Detail How Defendants' Backlog Manipulation Scheme Was Misleading to Investors**

VMware has agreed to pay an $8 million civil money penalty to resolve the SEC's three-year investigation into the Company's accounting for backlog and related disclosures.[3]  The SEC's factual findings – which VMware ***does not*** deny – detail the very same conduct at issue in this case. The SAC alleged that VMware created a slush fund at the end of fiscal year ("FY") 2019 that was drawn upon to artificially enhance reported revenue growth throughout FY 2020.  ¶¶3, 32, 35. According to the SEC, it was through that slush fund – referred to internally by senior management as a "discretionary hold," or "managed pipeline" ("MPL") (*i.e.*, "holding back some sales orders, which were otherwise ready to be booked and recorded as revenue in the current quarter") – that VMware was able to "shift[] tens of millions of dollars in revenue into future quarters" to offset the

---

[2]    "Defendants" collectively refers to VMware, Inc. ("VMware" or the "Company"), and its Chief Executive Officer ("CEO") Patrick Gelsinger ("Gelsinger") and Chief Financial Officer ("CFO") Zane Rowe ("Rowe").

[3]    The $8 million civil penalty is more than 41 times the median SEC money penalty (excluding disgorgements) ordered in 2020, the last year with available data.

negative effects of slowing revenue growth caused by the shift from license to subscription-based products.  ¶87.

By using discretionary holds in its managed pipeline, VMware "delayed the delivery of license keys to customers" and thus circumvented VMware's revenue recognition policy, "by delay[ing] the recognition of license revenue to the next quarter or service revenue to future quarters as services were performed."  ¶¶87, 91.  The holds were utilized at the discretion of management only "if the company was on track to meet its financial guidance to securities analysts and investors[,]" and "then would be released shortly after the end of the quarter [, which] had the effect of increasing the amount of backlog that VMware reported in its Forms 10-Q and 10-K and delaying revenue recognition into future quarters."  ¶¶26, 88.  This "had the effect of obscuring the company's financial results and avoiding revenue shortfalls versus company financial guidance and analysts' estimates in at least three quarters during FY20, as well as full-year FY20."  ¶88.  According to the SEC's findings, "VMware employed discretionary holds when business objectives – including those for 'bookings' and revenue – had been achieved, in order not to exceed the company's revenue guidance by too much and as a way, *in the words of VMware personnel*, to start the next quarter with a buffer or more momentum than it might have had otherwise." ¶91 (emphasis added).

The SEC Order confirms that VMware and its senior management continued to deploy discretionary holds into backlog throughout FY 2019, and the Company ended the year with $409 million in managed pipeline – which amounted to "approximately 91% of VMware's reported total backlog of $449 million." ¶97.  The Company drew-down this discretionary component throughout FY 2020, ultimately causing the discretionary component of VMware's backlog to fall by 99% over the course of the year.  ¶101.  According to the findings of the SEC, "[b]y FY20 year-end, VMware's business had slowed to such an extent versus expectations that it was essentially no longer generating any perceived excess sales to 'hold' as MPL" *Id*.  VMware's stock price declined in parallel with the backlog drawdown, declining "approximately 37% from its closing price during trading on May 30, 2019 . . . to its closing price on February 28, 2020." *Id*.

Furthermore, the SEC determined that VMware's managed pipeline/discretionary holds rendered VMware's public statements concerning backlog "misleading," as "the [backlog] disclosure omitted material information regarding the discretionary nature of VMware's backlog, the extent to which VMware controlled the amount of its backlog, and how backlog was used to manage the timing of the company's recognition of total and license revenue."   *See* ¶¶87-88, 105-110. According to the SEC:

> VMware omitted material information regarding the extent to which the company controlled its quarter-end total and license backlog numbers through its use of discretionary holds, and the extent to which it used backlog to control the timing of revenue recognition generally.  The managed backlog disclosure did not convey to investors the material information that backlog was used by VMware to manage the timing of revenue recognition based upon factors such as the company's financial guidance and analysts' estimates. ***This information was necessary in order to make VMware's statements regarding its backlog, in light of the circumstances under which they were made, not misleading.***

¶105. "Without disclosure regarding all material aspects of the backlog, investors lacked necessary information to meaningfully evaluate VMware's reported financial results and the extent to which those results might be indicative of future results."  ¶106; *see also* ¶110 ("Reasonable investors would have considered the foregoing information to have been important in deciding whether to purchase VMware securities during the relevant period.").  The Ninth Circuit has likewise found this conduct to be actionable under §10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 707 (9th Cir. 2016); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008).

