December 19, 2023

<u>VIA ECF</u>

Magistrate Judge Virginia K. DeMarchi
San Jose Courthouse,
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

> Re:  *Lamartina v. VMware, Inc. et al.*
>      No. 5:20-cv-02182 (N.D. Cal.)

Dear Judge DeMarchi,

Pursuant to Your Honor's Standing Order for Civil Cases ("Standing Order"), Lead Plaintiff Eastern Atlantic States Carpenters Pension Fund ("Plaintiff"), together with Defendants VMware, Inc. ("VMware" or the "Company"), Patrick P. Gelsinger ("Gelsinger"), and Zane Rowe (together with VMware, "Defendants") hereby submit this joint letter to resolve a dispute concerning defendant VMware's assertion of attorney-client privilege over certain documents produced by third-party former VMware Senior Vice President Peter Dockery ("Dockery").

## I.       Statement of the Dispute Requiring Resolution

The parties dispute whether portions of four documents contained in a third-party production from former VMware employee Peter Dockery (DOCK013-DOCK016, DOCK071, DOCK075, and DOCK021-030) are protected by the attorney-client privilege.

## II.      The Parties' Positions

### A.       Plaintiff's Position

Defendants' privilege assertion is baseless. None of the emails authored and produced by Dockery (a non-lawyer), after he was terminated from his position as a VMware SVP, comprise or reflect the provision of legal advice. ***Three of the emails do not even include attorneys as recipients***. Rather, the emails which Dockery has retained for over five years, contain wholly factual information and address the Company's retaliation against him, and are not subject to the attorney-client privilege.[1]

---

[1]    Plaintiff is set to depose Dockery on January 25, 2024.

Magistrate Judge Virginia K. DeMarchi
December 19, 2023
Page 2

### 1.      Background

On Friday November 17, 2023, Dockery produced 92 pages of documents pursuant to a subpoena served by Plaintiff.  The documents were produced to Defendants the following business day.[2]

On November 27, 2023, Defendants asked Plaintiff to cease review of the documents. Although the documents on their face do not reflect privileged attorney-client communications, Plaintiff's counsel thereafter sequestered the documents.[3]  On November 29, 2023, Defendants asserted that a subset of the emails produced by Dockery "comprise or reflect communications between VMware employees and personnel and counsel to VMware concerning requests for and the provision of legal advice."

Plaintiff challenges the assertion of privilege over four emails:

1.      **DOCK013-DOCK016**:  A July 2018 email from Dockery to *five non-lawyers* (including defendant Gelsinger) recounting factual issues Dockery had previously described to others, including non-lawyers Anu Datta and Paula Delaney, regarding his concerns and complaints about backlog and/or managed pipeline.

2.      **DOCK071**: A June 2018 email from Dockery *to himself* reciting *facts* previously communicated to in-house counsel and other individuals.

3.      **DOCK075**: A June 2018 email from Dockery *to himself* reciting *facts* previously communicated to in-house counsel and other individuals.

4.      **DOCK021-030**: A July 2018 email authored by Dockery challenging the assertions of in-house counsel and recounting facts relating to the retaliatory termination of his employment due to complaints he had made about "violation[s of] the law, company policy, and normal standards of business ethics."

### 2.      The Emails Are Not Privileged

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*,

---

[2]    Counsel for Mr. Dockery informed Plaintiff's counsel that prior to production, he reached out to counsel for Defendants and that Defendants did not seek to categorize any documents as confidential.

[3]    Defendants' assertion in footnote 4, below, lacks merit as Defendants ignore that not only did Plaintiff have the unreacted documents in its possession for ten days prior to receiving Defendants' request, but also that the information contained within this letter was identified by VMware in its response to Plaintiff's Interrogatory No. 2 and VMware's privilege logs.

Magistrate Judge Virginia K. DeMarchi
December 19, 2023
Page 3

632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *Id.* at 566; *United States v. Martin*, 278 F.3d 989, 1000 (9th Cir. 2002) ("A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted."). In the Ninth Circuit, that burden is met ***only*** when each of eight factors are established: "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence by the client, (5) are at his instance permanently protected (6) from disclosure by himself or by the legal adviser, (7) unless the protection be waived." *Richey*, 632 F.3d at 566.

