Asim M. Bhansali (SBN 194925)
abhansali@kblfirm.com
Nicholas A. Roethlisberger (SBN 280497)
nroethlisberger@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350
Fax: (415) 367-1539

Maeve L. O'Connor (*pro hac vice*)
moconnor@debevoise.com
Elliot Greenfield (*pro hac vice*)
egreenfield@debevoise.com
Matthew J. Sorensen (*pro hac vice*)
mjsorensen@debevoise.com
DEBEVOISE & PLIMPTON LLP
66 Hudson Blvd.
New York, New York 10001
Tel: (212) 909-6000
Fax: (212) 909-6836

Attorneys for Defendants
VMWARE, INC., PATRICK P. GELSINGER, AND ZANE ROWE

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VMWARE, INC., PATRICK P. GELSINGER, and ZANE ROWE,<br><br>Defendants. | Case No.: 5:20-cv-02182-EJD (VKD)<br><br>**DECLARATION OF AMY FLIEGELMAN OLLI IN SUPPORT OF VMWARE'S ASSERTIONS OF PRIVILEGE OVER DOCUMENTS PRODUCED BY PETER DOCKERY** |

DECLARATION OF AMY FLIEGELMAN OLLI
(No. 5:20-cv-02182-EJD (VKD))

I, Amy Fliegelman Olli, hereby declare:

1.      I was General Counsel at VMware, Inc. ("VMware" or the "Company") from August 2017 through November 2023.  I make this declaration in support of VMware's assertion of privilege over certain documents produced by non-party Peter Dockery.

2.      During my tenure at VMware, the Company maintained policies and procedures for employees to report suspected violations of applicable laws or regulations, which were documented in VMware's Business Conduct Guidelines (the "Policy").  From time to time, the Policy was updated, including in October 2017 and again in September 2019.  *See* Ex. A (Oct. 2017 VMware Business Conduct Guidelines); Ex. B (Sept. 2019 VMware Business Conduct Guidelines).

3.      Company policy also required all VMware employees to complete training on the Policy annually, and to certify their understanding of the Policy.

4.      According to the Policy, VMware employees have the "responsibility" to "promptly report" any "know[n]" or "suspect[ed]" "violation[s] of applicable laws or regulations."  *See* Ex. A at 11.

5.      The Policy permitted oral reporting of known or suspected violations as well but "encouraged" employees to report such violations "in writing."  *Id.*  VMware employees were also "encouraged" to contact any "appropriate personnel when in doubt about the best course of action in a particular situation."  *Id.*

6.      For concerns about "accounting, internal accounting control over fi[nancial] reporting, auditing matters, governmental anti bribery, banking, or fi[nancial] crime," the Policy expressly instructed employees to "directly contact the VMware Legal Department by email,"—specifically the General Counsel's email address, which was limited to myself and other attorneys only.  *Id.*

7.      The Policy recognized that the purpose of such reporting of known or suspected violations by VMware employees was to allow the relevant Company personnel to engage in an "investigation process" to evaluate the veracity of the claims.  *Id.*  The Policy further provided

that "[a]ny reported violation will be kept confidential to the maximum extent consistent with applicable laws[.]"  *Id.*

8.    From time to time during my tenure as General Counsel of VMware, I and/or other attorneys in the VMware Legal Department received communications from VMware employees reporting potential issues in accordance with the Policy.  I was also aware of VMware employees reporting potential issues in accordance with the Policy to Ana Iacovetta, the Chief Compliance and Ethics Officer, VP and Deputy General Counsel, who handled such complaints in her capacity as Deputy General Counsel and reported directly to me.

9.    When such communications were received, I, along with additional in-house VMware lawyers, including Craig Norris, Morris Kremen, and Ana Iacovetta, would engage in an investigative process to consider and evaluate the legal implications of the reported issues and to craft and provide legal advice to the Company.  During this process, the in-house VMware lawyers would correspond with individuals in other Company departments, as appropriate, to uncover additional information as necessary to render legal advice to the Company about the reported topics.  When such communications were made by an identified individual (as opposed to being made anonymously), the investigative process would typically include discussions or other communications with the reporting individual which the in-house VMware lawyers treated as confidential and protected by the attorney-client privilege.

10.    During my tenure at VMware, I recall that in 2018, an employee, Peter Dockery, utilized the reporting structures set forth in the Company's Policy by raising various concerns to myself and other in-house VMware lawyers, both orally and in writing, including concerns about accounting and financial reporting.

11.    I handled Mr. Dockery's communications in the same manner in which I would respond to any VMware employee's concerns raised to me in my professional capacity as General Counsel at VMware in accordance with the Policy.  Specifically, when an employee approached me with a concern, I understood these discussions to be privileged communications informing me in my capacity as General Counsel of potential concerns in order to enable me to provide legal advice to the Company.  Accordingly, I treated Mr. Dockery's communications in

line with confidentiality expectations set forth in the Policy and engaged in an investigative process to consider the legal implications of the content of Mr. Dockery's communications for the purpose of rendering legal advice to the Company.

I declare under penalty of perjury that the foregoing is true and correct to the best of my memory.

Executed this 24 day of January, 2024.

_Amy Fliegelman Olli_
Amy Fliegelman Olli