UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM LAMARTINA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>VMWARE, INC., et al.,<br><br>　　　　Defendants. | Case No.  20-cv-02182-EJD (VKD)<br><br>**ORDER RE DECEMBER 19, 2023 DISCOVERY DISPUTE RE PRIVILEGE**<br><br>Re: Dkt. No. 116 |

　　　　The parties ask the Court to resolve a dispute concerning defendant VMWare, Inc.'s ("VMWare") assertion that the attorney-client privilege protects portions of four documents produced by non-party Peter Dockery. Dkt. No. 116. At the Court's direction, VMWare provided redacted and unredacted copies of each document to the Court for *in camera* review. The Court held a hearing on the matter on January 16, 2024 (Dkt. No. 130), after which the Court invited the parties to make supplemental submissions (Dkt. No. 129). On January 24, 2024, VMWare filed a declaration in support of its position and identified additional cases for the Court's consideration. Dkt. Nos. 134, 135. Plaintiff did not make a supplemental submission.[1]

　　　　As explained below, the Court orders modifications to VMWare's redactions for two of the documents in question. These documents with revised redactions must be produced to plaintiff by January 30, 2024. The Court resolves the remainder of the dispute in VMWare's favor.

---

[1] On January 29, 2024, VMWare advised the Court that it had removed redactions to one of the four documents, DOCK021-030. Dkt. No. 138. Plaintiff responded that VMWare's revised redactions to this document support plaintiff's argument about a different document, DOCK013-017. Dkt. No. 139.

## I. BACKGROUND

In response to plaintiff's document subpoena, non-party Peter Dockery produced 92 pages of documents. Dkt. No. 116 at 2. Mr. Dockery was formerly employed by VMWare as a Senior Vice President. *Id.* at 1.

After reviewing Mr. Dockery's production, VMWare alerted plaintiff that it believed portions of four documents reflected attorney-client privileged communications between Mr. Dockery and VMWare's in-house counsel. *Id.* at 2. VMWare prepared redacted versions of the four documents and a corresponding privilege log. *Id.* at 5. The disputed documents are: (1) DOCK013-017, (2) DOCK021-030, (3) DOCK071, and (4) DOCK075. *Id.* at 2.

Plaintiff contends that the redacted material is not privileged because none of the communications in question were made for the purpose of seeking or providing legal advice. *Id.* at 3. Rather, plaintiff says that each of the four documents at issue are communications prepared by Mr. Dockery after he learned he would be removed from his position and reflect his belief that his removal was in retaliation for pointing out misconduct. *Id.* In addition, plaintiff urges the Court to find that the "crime-fraud" exception applies to VMWare's privilege claims. *Id.* at 4.

VMWare responds that the redacted material reflects or summarizes communications Mr. Dockery (and other VMWare employees) had with VMWare in-house counsel so that in-house counsel could investigate alleged misconduct and provide legal advice to VMWare, and that such communications are privileged. *Id.* at 5-6. VMWare further responses that the "crime-fraud" exception does not apply in these circumstances. *Id.* at 6-7.

## II. LEGAL STANDARD

As this action is premised on federal question jurisdiction, federal common law governs issues of privilege. Fed. R. Evid. 501; *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *Ruehle*, 583 F.3d at 607 (citations and quotations omitted). "Because it impedes full

2

1    and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*. (citations

2    and quotations omitted).

3    In the Ninth Circuit, whether information is protected by the attorney-client privilege is

4    determined using an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Sanmina*, 968 F.3d at 1116. Where a communication has more than one purpose, it may be protected as privileged if the primary purpose of the communication is to give or receive legal advice, as opposed to business or some other non-legal advice. *In re Grand Jury,* 23 F.4th 1088, 1092 (9th Cir. 2021) (describing and adopting the "primary purpose" test for dual-purpose communications).

The party asserting attorney-client privilege bears the burden of proving that the privilege applies. *Ruehle*, 583 F.3d at 608.

