Asim M. Bhansali (SBN 194925)
*abhansali@kblfirm.com*
Nicholas A. Roethlisberger (SBN 280497)
*nroethlisberger@kblfirm.com*
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, California 94111
(415) 630-2350

Maeve L. O'Connor (*pro hac vice*)
*mloconnor@debevoise.com*
Elliot Greenfield (*pro hac vice*)
*egreenfield@debevoise.com*
Matthew J. Sorensen (*pro hac vice*)
*mjsorensen@debevoise.com*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

Attorneys for Defendants
VMWARE LLC, PATRICK P. GELSINGER and ZANE ROWE

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>VMWARE, INC., PATRICK P. GELSINGER, and ZANE ROWE,<br><br>    Defendants. | Case No.: 5:20-cv-02182-EJD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT VMWARE, INC. TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS**<br><br>Date:    March 5, 2024<br>Time:   10:00 a.m.<br>Judge:  Hon. Virginia K. DeMarchi<br>Ctrm.:  2 |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS ................................................................................................................3

    I.      THE SEC INVESTIGATION..............................................................................3

    II.     PROCEDURAL HISTORY....................................................................................5

ARGUMENT .....................................................................................................................................7

    I.      VMWARE DID NOT WAIVE ATTORNEY-CLIENT PRIVILEGE..................7

         A.     VMware Did Not Expressly Waive Privilege............................................7

         B.     VMware Did Not Impliedly Waive Privilege.........................................10

             1.     Defendants' Defenses Do Not Impliedly Waive Privilege. .........11

             2.     The Written Submission Did Not Impliedly Waive Privilege As to VMware's Backlog Disclosures. ........................11

             3.     The Trading Presentation Did Not Impliedly Waive Privilege As to VMware's Preclearance of Trades......................13

             4.     It Is Not Manifestly Unfair to Maintain Privilege. .....................13

    II.     VMWARE DID NOT WAIVE WORK PRODUCT PROTECTION.................14

    III.    PLAINTIFF'S REMAINING ARGUMENTS ARE WITHOUT MERIT. .........15

CONCLUSION................................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
  2022 WL 2276898 (N.D. Cal. June 23, 2022)................................................................12

*Acosta-Huerta v. Estelle*,
  7 F.3d 139 (9th Cir. 1992) ............................................................................................14

*Akamai Techs., Inc. v. Digital Island, Inc.*,
  2002 WL 1285126 (N.D. Cal. May 30, 2002)...............................................................15

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
  2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ..............................................................12

*Bittaker v. Woodford*,
  331 F.3d 715 (9th Cir. 2003) .....................................................................................7, 13

*City of Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010) ......................................................................................14

*Dukes v. Wal-Mart Stores, Inc.*,
  2013 WL 1282892 (N.D. Cal. Mar. 26, 2013) ...............................................................9

*Finjan, Inc. v. Sonicwall, Inc.*,
  2018 WL 4998149 (N.D. Cal. Oct. 15, 2018) ...............................................................14

*Fischel v. Equitable Life Assurance*,
  191 F.R.D. 606 (N.D. Cal. 2000) ...................................................................................7

*Genentech, Inc. v. Insmed Inc.*,
  236 F.R.D. 466 (N.D. Cal. 2006) ..............................................................................7, 11

*Grossman v. Directors Guild of Am., Inc.*,
  2018 WL 5914242 (C.D. Cal. Aug. 22, 2018) ................................................................8

*Holman v. Experian Info. Sols., Inc.*,
  2012 WL 2501085 (N.D. Cal. June 27, 2012)...............................................................13

*In re C.M. Meiers Co., Inc.*,
  2016 WL 9458553 (Bankr. C.D. Cal. Dec. 20, 2016) ...................................................12

*In re Intuitive Surgical Sec. Litig.*,
  2017 WL 5054404 (N.D. Cal. Apr. 10, 2017)...............................................................15

*In re Residential Cap., LLC*,
  491 B.R. 63 (Bankr. S.D.N.Y. 2013).............................................................................12

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987) .............................................................................................9

*Insight Glob., LLC v. Beacon Hill Staffing Grp., LLC*,
   2018 WL 6573081 (N.D. Cal. Dec. 13, 2018)...........................................................................16

*Isabel v. Reagan*,
   987 F.3d 1220 (9th Cir. 2021) ...............................................................................................14

*K.F. v. Baker Sch. Dist. 5J*,
   2021 WL 863198 (D. Or. Mar. 8, 2021)..................................................................................9

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*,
   2018 WL 6079617 (N.D. Cal. Nov. 21, 2018) ........................................................................12

*Rubalcava v. City of San Jose*,
   2022 WL 484988 (N.D. Cal. Feb. 16, 2022) ...........................................................................14

*S.E.C. v. Schroeder*,
   2009 WL 1125579 (N.D. Cal. Apr. 27, 2009) .........................................................................15