## II.    The Factual Findings Contained in the SEC Order Further Support a Strong Inference of Scienter

The Court has already found an inference of scienter in this case, holding that "the timing of the [stock] sales and Gelsinger's and Rowe's trading histories support an inference of scienter." *See* MTD Order at 23.  The SAC added to this inference, including allegations of dozens of class period meetings that put Gelsinger and Rowe at the center of the backlog scheme (¶¶61-73, 199), and by detailing how many of Gelsinger's and Rowe's stock sales occurred shortly after those meetings and were designed to maximize personal financial benefit.  (¶¶182, 185-188, 190-191); *see also Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007) ("[P]ersonal financial gain may weigh

heavily in favor of a scienter inference.").  The SAC further detailed the unique motivation that Gelsinger and Rowe had to withhold contracts at the end of the quarter (¶¶26, 198), and described the real-time, unfettered access each had to the Salesforce booking tool and authority to override and withhold bookings through Rowe's operations group (¶¶196-197).  As backlog increased, so did VMware's share price, and Gelsinger and Rowe took advantage of that, offloading over $41 million of their own stock during the class period at highly inflated prices.  ¶¶4, 32, 182, 186-187.

The SEC Order provides even further detail concerning senior management's involvement in the backlog manipulation scheme and corroborates the SAC's allegations. ¶¶94-95.  The SEC Order confirms that senior finance and accounting personnel had real-time access to the Company's booking system, which, absent human involvement, would have been an automated process. ¶¶91-93.  Consistent with the allegations in the SAC, the SEC found the "[d]ecisions whether to release and book any discretionary holds for particular MPL orders were made in the final weeks, days, and hours of the quarter by VMware senior finance and accounting personnel.  Preliminary quarterly-bookings and quarterly-MPL summaries were shared, essentially in real time, among *VMware senior management*."  ¶¶24, 95.[4]  The SEC Order also confirms that senior management met regularly to discuss and manage discretionary holds, and did so through a formal written policy – the "'Bookings Finalization Process & Backlog' policy, which was drafted by VMware finance and accounting personnel" and developed contemporaneous with the Backlog Policy Meeting between Defendants Gelsinger and Rowe and other senior finance and accounting professionals in the fall of 2018 as alleged in the SAC (¶¶73, 95, 198).  According to the factual findings of the SEC, "[t]he written policy *formally required the participation of VMware senior management in the managed pipeline process*, through a regularly-scheduled meeting at or around Week 9 of each 13-week

---

[4]    Defendants Gelsinger and Rowe, though not directly named in the SEC Order, are nevertheless implicated by it.  *See, e.g.*, *Verifone*, 704 F.3d at 706 n.4 ("Though the [SEC] complaint does not specifically name Bergeron and Zwarenstein, referring only to 'senior management,' their roles as CEO and CFO, respectively, would likely include them in the 'senior management' reference.").

quarter." ¶95 (emphasis added). Thus, the factual findings of the SEC Order directly confirm senior management's involvement in the scheme to hold-back revenue. MTD Order at 13; ¶¶94-95.

While the claims brought by the SEC did not include the element of scienter, the SEC Order's factual findings, when considered under the holistic analysis required by *Tellabs,* along with the allegations of the SAC, give rise to a strong inference of scienter. MTD Order at 19-20; *Tellabs*, 551 U.S. at 310. Furthermore, the Ninth Circuit has held that the fact that the SEC charged defendants with a non-scienter based claim does not support dismissal. *See VeriFone.*, 704 F.3d at 707 n.5 ("We draw no inference from the SEC's decision not to plead scienter or charge defendants with fraud. The district court erred in concluding that 'the SEC's decision not to plead scienter hurts plaintiffs' ability to plead a strong inference of scienter.'").