VMware's assertion that the four emails "comprise or reflect communications between VMware employees and personnel and counsel to VMware concerning requests for and the provision of legal advice" lacks merit. None of the emails reflect the seeking or provision of legal advice. Each was drafted after Dockery believed he was being removed from his position as retaliation for his pointing out improper conduct. The first three are emails authored by Dockery and are addressed to non-attorney executives, and/or to Dockery himself, and simply recount facts, which are not privileged. The fourth is an email authored by Dockery addressed to in-house counsel, which does not seek the provision of legal advice, but simply recounts, to an adversary, factual assertions previously made by Dockery.

VMware cannot establish that these communications reflect the provision of "legal advice." Moreover, VMware has not treated the documents in a confidential manner. Dockery has possessed these emails for over five years, and Defendants did not assert confidentiality over the documents before they were produced to Plaintiff, even though Defendants were given an opportunity to do so by Dockery's counsel.

Because attorney-client privilege stands as "'an obstacle to the investigation of the truth,'" it is narrowly and "strictly construed." *United States. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). Facts are not privileged, and thus, facts are discoverable even when those facts are communicated to an attorney. *Upjohn*, 449 U.S. at 396 (finding that a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney"). Privilege likewise excludes communications shared between non-lawyers that do not reflect the transmission of legal advice. *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *6 (N.D. Cal. Mar. 11, 2011) (finding no privilege where "[t]here are no communications with lawyers in the email chain, nor . . . any further reference to legal advice"). ***Because neither the author nor recipients of the first three emails are lawyers, those emails are not privileged.***

Even when communications do include an attorney, that fact alone is not dispositive. *Ruehle*, 583 F.3d at 607 ("The fact that a person is a lawyer does not make all communications with that person privileged."). Communications with in-house counsel are not presumptively privileged.

Magistrate Judge Virginia K. DeMarchi
December 19, 2023
Page 4

*United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  A cursory review of the fourth email reveals that Dockery viewed in-house counsel as an ***adversary*** as he was contesting his termination and surely was not seeking her legal advice.

"The privilege does not protect an attorney's business advice.  Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys." *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076; *cf. Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 44-46 (E.D.N.Y. 2013), *aff'd,* 29 F. Supp. 3d 142 (E.D.N.Y. 2014) ("Despite its legal content, human resources work, like other business activities with a regulatory flavor, is part of the day-to-day operation of a business; it is not a privileged legal activity.").  Because in-house counsel routinely serve dual purpose roles and offer business advice in addition to legal advice, the threshold for in-house counsel is high—when it comes to communications concerning in-house counsel, VMware "must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice." *ChevronTexaco*, 241 F. Supp. 2d at 1076.  Defendants cannot meet their burden of demonstrating privilege.

### 3.    The Emails Are Subject to the Crime-Fraud Exception and Relate to Retaliation Against Dockery

Setting aside VMware's failure to meet each of the eight privilege factors, there remain additional considerations that would contradict VMware's withholding the four emails.  The Ninth Circuit, for example, recognizes a "crime-fraud" exception to privilege.  That exception "assure[s] that the 'seal of secrecy' between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989).  Plaintiff need only demonstrate "a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime fraud exception applies." *In re Grand Jury Investigation*, 974 F.2d 1068, 1072-33 (9th Cir. 1992).

As the Court is aware, the backlog disclosure and Defendants' treatment of managed pipeline are at the heart of this case, and resulted in the Securities and Exchange Commission issuing a Cease and Desist Order and imposing an $8 million Civil Money Penalty on VMware.  ECF 77-1.  Because the four emails reflect communications pertaining to VMware's knowledge of the alleged fraud they are excepted from privilege protection. *Biggs v. City of St. Paul*, 2019 WL 1114868, at *2 (D. Or. Mar. 8, 2019) ("Communications that enable or aid the client to commit a tort or crime, regardless of the attorney's good faith, are not protected.").  A separate exception also applies to any retaliation Mr. Dockery experienced as a result of voicing his concerns to VMware's in-house counsel.  *Id*. ("communications that trigger retaliatory conduct are excepted from the privilege"); *cf. Koumoulis*, 295 F.R.D. at 44-46.  These privilege exceptions are applicable here.