### III.   DISCUSSION

#### A.   Application of the Attorney-Client Privilege

With a few exceptions, the redacted material in each of the four disputed documents either summarizes earlier communications in which Mr. Dockery disclosed information about possible misconduct to in-house counsel or constitutes a contemporaneous disclosure by Mr. Dockery of possible misconduct to in-house counsel. VMWare contends that the purpose of all of these communications is to allow in-house counsel to investigate the possible misconduct so that counsel can provide legal advice to VMWare. Plaintiff responds that the documents themselves reflect that *Mr. Dockery* had no such purpose in mind, and that his purpose is dispositive of the question of privilege.

Recognizing that corporations act and communicate through individual employees or agents, the Supreme Court held in *Upjohn Co. v. United States* that the attorney-client privilege applies to communications between corporate counsel and a corporate employee where the communication concerns matters within the scope of the employee's corporate duties and is

3

1  undertaken for the purpose of enabling counsel to provide legal advice to the corporation. *Upjohn*,
2  449 U.S. 383, 394-95. A key consideration in *Upjohn* was that the employees of a corporate client
3  have information of the corporation that the corporation's counsel needs in order to advise the
4  corporation. *Id.* at 391.

5  Here, VMWare relies on the declaration of Amy Fliegelman Olli, its former general
6  counsel, who explains that at the time of Mr. Dockery's communications, VMWare had a policy
7  that required employees, such as Mr. Dockery, to report actual or suspected misconduct or
8  violations of law to the company's in-house counsel so that counsel could investigate the matter
9  and provide legal advice to VMWare. *See* Dkt. No. 135. Ms. Olli attests that Mr. Dockery's
10 communications were received and handled as communications to counsel for further
11 investigation and, ultimately, for the provision of legal advice to VMWare, in accordance with the
12 company's policy, and that the communications were made and kept in confidence. *Id.* Plaintiff
13 has made no contrary showing. In view of this policy, and considering the nature of the
14 communications (discussed further below), the Court concludes that VMWare has established that
15 the communications fall within the scope of the attorney-client privilege, regardless of what Mr.
16 Dockery's subjective motivations for making each communication might have been.

17 The Court addresses the parties' disputes with respect to the specific redactions in each
18 document below:

19       **1.**      **DOCK013-017**

20 DOCK013-017 is an email sent on July 1, 2018 by Mr. Dockery to several VMWare non-
21 lawyer employees. Dkt. No. 116 at 2, 5. In this email, Mr. Dockery summarizes communications
22 about specific topics that he had with VMWare in-house counsel and VMWare non-lawyer
23 employees. *See* DOCK014. There is no indication in the document that the communications with
24 the lawyers and non-lawyer employees occurred at the same time, nor does VMWare contend that
25 they did; in other words, Mr. Dockery appears to have had *separate* communications with in-
26 house counsel and non-lawyer employees about the *same* topics.

27 Plaintiff argues that it should be permitted to examine Mr. Dockery about the
28 communications he had with non-lawyer employees, which are not privileged, and objects to

4

VMWare's redaction of text that reveals the specific topics he discussed. VMWare responds that plaintiff is free to ask Mr. Dockery about his communications with non-lawyer employees, but it insists that redaction is necessary to preserve its privilege claim with respect the communications with in-house counsel.

The text of the email in question presents an unusual practical problem, as VMWare cannot properly redact privileged communications without also improperly redacting non-privileged communications. In these circumstances, the Court agrees that plaintiff should be permitted to examine Mr. Dockery on the portion of his email that describes the non-privileged communications he had with other VMWare employees. For this reason, the Court orders that VMWare <u>may not redact</u> the text that appears at DOCK014 after the words "Anu Datta, & Paula Delaney,"—specifically, the phrase that begins with "e.g." must be unredacted. VMWare may redact the references to the names of in-house counsel that precede that phrase if it wishes. All other redactions shall remain.