*Shenwick v. Twitter, Inc.*,
   2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) .........................................................................12

*Tennison v. City & County of San Francisco*,
   226 F.R.D. 615 (N.D. Cal. 2005) ...........................................................................................15

*United States v. Bauer*,
   132 F.3d 504 (9th Cir. 1997) ...................................................................................................7

*United States v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002)..................................................................................10

*United States v. Reyes*,
   239 F.R.D. 591 (N.D. Cal. 2006) ...........................................................................................15

*United States v. Sanimina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) .................................................................................................9

*United States v. White*,
   887 F.2d 267 (D.C. Cir. 1989)..........................................................................................12, 14

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ................................................................................................................7

*Wi-LAN, Inc. v. LG Elecs., Inc.*,
   2013 WL 685339 (N.D. Cal. Feb. 25, 2013) ...........................................................................9

Defendants VMware LLC ("VMware" or the "Company"), Patrick Gelsinger, and Zane Rowe respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion to Compel Defendant VMware, Inc. to Produce Documents Previously Withheld as Privileged and/or to Add Certain Custodians (ECF 137, the "Motion").

## PRELIMINARY STATEMENT

Plaintiff fails to advance any factual or legal basis for its sweeping claims that VMware expressly or impliedly waived the attorney-client privilege or work product protection during the SEC's investigation into VMware's backlog accounting.  Plaintiff failed to make such a showing in the parties' prior joint discovery dispute letter to the Court, ECF 105, and this dispute remains pending only because Plaintiff's theory of waiver "morphed" in real time at the November 14, 2023 oral argument on these issues from (*i*) primarily a theory of *implied* waiver based on VMware's written submissions to the SEC to (*ii*) primarily a theory of *express* waiver based on the production to the SEC of purportedly privileged e-mail communications.  Hr'g Tr. 65–66.  During that argument, Plaintiff claimed for the first time that VMware had produced "clearly privileged" communications to the SEC during its investigation. *Id.* at 12.  Referring to documents that were not in the record at the time, Plaintiff's counsel assured the Court that it was "unequivocal" that their production was an express waiver and that VMware's outside auditor, PricewaterhouseCoopers LLC ("PwC"), was "not even involved in the [e-mail] string" at issue. *Id.* at 12, 40.  On that basis, the Court ordered Plaintiff to submit a formal motion setting forth its waiver arguments.  Now that Plaintiff has identified the purportedly privileged documents at issue, it is clear that its representations regarding those documents are not true and its waiver arguments are entirely without merit.

*First*, Plaintiff cannot demonstrate that VMware expressly waived the attorney-client privilege for the simple reason that – contrary to Plaintiff's representations – none of the cited documents were privileged when they were produced to the SEC.  Those documents consist of e-mail communications that were contemporaneously forwarded to PwC and a draft of a public filing that was not under review by in-house counsel at the time.  Plaintiff is well aware of these facts because VMware fully explained them to the SEC during the investigation and VMware

produced that written correspondence to Plaintiff in June 2023.  Unable to identify any privileged documents produced to the SEC, Plaintiff misleadingly submits versions of the e-mail chains that do not show that they were contemporaneously forwarded to PwC.  The full version of those e-mail chains, attached to the accompanying Declaration of Matthew J. Sorensen, make clear that they are not privileged and there was no express waiver of privilege in connection with the SEC investigation.  Furthermore, to the extent that Plaintiff suggests that forwarding the e-mail to PwC effectuated a subject matter waiver, the law is clear that such an "extrajudicial disclosure" does not waive privilege as to anything other than the disclosed communications themselves.

*Second*, Plaintiff should not be permitted to hold its assertion of an implied waiver in abeyance until after it conducts a Rule 30(b)(6) deposition of VMware.  The Court has already considered – and rejected – that request, correctly concluding that it is most efficient for the parties to resolve the pending privilege disputes now.  ECF 124.  Plaintiff offers no substantive argument in support of its implied waiver theory, aside from repeating the flatly incorrect assertion that VMware put privileged advice at issue in the SEC investigation and is relying on advice of counsel with respect to the elements of misrepresentation and scienter in this case. VMware did not do so in the investigation and has disclaimed any intent to do so in this litigation.

*Third*, Plaintiff's half-hearted assertion – relegated to a footnote – that VMware waived work product protection as to every interview memo relevant to the SEC investigation is meritless.  Plaintiff offers no basis whatsoever to suggest that VMware's limited disclosure of a statement from one, non-privileged interview somehow results in a sweeping subject matter waiver of its work product relevant to the SEC investigation.

*Fourth*, the Court should reject Plaintiff's attempt to prolong these disputes further by demanding that VMware add three lawyers to its already fulsome list of document custodians, and asking that the Court review VMware's privileged communications *in camera*.

For these and other reasons discussed below, the Court should deny Plaintiff's Motion in its entirety with prejudice.