The SEC's specific factual findings that senior management was aware of, and was in fact intimately involved in, the creation and implementation of the managed backlog policy, and did so through regularly scheduled quarterly meetings further contributes to a strong inference of scienter. According to the SEC, VMware's misleading backlog disclosure was "formulated by VMware senior finance and accounting personnel with review and opportunity for input from others, including senior management, [and] the audit committee." ¶94. The SEC Order confirms the extent to which senior management was involved in the backlog manipulation scheme:

> The written policy formally required the participation of VMware senior management in the managed pipeline process, through a regularly-scheduled meeting at or around Week 9 of each 13-week quarter. The policy further required that discretionary holds were to be discussed at the meeting and could be 'value-based, product-based, geo[graphy]-based or any combination,' and stated that such holds would be placed on or after Week 9. Decisions whether to release and book any discretionary holds for particular MPL orders were made in the final weeks, days, and hours of the quarter by VMware senior finance and accounting personnel. Preliminary quarterly-bookings and quarterly-MPL summaries were shared, essentially in real time, among VMware senior management.

¶95.

As the Court previously held, "[i]n ruling on a motion to dismiss, the inquiry is 'whether ***all*** of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets th[e] standard.'" MTD Order at 19-20 (quoting *Tellabs*, 551 U.S. at 310) (emphasis in original). "[A]llegations regarding management's role in a

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 5:20-cv-02182-EJD
4862-4301-3718.v1

- 6 -

corporate structure may be considered as part of the *Tellabs* holistic analysis, and such allegations can independently satisfy the PSLRA where they are 'particular and suggest that defendants had actual access to the disputed information.'" *Id.* at 24 (citation omitted).  Furthermore, as this Court has previously recognized, the sheer magnitude of the Company's drawdowns on backlog (nearly 100% over the course of a year) also supports a strong inference of scienter.  *See, e.g.*, *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.,* 2012 WL 3835078 at *3 (N.D. Cal. Sept. 4, 2012) (Davila, J.) (finding strong inference of scienter and that it was "unlikely" given the "magnitude of the declining collections" that the issue "could have gone unnoticed by the CFO and CEO").  The Redline Complaint's allegations (including Defendants' suspicious stock sales) and the factual findings of the SEC, when viewed holistically give rise to a strong inference of scienter.

## III.   Conclusion

The SEC Order confirms the SAC's allegations with respect to falsity and scienter and renders moot Defendants' arguments about the sufficiency of Plaintiff's well-pled allegations. Defendants' Motion to Dismiss must be denied.

DATED:  March 14, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT H. SAHAM
ASHLEY M. KELLY
TING H. LIU

s/Ashley M. Kelly
ASHLEY M. KELLY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
scotts@rgrdlaw.com
akelly@rgrdlaw.com
tliu@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Lead Counsel for Lead Plaintiff

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 14, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Ashley M. Kelly
ASHLEY M. KELLY

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  ashleyk@rgrdlaw.com

4862-4301-3718.v1

## Mailing Information for a Case 5:20-cv-02182-EJD Lamartina v. VMware, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Asim M. Bhansali**
  abhansali@kblfirm.com,asim-bhansali-6238@ecf.pacerpro.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Elliot Greenfield**
  egreenfi@debevoise.com,jtancil@debevoise.com,mao-ecf@debevoise.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Ashley Michelle Kelly**
  akelly@rgrdlaw.com,e_file_sd@rgrdlaw.com,AKellyRGRD@ecf.courtdrive.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Maeve O'Connor**
  mloconnor@debevoise.com,mao-ecf@debevoise.com,mjsorensen@debevoise.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Nicholas Alan Roethlisberger**
  nroethlisberger@kblfirm.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,agonzales@rgrdlaw.com,ScottS@ecf.courtdrive.com,e_file_SD@rgrdlaw.com

- **Brian Jared Schall**
  brian@schallfirm.com

- **Matthew John Sorensen**
  mjsorensen@debevoise.com,mao-ecf@debevoise.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)