Magistrate Judge Virginia K. DeMarchi
December 19, 2023
Page 5

### 4.    Plaintiff's Proposed Resolution

The four emails are not privileged and must be produced without redactions.

### B.    Defendants' Position

The disputed communications produced by Dockery are clearly privileged because they comprise, reflect, or summarize communications between VMware employees and its counsel for the purpose of obtaining legal advice.  These privileged communications are intertwined with factual assertions by Dockery (who first positioned himself as a whistleblower, then claimed retaliation) which VMware has left unredacted.  VMware has carefully redacted only the privileged portions of these communications from Dockery, and Plaintiff has not advanced *any* legitimate basis to question VMware's privilege assertions.

### 1.    Background

Plaintiff's suggestion that VMware "approved" of Dockery's production of its privileged communications is incorrect.  Dockery's counsel did not provide adequate notice of his intended production, sending an email to VMware's counsel on November 17, 2023 only a few hours before producing the documents to Plaintiff.  Plaintiff produced the documents to VMware three days later, after the close of business on November 20, and VMware's counsel was not able to review the production until November 27 due to vendor processing time and the intervening Thanksgiving holiday.  That same day, after reviewing the documents and confirming that some of them contained privileged communications, VMware promptly instructed Plaintiff to cease its review and sequester the production and issued a clawback notice.  VMware subsequently identified by specific Bates numbers which documents contained the privileged communications and provided a privilege log and revised production with redactions of the privileged material.

### 2.    The Disputed Emails Are Clearly Privileged

The disputed materials easily meet the standard for determining when a communication is privileged as confirmed by even a cursory review of VMware's privilege log:

1.    **DOCK013-DOCK016**:  Email describing communications between Dockery and in-house lawyers at VMware (Amy Fliegelman Olli*, Morris Kremen*, and Craig Norris*) regarding legal advice whether certain company practices were in compliance with applicable law.

2.    **DOCK021-030**:  Email thread between Dockery and Amy Fliegelman Olli* reflecting communications for the purpose of obtaining legal advice regarding company's and company personnel's compliance with applicable law.

3.    **DOCK071**:  Email describing communications between Dockery and Craig Norris* for purpose of obtaining legal advice regarding company practices.

Magistrate Judge Virginia K. DeMarchi
December 19, 2023
Page 6

4.    **DOCK075**:    Email describing communications between Dockery and Morris Kremen* for the purpose of obtaining legal advice regarding company practices.

As VMware's privilege log makes abundantly clear, the disputed communications reflect the provision of legal advice from a professional legal adviser in his or her capacity as such, made in confidence, and such protection has not been waived (nor is Plaintiff arguing waiver). *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Plaintiff's assertions to the contrary are without merit.[4]

Plaintiff's argument that certain of the disputed emails do not contain a lawyer is not a sufficient basis to find that the materials are not privileged, as Plaintiff's own case law confirms. *See Datel Holdings Ltd.*, 2011 WL 866993, at *6 (upholding claim of privilege over communication without lawyers copied as it "relayed a request from counsel for a factual investigation," the purpose of which was to allow in-house counsel to understand facts relevant to potential legal claims); *see also Planned Parenthood Federation of Am., Inc. v. Center for Medical Progress*, 2019 WL 1950377, at *6 (N.D. Cal. May 1, 2019) (recognizing "the attorney-client privilege is not limited to communications in which an attorney participates"). Plaintiff's repeated statements that the communications concern "facts" is nonsensical; VMware is asserting privilege over the *communications*, not the underlying facts.

Plaintiff's arguments based on the crime-fraud and retaliation exceptions fare no better. First, Plaintiff's invocation of the crime-fraud exception is entirely circular because it simply assumes that VMware committed securities fraud, the very merits issue that the parties dispute in this case. Under Plaintiff's reasoning, no defendant in any case alleging securities fraud would be entitled to the protections of the attorney-client privilege. That is obviously wrong. The crime-fraud exception is inapplicable because Plaintiff cannot demonstrate that *Dockery* was (i) "engaged in or planning a criminal or fraudulent scheme when [he] sought the advice of counsel" or that (ii) the privileged communications were "sufficiently related to and were made in furtherance of [the] intended, or present, continuing illegality." *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1090 (9th Cir. 2007) (recognizing a party must satisfy this two-part test for the exception to apply).