### 2. DOCK021-030

DOCK021-030 is an email exchange on July 5-7, 2018 between Mr. Dockery and VMWare's then general counsel Amy Fliegelman Olli. Most of the email exchange concerns Mr. Dockery's concerns about the reasons for his termination from the position of Senior Vice President. VMWare has redacted those portions of the email exchange which it describes as "reflecting communications for the purpose of obtaining legal advice regarding [the] company's and company personnel's compliance with applicable law." Dkt. No. 116 at 5; *see* Dkt. No. 138-1 (revised redactions).

VMWare argues that this email communication includes summaries and descriptions of earlier communications with in-house counsel as well as a contemporaneous disclosure of possible misconduct to in-house counsel. Plaintiff contends that nothing in this email exchange is privileged because it principally concerns Mr. Dockery's challenges to the reasons for his termination and also includes his assertions about retaliation.

The Court agrees that VMWare's revised redactions can be fairly characterized either as summaries of Mr. Dockery's earlier communications reporting possible misconduct to in-house

5

counsel or current communications questioning the reasons, and possibly the legality, of his termination from his position. From VMWare's perspective as the privilege holder, the redacted material represents communications by an employee with in-house counsel about matters that require investigation by counsel and advice to the company. While plaintiff is correct that the same analysis might not apply if this action concerned a claim of wrongful termination or retaliation by Mr. Dockery, such claims are not part of this action. No changes to VMWare's redactions are required.

### 3. DOCK071

DOCK071 is an email Mr. Dockery sent to himself on May 14, 2018. The email recounts a conversation he had with VMWare in-house counsel Craig Norris concerning possible misconduct. The underlying communication is privileged. No changes to VMWare's redactions are required.

### 4. DOCK075

DOCK075 is an email Mr. Dockery sent to himself on May 14, 2018. The email recounts two separate conversations he had with VMWare in-house counsel Morris Bremen and Craig Norris about possible misconduct. In addition, the email appears to record Mr. Dockery's own views about how other employees felt about certain matters.

While the underlying communications with counsel are privileged, Mr. Dockery's record of his own views (independent of any communications to counsel) is not. For this reason, VMWare <u>may not redact</u> the last sentence of the email at DOCK075, which begins with the words "We now have . . ." All other redactions shall remain.

### B. Application of the Crime-Fraud Exception

Under the crime-fraud exception to the attorney-client privilege, communications are not privileged when the client "consults an attorney for advice that will serve him in the commission of a fraud or crime." *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (quotations omitted) (*quoting In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated in part on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)). The party invoking the crime-fraud exception must satisfy a two-part test:

6

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "*in furtherance of* [the] intended, or present, continuing illegality."

*Id*. (alterations in original) (quoting *In re Napster, 479* F.3d at 1090); *see also Skillz Platform Inc. v. AviaGames Inc*., No. 21-cv-02436-BLF, 2023 WL 8040871, at *2-3 (N.D. Cal. Nov. 20, 2023). As the party invoking the crime-fraud exception, plaintiff must prove each step of the inquiry by a preponderance of the evidence. *See Skillz Platform* at *3.

Plaintiff correctly observes that whether VMWare has committed securities fraud with respect to disclosure about and management of its backlog is "the heart of this case," *see* Dkt. No. 116 at 4, but it points to no evidence that Mr. Dockery assisted VMWare in any fraudulent scheme or that his communications with in-house counsel were made in furtherance of such a scheme. Moreover, having reviewed the four documents in question *in camera*, the Court finds no evidence that would support application of the crime-fraud exception here.

## IV.   CONCLUSION

By **January 30, 2024**, VMWare shall reproduce to plaintiff the documents labeled DOCK013-017 and DOCK075 to remove the redactions identified above. Plaintiff shall immediately destroy the unredacted copies of the four documents at issue.

**IT IS SO ORDERED.**

Dated: January 29, 2024

*Virginia K. DeMarchi*
Virginia K. DeMarchi
United States Magistrate Judge