**STATEMENT OF FACTS**

**I.    THE SEC INVESTIGATION**

Although Plaintiff's waiver arguments are premised on purported positions and actions that VMware purportedly took before the SEC, Plaintiff omits from the record almost all the salient facts of what actually occurred during the investigation.  These omissions are notable because, in June 2023, VMware produced to Plaintiff its correspondence with the SEC – including its privilege logs – so as to provide additional context for its productions and privilege assertions during the SEC investigation.

The SEC commenced its investigation of VMware's backlog accounting in December 2019.  The investigation spanned nearly three years.  VMware cooperated fully and produced over 75,000 documents to the enforcement staff pursuant to multiple document requests and regulatory subpoenas, all of which have been produced to Plaintiff.  The SEC took testimony from eight VMware witnesses and two PwC witnesses.  The transcripts of those witnesses' testimony also have been produced to Plaintiff.

VMware asserted the attorney-client privilege in the SEC investigation and maintained the privilege at all times.  VMware neither produced nor described the contents of its privileged communications to the SEC.  VMware withheld privileged communications from its productions and logged them on its privilege log, comprising over 2600 entries.  VMware did not assert an advice of counsel defense in the SEC investigation.

Consistent with its commitment to cooperate fully with the SEC, VMware reassessed certain of its privilege assertions as new information came to light in the investigation.  For example, in May 2021, VMware learned that ten documents that it previously withheld on the basis of privilege, comprising different versions of a single email chain from June 2018, had been contemporaneously forwarded (in June 2018) to VMware's outside auditor, PwC, by VMware's general counsel and thus were not, in fact, privileged.  Ex. 1 (May 26, 2021 Email to the SEC) ("[W]e are planning to produce 10 documents this week that we are removing from our privilege log.  These are different versions of the same email chain that we recently learned was forwarded to PwC.  We will produce a revised privilege log as well."); Ex. 2 (May 28, 2021

Letter to the SEC) ("We previously withheld these documents as privileged and listed them on our privilege log . . . However, as we explained in our email to you on May 26, 2021, these documents reflect different versions of a single email chain that we recently determined is not privileged."); Ex. 3 (July 16, 2021 Letter to the SEC at LAMARTINA-VMW00253572–73) ("As we explained [previously], the documents reflect different versions of a single email chain that we had recently learned was forwarded to VMware's external auditor, PwC, and is therefore not privileged. . . .  We are not aware of any other documents that should be removed from our privilege log because they were shared with PwC.").[1]  As such, VMware promptly notified the enforcement staff of this development, produced those ten non-privileged documents to the SEC (the "PwC Forwarded Emails"), and revised its privilege log accordingly. *See* Ex. 1; Ex. 2; Ex. 3.  Plaintiff's express waiver argument relies almost entirely on the PwC Forwarded Emails.

Likewise, on July 16, 2021, "[p]er [the SEC's] request, and as part of VMware's commitment to fully cooperate with [the] investigation," VMware informed the SEC that the Company was withdrawing certain other privilege assertions because it had "identified certain withheld documents that [it] believe[d] can be produced without waiving any applicable privilege."  Ex. 3, at LAMARTINA-VMW00253572.  Specifically, the Company "identified versions of draft [public] filings that were not under legal review [and] endeavored to produce those versions and exclude them from [its] privilege log."  Ex. 3 at LAMARTINA-VMW00253573.  One such non-privileged document was produced with Bates range VMW00496085–086 (the "Public Filing Draft").  *See* Ex. A; *see also* Ex. 5 at LAMARTINA-VMW00253579.  The Public Filing Draft is the only other document on which Plaintiff relies as a purported express waiver of privilege.

On April 6, 2021, VMware made a presentation to the SEC staff concerning the company's processes to ensure compliance with internal policies on executive trading (the

---

[1] References herein to Exhibits numbered 1 to 5 are to the exhibits to the Declaration of Matthew J. Sorensen, dated February 9, 2024 submitted herewith.  References to Exhibits A to J are to the exhibits to the Declaration of Scott H. Saham, dated January 26, 2024.  ECF 136-1.

"Trading Presentation"), which cited certain non-privileged communications and did not disclose the substance of VMware's privileged communications on this topic. Ex. J. On April 18, 2022, following the SEC staff's presentation of its preliminary assessment of its investigation, counsel to VMware provided a written submission to the SEC outlining its views on the evidence the SEC relied on during its investigation (the "Written Submission"). Ex. G. Like the Trading Presentation, the Written Submission cited only non-privileged communications and did not disclose the substance of VMware's privileged communications.

VMware and the SEC reached a settlement, and on September 12, 2022, the SEC issued a Cease-and-Desist Order (the "SEC Order"). ECF 77-1. VMware ultimately consented to the entry of the SEC Order "[s]olely for the purpose of [the SEC] proceedings" and "without admitting or denying" the findings therein. *Id.* at 1. The contents of the SEC Order, including the SEC's conclusions of law and fact, are not binding on VMware or any other party outside of the SEC proceedings. *Id.* at 1, 2 n.1.