Second, Plaintiff's passing reference to a "retaliation exception" does not apply here, as Plaintiff's own authority makes clear. In *Biggs*, the court merely recognized that allowing a defendant to retain privilege over "communications that *trigger* retaliatory conduct" would "prohibit a plaintiff from pursuing a *retaliation claim* because she would be completely barred from proving the conduct

---

[4]    Plaintiff's bold assertions regarding the purported *substance* of the documents at issue calls into serious question whether Plaintiff is adhering to its legal and ethical obligations. As Rule 26(b)(5)(B) explicitly instructs—and this Court has recognized—a party who has received information subject to a claim of privilege "must not *use* or disclose the information until the claim is resolved." *See* F.R.C.P. 26(b)(5)(B) (emphasis added); *see also In re Google RTB Consumer Privacy Litig.*, 2022 WL 1316586, at *3-4 (N.D. Cal. May 3, 2022) (VKD) (finding "no justification" for permitting a receiving party to "examine and brief the contents of the putatively privileged material in challenging the claim of privilege" after sequestering such materials).

Magistrate Judge Virginia K. DeMarchi
December 19, 2023
Page 7

or speech that allegedly triggered the retaliation." *Id.* at *2 (citation omitted) (emphasis added). Plaintiff is not pursuing a retaliation claim, and the disputed communications do not "trigger" any retaliation. Instead, as Plaintiff recognizes, each of the disputed communications was drafted *after* any purportedly retaliatory conduct.

Finally, Plaintiff has failed to show a "factual basis" to "support a good faith belief" that "*in camera* review of the materials may reveal evidence to establish the claim." *See Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, 2019 WL 428782, at *1 (N.D. Cal. Feb. 4, 2019) (VKD); *see also Insight Global, LLC v. Beacon Hill Staffing Grp., LLC*, 2018 WL 6573081, at *4 (N.D. Cal. Dec. 13, 2018) (VKD) (citing *Newmark Realty Capital, Inc. v. BCG Partners, Inc.*, No. 16-cv-01702-BLF (SVK), 2018 WL 2357742, at *2 (N.D. Cal. May 24, 2018) (recognizing ordering *in camera* review of claimed privilege documents is appropriate only where "the party seeking discovery 'established reasonable, good faith doubts about the propriety of the redactions' made to the disputed documents"). Despite falling far short of this standard—and over VMware's objections—Plaintiff improperly insists on submitting the disputed materials.

### 3.  Defendants' Proposed Resolution

Plaintiff should be ordered to destroy the unredacted copies of the privileged materials that VMware has identified.

## III.  Whether the Parties Request a Hearing

Plaintiff believes a hearing would be helpful to the Court in order to provide more detail and to answer any questions the Court may have.

VMware does not request a hearing, but counsel will make itself available if the Court determines that oral argument would be helpful.

## IV.  Discovery Cut-Off Dates

The fact and expert discovery cut-off dates are June 28, 2024 and October 11, 2024, respectively. *See* ECF 103. Plaintiff is set to depose Dockery on January 25, 2024.

## V.  Statement Attesting to Compliance

Pursuant to the Standing Order, counsel hereby attest that a telephonic conference of lead counsel was held on Thursday, December 7, 2023.

Spencer Burkholz, Scott Saham, Laurie Largent, Ashley Kelly, Ting Liu, and Stephen Johnson attended for Plaintiff.

Magistrate Judge Virginia K. DeMarchi
December 19, 2023
Page 8

Maeve O'Connor, Matthew J. Sorensen, McCahey Townsend, and Jillian Tancil attended for VMware.

Very truly yours,

ROBBINS GELLER RUDMAN
& DOWD LLP

s/ Scott H. Saham
SCOTT H. SAHAM

*Attorney for Plaintiff*

DEBEVOISE & PLIMPTON LLP

s/ Maeve L. O'Connorp
MAEVE L. O'CONNOR

*Attorney for Defendants*

## ECF ATTESTATION

I, Scott Saham, am the ECF User whose ID and Password are being used to file this:

JOINT LETTER

In compliance with Local Rule 5-1(h), I hereby attest that Maeve L. O'Connor has concurred in this filing.

Executed on the 19th day of December, 2023.

s/ Scott H. Saham
SCOTT H. SAHAM