At no point during the investigation or in the SEC Order did the SEC ever suggest that VMware waived attorney-client privilege or work-product protection.

## II.    PROCEDURAL HISTORY

On September 6, 2023, Plaintiff asserted for the first time that VMware had waived its attorney-client and work-product privileges for documents relating to (1) in-house counsels' drafting and approval of the Company's backlog disclosure; (2) in-house counsels' approval of certain trading transactions; and (3) investigative interview memoranda generated by counsel during the investigation. ECF 105, at 2; ECF 115, at 4. On October 13, 2023, the parties filed a joint discovery dispute letter concerning Plaintiff's assertions of privilege waiver in accordance with the Court's individual rules. ECF 105. Plaintiff's arguments in the joint submission centered on assertions of an implied waiver of privilege, arguing that "[w]aiver here 'rest[s] on the 'fairness principle'" and that VMware waived privilege when it "put the conduct of its attorneys at issue in its voluntary (and exculpatory) submissions to the SEC." *Id.* at 2–3. In response, VMware maintained that it had not expressly or impliedly waived its privilege given

/ / /

that it had appropriately "withheld privileged communications" and that VMware never "place[d] privileged advice 'at issue'" before the SEC.  *Id.* at 5.

The Court held oral argument on the dispute on November 14, 2023.  At the hearing, as the Court recognized, Plaintiff's positions "morph[ed]" from primarily asserting an *implied* waiver to primarily contending there had been an *express* waiver of privilege based on the production of unspecified emails to the SEC.  *See* Hr'g Tr. 8:11–12, 22–23 ("The Court:  Is the Plaintiff contending that there is an express waiver, an implied waiver, or both? . . . Mr. Saham:  Well, I believe it's an express waiver, your Honor."), 12:6–10 ("The Court:  So is your contention that, if I had the opportunity to look at this, I would see that these are clearly privileged communications, not with an outside auditor, but with people within the fold?  Mr. Saham:  Yes."), 40:3–6 ("Mr. Saham:  It's so simple.  When you say, 'Accountants,' it's not PWC.  They're not even involved in the string.").  At the conclusion of the hearing, the Court ordered the parties to engage in formal briefing.  *Id.* at 65:18–66:1, 74:19–75:16.

Despite the Court's order, Plaintiff refused to engage in formal briefing, seeking instead to take a Rule 30(b)(6) deposition of VMware before the privilege disputes were resolved. ECF 115, at 3.  On January 3, 2024, the Court rejected Plaintiff's efforts, and "agree[d] with VMware that the noticed topics [for the deposition] implicate matters as to which plaintiff earlier contended VMware has waived privilege or work product protection, and that it would be most efficient to resolve the question of whether VMware has indeed waived privilege or work product protection before requiring VMware to prepare designees for the noticed deposition."  ECF 124, at 3.  The Court therefore ordered that VMware's Rule 30(b)(6) designee would not be recalled for a second deposition if Plaintiff decided to conduct that deposition prior to resolution of the privilege disputes, and it ordered Plaintiff to "file a notice advising the Court and VMware if [it] wishes to proceed with the Rule 30(b)(6) deposition before or after resolution of the waiver issue."  *Id.*

Plaintiff filed this Motion on January 26, 2024.  ECF 137.

/ / /

/ / /

**ARGUMENT**

"In the Ninth Circuit the privilege is jealously guarded." *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 607 (N.D. Cal. 2000). "[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*

For these reasons, as here, "[o]nce the privilege has been established, the party seeking to pierce it bears the burden of showing an exception," such as waiver, "exists." *Fischel*, 191 F.R.D. at 607. Plaintiff has failed to meet its burden here.

## I.   VMWARE DID NOT WAIVE ATTORNEY-CLIENT PRIVILEGE.

Plaintiff's assertions of privilege waiver are without merit. Despite Plaintiff's confusing approach on this Motion, the Ninth Circuit recognizes only two types of privilege waiver in this context: express and implied. "An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). An implied waiver occurs (1) when a party takes an "affirmative act"; (2) "through the affirmative act, the asserting party puts the privileged information at issue"; and (3) "allowing the privilege to protect against disclosure of the information would be *manifestly unfair* to the opposing party." *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 468 (N.D. Cal. 2006) (emphasis added). Plaintiff fails to demonstrate either type of waiver.

### A.   VMware Did Not Expressly Waive Privilege.

Plaintiff's assertion that VMware expressly waived privilege by producing certain materials to the SEC has no basis in law or fact. VMware withheld its privileged communications from production during the SEC investigation, it logged those communications

on its privilege log, and it neither disclosed nor described their contents to the SEC.  *See* *Grossman v. Directors Guild of Am., Inc.*, 2018 WL 5914242, at *9 (C.D. Cal. Aug. 22, 2018) (no express waiver where privileged information was not shared with third party and privilege not otherwise disregarded).

Plaintiff's grossly misleading assertion that VMware "deliberate[ly] disclos[ed] . . . clearly privileged substantive legal advice" to the SEC does not find even a modicum of support in the documents upon which Plaintiff relies.  Mot. 5.  Those documents comprise: (*i*) the PwC Forwarded Emails and (*ii*) the Public Filing Draft.  VMware's production of these documents to the SEC was not an express waiver – much less a broad subject-matter waiver – because they were not privileged.

*First*, the PwC Forwarded Emails are not privileged because they were contemporaneously forwarded to PwC, the Company's outside auditor.  *See* Ex. 4 (Email exchange between PwC and VMware); *see also* Ex. 1; Ex. 2; Ex. 3.  When VMware learned of this fact during the course of the SEC investigation, it promptly notified the SEC and produced the PwC Forwarded Emails.  Ex. 1; Ex. 2; Ex. 3.  Plaintiff's observation that certain of these communications were "stamped 'privileged and confidential'" is beside the point because once VMware learned they had been contemporaneously forwarded to PwC there was no longer any valid basis to withhold them from the SEC.  Mot. 5.  VMware continued to maintain the privilege over the portions of the communications that had not been shared with PwC, however, including by redacting such communications in the documents ultimately produced to the SEC.  *See* Ex. 2 at LAMARTINA-VMW-00253259, 00253329 (redacting emails between VMware counsel and employee that had not been forwarded to PwC).  Under these circumstances, there is no basis to conclude that VMware expressly waived the privilege by producing the PwC Forwarded Emails to the SEC.[2]

---

[2] None of the cases cited by Plaintiff in support of its express waiver argument are to the contrary as each concern a party who disclosed indisputably privileged communications to an adversary and put them in issue in the litigation.  In particular, *United States v. Sanimina Corp.* is unhelpful to Plaintiff because it concerns an express waiver of attorney-client privilege during an adversarial IRS audit, it did not find a subject matter waiver, and the court concluded that the

Plaintiff misleadingly attaches to its Motion as Exhibits C, D, and E *earlier versions* of the email chain that do not show that it was forwarded to PwC.  *See* Ex. C; Ex. D; Ex. E; *see also* Mot. 8 (asserting that the production of the emails contained in Exhibits C, D, and E to the SEC expressly waived privilege).  As Exhibits 2 and 4 to the Declaration of Matthew J. Sorensen make clear, however, those same emails were forwarded to PwC a mere thirteen minutes later.  *Compare* Ex. 2 (PwC Forwarded Emails) *and* Ex. 4 (Email exchange between PwC and VMware) *with* Ex. C, D, E (comprising the same emails).  Plaintiff's gamesmanship should not be countenanced.

Plaintiff's argument that the PwC Forwarded Emails effectuated a broad subject-matter waiver is likewise foreclosed by well-settled law.  The only "waiver" with respect to these communications took place in June 2018 when they were contemporaneously forwarded to the auditor.  Such a disclosure is referred to as an "extrajudicial disclosure," and courts have repeatedly recognized that the waiver extends only to the communications actually disclosed, as opposed to all communications about the same broad subject matter.  *See In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("[S]o long as such disclosures are and remain extrajudicial, there is no legal prejudice that warrants a broad court-imposed subject matter waiver.  . . . . Therefore, insofar as the district court broadened petitioner's waiver to include related conversations on the same subject it was in error."); *K.F. v. Baker Sch. Dist. 5J*, 2021 WL 863198, at *4 (D. Or. Mar. 8, 2021) (declining to find a subject-matter waiver following extrajudicial disclosure of privileged communications); *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *9 (N.D. Cal. Mar. 26, 2013) (same).  Moreover, as discussed below, VMware has disclaimed any intent to rely on the advice of counsel in this case and will not otherwise put its privileged communications in issue, which further forecloses a subject-matter waiver.  *See Dukes*, 2013 WL 1282892, at *9 ("[D]isclosures made [extra-judicially] rather than in court – even if selective – create no risk of legal prejudice until put at issue in the litigation by the privilege holder."); *Wi-LAN, Inc. v. LG Elecs., Inc.*, 2013 WL 685339, at *4 (N.D. Cal. Feb. 25, 2013)

---

disclosed documents were protected by the work product doctrine.  968 F.3d 1107, 1119–23 (9th Cir. 2020).

(no subject matter waiver from extrajudicial disclosure because party did not use and disclaimed any intent to use the privileged communication in the litigation).  Plaintiff cites no contrary authority.

*Second*, Plaintiff's reliance on the Public Filing Draft fails because that document also is not privileged.  Mot. 7–8; Ex. A.  This document was initially produced to the SEC in redacted form and later un-redacted as part of VMware's good faith attempt to respect the boundaries of the privilege.  As explained above, VMware initially redacted the draft disclosure, but later reassessed its position and produced it after determining that the draft was not under legal review at the relevant time.  *See* Ex. 3; Ex. 5.  VMware did exactly what it was supposed to do: in response to the SEC's inquiry regarding privilege, the Company re-reviewed its privilege log and determined that the Public Filing Draft could be produced because it was not privileged.  Ex. 3; Ex. 5.  VMware's decision to un-redact the document was correct because the document does not reflect that lawyers were, at that time, being asked to weigh in on the disclosure and instead reflects that they were merely copied on the communication by business people.  *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1075 (N.D. Cal. 2002) ("[M]ere fact that . . . counsel was copied" on a communication "will not shield communications not made for the purpose of securing legal advice.").[3]

**B.      VMware Did Not Impliedly Waive Privilege.**

As a threshold matter, the Court already rejected Plaintiff's argument that it should not have to brief the issue of implied waiver until after it takes the 30(b)(6) deposition of VMware.  ECF 124, at 3 ("[T]here is no reason for the parties to postpone briefing on the waiver issue.").  Rather than follow the Court's instructions, Plaintiff again contends that implied waiver should not be addressed until after it conducts the deposition and fails to articulate an implied waiver argument of any substance in its brief – opting instead to string together long quotations concerning fairness and subject-matter waivers with conclusory assertions about Defendants'

---

[3] None of the other documents attached to the Motion – communications with third parties and a publicly filed version of an SEC disclosure – are privileged and thus their disclosure cannot support an express waiver.  Ex. B; Ex. F.

affirmative defenses and purported positions that Defendants took before the SEC.  Mot. 12–17.
The Court should once again reject Plaintiff's attempt to preserve this issue for resolution at
some unspecified time in the future.

VMware has not impliedly waived the privilege because it has not placed its privileged
communications "at issue," and it would not be manifestly unfair for VMware to maintain the
privilege.  *Genentech, Inc.*, 236 F.R.D. at 468.

### 1.	Defendants' Defenses Do Not Impliedly Waive Privilege.

Plaintiff's argument that Defendants put VMware's privileged advice "at issue" in
defenses they intend to assert is without merit.  Mot. 12.  The relevant defenses simply state
that:  (*i*) "Defendants are not liable because VMware fully satisfied its disclosure obligations."
(Fifth Defense); and (*ii*) "Defendants are not liable because they did not act with scienter."
(Eight Defense).  ECF 86, at 37.  Neither of these defenses involves advice of counsel or
references lawyers in any way, as the Court recognized at oral argument:

> THE COURT:  [I]s it your contention that the fifth affirmative defense and
> the eighth affirmative defense specifically reference lawyers, or do they just
> say, "We acted in good faith"? . . . When they say, "We acted in good faith,"
> do they say, "We acted in good faith because we consulted counsel"?
> MR. SAHAM:  No, they just –
> THE COURT:  Any mention of counsel anywhere –
> MR. SAHAM:  No, Your Honor.
> THE COURT:  —in the affirmative defense?  Okay.
> MR. SAHAM:  No.

Hr'g Tr. 14:22–25, 15:15–22.  There are numerous ways Defendants may contest the elements
of misrepresentation and scienter without putting the substance of legal advice at issue – *e.g.*, by
highlighting the role played by PwC with respect to VMware's backlog disclosures.  Plaintiff's
suggestion that Defendants have put legal advice at issue merely by contesting those elements is
nonsensical.  Mot. 12–13.  If that were the rule, then nearly every defendant in a securities case
would be deemed to have waived privilege.

### 2.	The Written Submission Did Not Impliedly Waive Privilege As to VMware's Backlog Disclosures.

Plaintiff's suggestion that VMware put privileged advice in issue by twice mentioning
"good faith" in describing its overall disclosure process in the Written Submission is likewise

misplaced. Mot. 12–14. *See, e.g., In re C.M. Meiers Co., Inc.*, 2016 WL 9458553, at \*26 (Bankr. C.D. Cal. Dec. 20, 2016) (recognizing defendant did not impliedly "waive the attorney-client privilege" by arguing it "acted reasonably by retaining . . . counsel" because "[c]onsulting with counsel" was just "one piece of the entire claims review process"); *In re Residential Cap., LLC*, 491 B.R. 63, 72 (Bankr. S.D.N.Y. 2013) (attorney-client privilege not waived if debtors "argued that they sought the advice of counsel, among other actions, in an effort to reasonably educate themselves as to [relevant matters]").[4]

The Written Submission's factual descriptions of the *process* undertaken by the Company and PwC in connection with crafting its disclosures did not put the *substance* of privileged communications at issue. As the Court observed, the Written Submission cited non-privileged communications and noted counsel's general involvement in the discussions with PwC. Hr'g Tr. 39:8–19 (stating to Plaintiff's counsel, "[Y]ou can't tell me that it was only lawyers, and that they're arguing that it's only lawyers. They're saying there was a communication between the legal professionals and the accounting firm, back and forth, and ultimately they say they relied on the advice of their accounting firm. That's the position they took in front of the SEC."). The mere fact that lawyers were consulted is insufficient to find waiver. *See, e.g., United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) (Ginsburg, J.) ("An averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice. Where a defendant neither reveals substantive information, nor prejudices the government's case . . . fairness and consistency do not require the inference of waiver."); *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, 2018 WL 6079617, at \*2 (N.D. Cal. Nov. 21, 2018) (no waiver where defendants "recited the fact that they consulted with counsel" "in recounting the factual narrative of what they did"); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 2009 WL 3111766, at \*16 (S.D.N.Y. Sept. 28, 2009)

---

[4] *Abdo v. Fitzsimmons* and *Shenwick v. Twitter, Inc.*, cited by Plaintiff, are not to the contrary. *Abdo*, 2022 WL 2276898 (N.D. Cal. June 23, 2022); *Shenwick*, 2021 WL 1232451 (N.D. Cal. Mar. 31, 2021). They are decisions on motions in limine and concern what evidence a defendant may introduce when not pursuing a reliance on counsel defense. Neither case finds a privilege waiver.

("[M]erely stating that [defendant] sought advice of counsel on a particular topic does not . . . waive privilege.").

### 3.   The Trading Presentation Did Not Impliedly Waive Privilege As to VMware's Preclearance of Trades.

Plaintiff's assertions that VMware impliedly waived privilege in the Trading Presentation are likewise without merit. Mot. 9–11. The presentation does nothing more than describe the Company's internal policy and processes for the preclearance of executive trades and excerpts non-privileged e-mail communications between VMware and third-party brokerage firms. Ex. J. Again, as the Court observed, "[t]here is no actual substantive legal advice disclosed" in the Trading Presentation and the e-mails contained therein do not "actually . . . reveal any of the attorneys' thought processes. It just says, 'Done,' like, 'This is the outcome, pre-cleared,' like, 'Done.'" Hr'g Tr. 20:12–13, 22:5–8. Plaintiff offers no explanation how this straightforward description of an internal corporate process put VMware's privileged legal advice at issue.

### 4.   It Is Not Manifestly Unfair to Maintain Privilege.

Plaintiff also fails to demonstrate that it would be manifestly unfair for VMware to maintain the privilege. VMware has taken principled steps to appropriately protect its privilege at all relevant times. VMware has not asserted a reliance on counsel defense or acted in any way to put privileged advice in issue – nor will it do so in this case. Hr'g Tr. 48:18–20 ("MS. O'CONNOR: Well, we are certainly not going to put the advice of counsel at issue, and we don't intend to do that in any way."); *see Bittaker*, 331 F.3d at 720–21 ("The court . . . gives the holder of the privilege a choice: . . . [it may waive or it] may preserve the confidentiality of the privileged communications by [abandoning] the claim that gives rise to the waiver condition."); *Holman v. Experian Info. Sols., Inc.*, 2012 WL 2501085, at *5 (N.D. Cal. June 27, 2012) (no waiver where defendant "unequivocally" stated "it will not rely on an advice of counsel defense for any purpose"). The only manifest unfairness would be to find a far-reaching implied subject-matter waiver by hindsight – one never even mentioned by the SEC. As then-Judge Ginsburg observed in *White*:

> A general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege. The government acknowledged as much when it admitted at oral argument that if the GSA investigators had followed up White's undetailed assertion by asking what his attorneys told him, White at that point still would have been able to claim his privilege and refuse to answer. A contrary rule would ill-serve the policies underlying the doctrine of implied waiver.

887 F.2d at 271. VMware has used the privilege only as a shield, and the drastic remedy of implied waiver is not appropriate on these facts. *Finjan, Inc. v. Sonicwall, Inc.*, 2018 WL 4998149, at *4 (N.D. Cal. Oct. 15, 2018) (no waiver where privilege used only as a shield).

## II.   VMWARE DID NOT WAIVE WORK PRODUCT PROTECTION.

Plaintiff's argument that VMware waived work product protection is also without merit. As a threshold matter, Plaintiff largely abandons – and therefore waives – this argument by raising it only in a footnote on the final substantive page of its brief. Mot. 16 n.13. *See, e.g.*, *Isabel v. Reagan*, 987 F.3d 1220, 1225 n.7 (9th Cir. 2021) (failing to address an issue "in [the] opening brief except in a footnote" constitutes waiver); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) ("By failing to address the issue in its opening brief except in a footnote, Sherwin–Williams waived any claim that CERCLA § 113(f)(2) bars Intervenors' cross-claims."); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992) (contentions raised only in a footnote of the opening brief are deemed "abandoned").

In any event, Plaintiff's claim that VMware waived work product protection for every interview memo relevant to the SEC investigation is unfounded. Mot. 16 n.13. Here, VMware shared with the SEC certain statements that PwC partner Stephane Berthier made to counsel during a non-privileged interview. Plaintiff has access to the statements and may cross-examine Berthier about them. To the extent the disclosure of additional information may be required, it should be limited to the factual work product reflected in counsel's notes from that interview, with any opinion work product appropriately redacted. *See Rubalcava v. City of San Jose*, 2022 WL 484988, at *5 (N.D. Cal. Feb. 16, 2022).

VMware did not disclose the contents of any other interviews nor did it rely on them in advocating before the SEC, a fact the Court recognized at oral argument. Hr'g Tr. 25:14–17

("[S]o far as I can tell from your papers, there hasn't been a disclosure to the SEC of any other witness' interview."); *see also S.E.C. v. Schroeder*, 2009 WL 1125579, at *5, 7 (N.D. Cal. Apr. 27, 2009) (no waiver of undisclosed interview notes despite production of final interview memoranda to SEC); *United States v. Reyes*, 239 F.R.D. 591, 604 (N.D. Cal. 2006) (interview memos waived "to the extent [such materials were actually] disclosed to the government"). There is no legal authority supporting the sweeping subject matter waiver Plaintiff seeks over Defendants' work product. *See Akamai Techs., Inc. v. Digital Island, Inc.*, 2002 WL 1285126, at *10 (N.D. Cal. May 30, 2002) (finding "unconvincing" and "unjustified" plaintiff's assertion that "subject matter waiver may arise under the work product doctrine"); *In re Intuitive Surgical Sec. Litig.*, 2017 WL 5054404, at *3 (N.D. Cal. Apr. 10, 2017) (same). Unsurprisingly, Plaintiff offers no legal authority for its position that work product protections have been waived as to the entire subject of VMware's backlog disclosures. The only decision that Plaintiff cites, *Tennison v. City & County of San Francisco*, involved a limited waiver of factual work product directly related to an intentional disclosure of *privileged* information. 226 F.R.D. 615, 621 (N.D. Cal. 2005).

**III.     PLAINTIFF'S REMAINING ARGUMENTS ARE WITHOUT MERIT.**

The Court should reject Plaintiff's efforts to drag this dispute out even longer by demanding that (*i*) VMware should be compelled to add its in-house counsel as document custodians and (*ii*) the Court should review VMware's privileged communications *in camera*.

*First*, there is no valid basis to require adding VMware's in-house counsel as document custodians. Their inclusion would necessarily impose an enormous burden by requiring privilege review and logging of every relevant document, and the vast majority of relevant, non-privileged communications are almost certainly already captured in the custodial documents of VMware's thirteen non-lawyer custodians. Plaintiff offers nothing to the contrary, merely asserting that VMware's in-house counsel are relevant to the claims and defenses. As noted above, VMware is not relying on the advice of counsel in this lawsuit.

*Second*, Plaintiff does not even attempt to make the required showing for an *in camera* review of VMware's privileged communications. *See, e.g.*, *Insight Glob., LLC v. Beacon Hill*

*Staffing Grp., LLC*, 2018 WL 6573081, at \*4 (N.D. Cal. Dec. 13, 2018) (*in-camera* review appropriate only where "the party seeking discovery 'established reasonable, good faith doubts about the propriety of the redactions' made to the disputed documents").  Although Plaintiff asserts that Defendants have not sustained their burden to demonstrate that the privilege applies, Plaintiff ignores that Defendants' privilege log clearly enumerates communications between individuals at VMware and VMware's in-house counsel for the purpose of receiving legal advice and therefore were properly withheld or redacted.  The record is also clear that, after a careful dialogue with the SEC, VMware's SEC counsel drew the correct privilege distinctions by producing documents that had been forwarded to outside parties or were otherwise not privileged because they were not under legal review and withholding documents reflecting bona fide privileged communications.  Ex. 1; Ex. 2; Ex. 3; Ex. 5.  Nothing more is required, and there is no basis for *in camera* review.

## CONCLUSION

For the reasons stated above, the Motion should be denied in its entirety with prejudice.

Respectfully submitted,

Dated: February 9, 2024          By: */s/ Maeve L. O'Connor*

Maeve L. O'Connor (*pro hac vice*)
*mloconnor@debevoise.com*
Elliot Greenfield (*pro hac vice*)
*egreenfield@debevoise.com*
Matthew J. Sorensen (*pro hac vice*)
*mjsorensen@debevoise.com*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

Asim M. Bhansali (SBN 194925)
*abhansali@kblfirm.com*
Nicholas A. Roethlisberger (SBN 280497)
*nroethlisberger@kblfirm.com*
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750

San Francisco, California 94111
(415) 630-2350

Attorneys for Defendants VMWARE LLC,
PATRICK P. GELSINGER and ZANE ROWE