ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
         – and –
SPENCER A. BURKHOLZ (147029)
LAURIE L. LARGENT (153493)
SCOTT H. SAHAM (188355)
ASHLEY M. KELLY (281597)
TING H. LIU (307747)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
llargent@rgrdlaw.com
scotts@rgrdlaw.com
ashleyk@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>VMWARE, INC., et al.,<br><br>                              Defendants. | Case No. 5:20-cv-02182-EJD (VKD)<br><br>CLASS ACTION<br><br>PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS<br><br>Judge: Hon. Virginia K. Demarchi<br>Date:   March 5, 2024<br>Time:  10:00 A.M.<br>Location: Courtroom 2, 5th Floor |

4891-0949-8021.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................................1

II.     ARGUMENT ...........................................................................................................4

        A.      VMware's In-House Counsel Played a Substantial Role in Drafting the
                Company's Backlog Disclosure..............................................................................4

        B.      Subject Matter Waiver Is Warranted for Defendants' Express Waiver...................5

        C.      Implied Waiver Clearly Occurred............................................................................9

        D.      VMware Waived Work-Product Protections When It Disclosed the
                Substance of the Berthier Memoranda to the SEC and Plaintiff ..........................10

        E.      Plaintiff Is Entitled to Communications Concerning In-House Counsel's
                Preclearance of the Individual Defendants' Insider Transactions ........................11

        F.      VMware Has Failed to Demonstrate the Burden of Adding In-House
                Counsel as Custodians ..........................................................................................12

III.    CONCLUSION.......................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abdo v. Fitzsimmons*,
2022 WL 2276898 (N.D. Cal. June 23, 2022) .................................................................10

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
237 F.R.D. 624 (N.D. Cal. 2006).......................................................................................7, 8

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) .............................................................................................9, 12

*Century Aluminum Co. v. AGCS Marine Ins. Co.*,
285 F.R.D. 468 (N.D. Cal. 2012)........................................................................................8

*Dukes v. Wal-Mart Stores, Inc.*,
2013 WL 1282892 (N.D. Cal. 2013) ..................................................................................6

*In re Banc of Cal. Sec. Litig.*,
2018 WL 2373860 (C.D. Cal. May 23, 2018) ....................................................................11

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
2021 WL 10282213 (N.D. Cal. Nov. 14, 2021) ..................................................................13

*In re Juniper Networks, Inc., Sec. Litig.*,
2009 WL 4644534 (N.D. Cal. Dec. 9, 2009).......................................................................5

*In re von Bulow*,
828 F.2d 94 (2d Cir. 1987)..................................................................................................6

*Lenz v. Universal Music Corp.*,
2010 WL 4789099 (N.D. Cal. Nov. 17, 2010) ....................................................................8

*Luna v. Marvell Tech. Grp., Ltd.*,
2017 WL 4286325 (N.D. Cal. Sept. 22, 2017) ...................................................................10

*Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*,
2011 WL 2559825 (N.D. Cal. June 28, 2011)....................................................................12

*Rubalcava v. City of San Jose*,
2022 WL 484988 (N.D. Cal. Feb. 16, 2022) .......................................................................11

*Shenwick v. Twitter, Inc.*,
2021 WL 1232451 (N.D. Cal. Mar. 31, 2021)....................................................................10

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO
COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS
PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)
4891-0949-8021.v1

- ii -

**Page**

*Sia Chue Yang v. Schwarzenegger*,
 2010 WL 11587074 (N.D. Cal. May 12, 2010)......................................................................12

*SNK Corp. of Am. v. Atlus Dream Ent. Co., Ltd.*,
 188 F.R.D. 566 (N.D. Cal. 1999)..........................................................................................10

*Tennison v. City & Cnty. of S.F*,
 226 F.R.D. 615 (N.D. Cal. 2005)..........................................................................................11

*United States ex. rel. Parikh v. Premera Blue Cross*,
 2006 WL 6654604 (W.D. Wash. Oct. 31, 2006) ................................................................6, 8

*United States v. Reyes*,
 239 F.R.D. 591 (N.D. Cal. 2006)..........................................................................................10

*United States v. Richey*,
 632 F.3d 559 (9th Cir. 2011) ...................................................................................................6

*United States v. Ruehle*,
 583 F.3d 600 (9th Cir. 2009) ...............................................................................................5, 6

*United States v. Sanmina*,
 968 F.3d 1107 (9th Cir. 2020) ............................................................................................7, 10

*United States v. White*,
 887 F.2d 267 (D.C. Cir. 1989)..................................................................................................9

*Wadler v. Bio-Rad Labs., Inc.*,
 212 F. Supp. 3d 829 (N.D. Cal. 2016) .....................................................................................5

*Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*,
 647 F.2d 18 (9th Cir. 1981) ......................................................................................................6

*Wi-LAN, Inc. v. LG Elecs., Inc.*,
 2013 WL 685339 (N.D. Cal. Feb. 25, 2013) ...........................................................................6

*Wisk Aero LLC v. Archer Aviation Inc.*,
 2022 WL 524065 (N.D. Cal. Feb. 22, 2022) .........................................................................12

**STATUTES RULES & REGULATIONS**

Federal Rules of Evidence
 Rule 502(a)..........................................................................................................................7, 8

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-5:20-cv-02182-EJD (VKD)
4891-0949-8021.v1

- iii -

Lead Plaintiff Eastern Atlantic States Carpenters Pension Fund ("Plaintiff") respectfully submits this reply memorandum of law in further support of its Motion to Compel Defendant VMware to Produce Documents Previously Withheld as Privileged and/or Protected and to Add Certain Individuals as Custodians (ECF 137) (the "Motion").

## I.    INTRODUCTION

Defendant VMware, Inc. ("VMware" or the "Company") forwarded privileged communications to its external auditor, PricewaterhouseCoopers LLP ("PwC"), while the Company and its auditor were finalizing VMware's Q1 2019 Form 10-Q, and then produced those same privileged communications (and others) to the United States Securities and Exchange Commission ("SEC") during the course of its investigation, and then produced those same documents a third time, to Plaintiff in this case. The production of privileged communications to PwC, the SEC, and Plaintiff constitutes an intentional, express waiver of VMware's privilege as to those backlog disclosure drafting communications. In fairness, Plaintiff is entitled to other similar communications Defendants refuse to produce concerning the same subject matter.[1]

There is no dispute that in May-June 2018, VMware's in-house counsel was substantively involved in crafting the backlog disclosure at issue in this case. The record currently before the Court contains at least a dozen discrete, internally-exchanged VMware emails (made without the presence of a third party) that reveal the substance of communications by and among VMware's in-house counsel and its executives concerning the drafting and revision of the backlog disclosure, before any of those emails were ever provided to PwC. *See, e.g.*, Ex. A[2] (two internally-exchanged emails); Ex. I (two internally-exchanged emails); Ex. 4 (nine internally-exchanged emails).

---

[1]    "Defendants" are VMware and Individual Defendants Patrick Gelsinger ("Gelsinger"), Zane Rowe ("Rowe").

[2]    References to Exhibits A, B, D, G, H, and I are to the Declaration of Scott H. Saham in Support of the Motion (ECF 137-1, 137-2, 137-3, 137-5, 137-8, 137-9, 137-10). References to Exhibits 1, 3, and 4 are to the Declaration of Matthew J. Sorensen (ECF 145) in Support of

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)                                                                           - 1 -
4891-0949-8021.v1

There is also no legitimate dispute that each of the internal communications were privileged at the time they were made.  The backlog disclosure communications were stamped "privileged," and reflected that a VMware executive asked the Company's in-house counsel for "your thoughts on the [backlog disclosure] language," and that VMware's in-house counsel conferred with Individual Defendants Gelsinger and Rowe prior to Defendants approving the backlog disclosure.  *See* Ex. D. Those very same documents were, in fact, described as privileged ***by VMware*** when VMware produced them to the SEC.[3]  According to VMware, draft disclosures for its SEC Forms 10-Q, including the draft disclosures at issue here (as is apparent on the privilege log), "are protected by the attorney-client privilege," given "the integral role that attorneys have in providing legal advice throughout the company's drafting process."  Ex. 3 at LAMARTINA-VMW00253573.

Nevertheless, VMware's in-house counsel made the decision to waive attorney-client privilege and share certain, but not all, of those internal emails with PwC.  *See, e.g.*, Ex. B; Ex. 4. Still other communications were not shared with PwC, but were produced to the SEC and to Plaintiff here.  *See*, *e.g.*, Ex. A.[4]  In one instance, VMware withheld a draft backlog disclosure from the SEC

Defendants' Opposition to Plaintiff's Motion to Compel Defendant VMware, Inc. to Produce Documents Previously Withheld as Privileged and/or Protected and to Add Certain Individuals as Custodians (ECF 144) ("Oppo.").

[3]     VMware never produced to Plaintiff the email referenced in Exhibit 1. Also missing from Defendants' productions are the emails forwarding the at-issue communications to PwC. *See, e.g.*, Ex. 4.  Plaintiff obtained those emails via subpoenas served on third parties PwC and the SEC. *See id*. (reflecting PwC and SEC Bates stamps).  It is unclear why Defendants failed to produce the same email from VMware's files given it is clearly responsive to Plaintiff's requests.  Plaintiff has raised concerns as to the completeness of Defendants' productions on numerous occasions.

[4]     Exhibit I is also an internally-exchanged email, reflecting the removal of the discretionary language in the Company's draft backlog disclosure.  The initial June 1, 2018 email from Kevan Krysler to several VMware employees, including in-house counsel Norris, spurred a number of other

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)
4891-0949-8021.v1

- 2 -

and Plaintiff as privileged while simultaneously fully disclosing another version of the same email attachment. *Compare* Ex. H (redacting for privilege the backlog disclosure attachment) *with* Ex. A (producing without redacting the backlog disclosure).  The disclosure of all of these communications effectuated express waiver.[5]  Indeed, Defendants concede that VMware's privilege was waived as to certain of the communications when VMware voluntarily shared the communications with PwC, such that by the time they were subsequently produced to the SEC, Defendants claim privilege no longer existed.  Oppo. at 8 ("[O]nce VMware learned they had been contemporaneously forwarded to PwC there was no longer any valid basis to withhold them from the SEC.").

As to other communications not shared with PwC, but nevertheless disclosed to the SEC and Plaintiff, Defendants claim those documents are not privileged because they constituted draft disclosures that were "not under review by in-house counsel at the time."  Oppo. at 1.  But all of the disclosed communications concern the same backlog disclosure, which was drafted in May and June of 2018, and which was simultaneously under review by VMware's executives and counsel alike.  The provision of privileged emails to PwC, like the provision of the emails to the SEC and to Plaintiff here, constituted an intentional, express waiver of the privilege.  Since Defendants expressly waived the privilege not once, not twice, but three times, the privilege has been waived as to the other 52 communications concerning the same subject matter: the drafting of the backlog disclosure in May and June of 2018.

Finally, given Defendants' failure to abandon certain defenses that necessitate discovery of privileged information, fairness likewise requires the Court find an implied waiver of privilege not only to the backlog disclosure, but also to communications concerning VMware's in-house counsel's email threads, some of which reflect only internal discussions, and some of which were later forwarded to PwC.

[5]    To be clear, there are other internally-exchanged and externally-exchanged (with PwC) email communications concerning the backlog disclosure not addressed here that have been produced to the SEC and Plaintiff.

approval (or denial) of the Individual Defendants' insider transactions and communications concerning those subject matters. Fairness also requires the disclosure of interview memoranda concerning the same subject matter as the previously-work-product-protected interview memoranda of Stephane Berthier, substantive portions of which were produced to both the SEC and Plaintiff.

## II.    ARGUMENT

### A.    VMware's In-House Counsel Played a Substantial Role in Drafting the Company's Backlog Disclosure

VMware's various assertions that certain versions of the backlog disclosure were "not under legal review," and that in-house counsel were "merely copied on the communications by business people" (Oppo. at 4, 10), grossly mischaracterize the nature of the communications.[6] Defendants' assertions are contradicted by the express language of the produced emails, which reveal VMware's attorneys, Amy Olli ("Olli"), Craig Norris ("Norris"), and Larry Wainblat ("Wainblat"), were (1) intimately involved and provided "a great deal of help" in drafting the backlog disclosure language (Ex. D at VMW00495790); (2) upset when that language got "watered down" to remove the discretionary language (*id*. at VMW00495787); (3) engaged with "Pat [Gelsinger], Zane [Rowe] and Brownie" in drafting the disclosure (*id*. at VMW00495788); and, (4) expressly asked to provide, and in fact did provide, legal advice up until days before the backlog disclosure was finalized in VMware's Q1 2019 Form 10-Q. *See* Ex. D at VMW000495787 (Chief Accounting Officer Krysler imploring in-house counsel Olli and Norris to "let me know your thoughts on the language below.")

Moreover, VMware's in-house attorneys took steps to stamp the communications "privileged," and the privileged nature was confirmed by VMware's own correspondence with the SEC. During the course of the SEC's investigation, VMware told the SEC:

---

[6]    Defendants claim a May 31, 2018 email was not privileged, because "the draft [disclosure] was not under legal review at the relevant time," (*id*., citing Ex. A), but that email attached the very same disclosure that attorney Craig Norris reviewed and forwarded to PwC, and which was subsequently revised by the Company's attorneys over the next several days. *See* Ex. B. at PWC_LAMARTINA_00020171 (forwarding same email from Krysler); Motion at 7-8.

> We have generally taken the position that drafts of VMware's securities filings, including draft disclosures for Forms 10-K and 10-Q, are protected by the attorney-client privilege. . . .***VMware's assertion of privilege over these documents is based on the integral role that attorneys have in providing legal advice throughout the company's drafting process***.[7]

Ex. 3 at LAMARTINA-VMW00253573.  There can be no doubt as to the privileged nature of the at-issue communications.

### B.     Subject Matter Waiver Is Warranted for Defendants' Express Waiver

The at-issue backlog disclosure drafting communications were, at one point, privileged. That privilege was waived when the communications were voluntarily disclosed to third parties PwC, the SEC, and Plaintiff.  Oppo. at 8 ("[O]nce VMware learned they had been contemporaneously forwarded to PwC there was no longer any valid basis to withhold them from the SEC."); *In re Juniper Networks, Inc., Sec. Litig.*, 2009 WL 4644534, at *2 (N.D. Cal. Dec. 9, 2009).  The only issue, therefore, concerning express waiver is the scope of that waiver.[8]

VMware's express waiver extends "to all matters at issue" in its voluntary disclosure of privileged materials – *i.e.*, the backlog disclosure.  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("First, there is no dispute that Broadcom had an existing attorney-client relationship with Irell and, by electing to reveal the information gathered to Ernst & Young (and later to various agencies of the United States), ***deliberately waived any corporate attorney-client privilege it held with respect to all matters at issue***."); *see also Wadler v. Bio-Rad Labs., Inc.*, 212 F. Supp. 3d 829, 850 (N.D. Cal. 2016) ("When there is an ***express waiver***, 'once documents have been turned over to

---

[7]     All citations are omitted and emphasis is added throughout, unless otherwise noted.

[8]     In the joint discovery letter, Plaintiff referenced the express disclosure of documents marked "privileged" to the SEC, and argued in fairness that the waiver extended to nondisclosed communications on the same subject.  Joint Discovery Letter Brief to Magistrate Judge Virginia K. DeMarchi (ECF 105) ("Joint Discovery Letter") at 2.  Plaintiff's arguments were based on both implied and express waiver theories, each of which permit subject matter waiver, and the case law referenced in the joint discovery letter reflects that.  *Id*. at 2-3.

another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information *and related communications by his adversaries*.'"); *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject."); *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject"); *United States ex. rel. Parikh v. Premera Blue Cross*, 2006 WL 6654604, at *1 (W.D. Wash. Oct. 31, 2006) ("By voluntarily disclosing the contents of the PwC audits of Premera's MSP operations, Premara waived any claim of attorney-client privilege as to all other communications concerning this subject matter.").

Defendants' assertion that the emails forwarded to PwC constitute at most an "extrajudicial" waiver that does not amount to subject matter waiver (Oppo. at 9) lacks merit, as the same and additional privileged documents were later produced to both the SEC and Plaintiff in a judicial setting. *See, e.g.*, *Ruehle*, 583 F.3d at 607 (9th Cir. 2009) ("by electing to reveal the information gathered to Ernst & Young (and later to various agencies of the United States), [corporation] deliberately waived any corporate attorney-client privilege it held with respect to all matters at issue"). In any event, even the cases upon which Defendants rely intimate that subject matter waiver is available when fairness dictates, including when the privilege holder attempts to use the extrajudicially-waived communications in the litigation. *See* Oppo. at 9 (citing *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) (finding "no risk of *legal* prejudice until put at issue in the litigation by the privilege-holder." *Id*. at 103 (emphasis in original)); *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *9 (N.D. Cal. 2013); *Wi-LAN, Inc. v. LG Elecs., Inc.*, 2013 WL 685339, at *4 (N.D. Cal. Feb. 25, 2013)).

Defendants have already used the disclosure emails sent to PwC, the SEC, and Plaintiff to argue that the Company's attorneys reviewed and approved VMware's backlog disclosure. These very materials were affirmatively cited to the SEC in an attempt to avoid or mitigate liability, and as evidence foreclosing "'a finding of scienter.'" *See* Joint Discovery Letter at 2-3; Motion at 12-13;

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)                                                                      - 6 -
4891-0949-8021.v1

*see also* Ex. G at LAMARTINA-VMW00000485-486 (Written Submission on Behalf of VMware, Inc., asserting "VMware's Finance and Legal Professionals, as Well as PwC, Reviewed and Approved the Company's Use of Backlog and Its Backlog Disclosure.").

Similarly here, Defendants attempt to avoid liability based on the Individual Defendants' lack of scienter as to the backlog disclosure, despite their approval of the very disclosure language at issue. Motion at 12; Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Consolidated Complaint (ECF 84) ("MTD Order") at 25 ("Defendants argue that Gelsinger and Rowe's knowledge of VMware's managed pipeline is distinct from scienter as to the backlog disclosure, and that the backlog disclosure in fact supports an inference of transparency and nonfraudulent intent[.]"); *see also* Ex. D at VMW00495788 ("Amy [Olli] will speak with Pat [Gelsinger], Zane [Rowe] and Brownie, and management can decide which version [of the backlog disclosure] to go with.").[9] Under these circumstances, the intentional disclosure effectuates subject matter waiver because the communications have been used to "gain a legal advantage" in order to avoid or mitigate liability. *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 624, 626 (N.D. Cal. 2006).

Plaintiff is prejudiced by Defendants' refusal to produce the withheld documents. Plaintiff is privy only to one small part of the disclosure story – the portion that Defendants voluntarily chose to share with PwC, the SEC, and Plaintiff. Plaintiff is left in the dark as to what other considerations the Company's attorneys and management made in approving the backlog disclosure at issue in this case, and "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of [Plaintiff]." Fed. R. Evid. 502(a) Advisory Committee Notes; *United States v. Sanmina*, 968 F.3d 1107, 1117 (9th Cir. 2020) ("This fairness principle also animates the concept of subject matter waiver, in which 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege

---

[9]      It is irrelevant that the SEC never advanced any waiver arguments, and courts frequently find waiver even where the SEC did not pursue it. *See, e.g.*, Motion at 15 n.12.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)
4891-0949-8021.v1

- 7 -

as to all other such communications on the same subject.'"); *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) ("The Court finds that by voluntarily producing a privileged document concerning 'significant development in the weather investigation' drafted by [counsel], [defendant] has waived the attorney-client privilege and work-product protection as to all [counsel] communications concerning defendants' weather investigation."); *Premera*, 2006 WL 6654604, at *1 ("Relator seeks documents 'about the matter actually disclosed' – that is, about PwC's audit of [defendant's] MSP operations. Because [defendant] has selectively disclosed some of the documents relating to this subject matter, it would be unfair not to require [defendant] to disclose the remainder.").

"The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness." *AGCS Marine*, 285 F.R.D. at 471. In fairness, waiver must extend to the subject matter of the disclosed communications – the backlog disclosure – because: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). "The rationale for such a broad mandate has been justified 'so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.'" *Roche Molecular*, 237 F.R.D. at 625; *AGCS Marine*, 285 F.R.D. at 471 (noting waiver is intended "'to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable'"). "'There is no bright line test for determining what constitutes the subject matter of [an express] waiver.'" *Lenz v. Universal Music Corp.*, 2010 WL 4789099, at *2 (N.D. Cal. Nov. 17, 2010).

To be clear, Plaintiff does not seek a broad subject matter waiver, nor does it seek a complete production of every logged backlog-related communication Defendants refuse to produce, of which there are hundreds. Joint Discovery Letter at 3 n.3. Instead, Plaintiff has narrowly-defined the scope of the subject matter at issue, and seeks only the communications concerning the same attorneys and same time period (a total of 33 days) as the disclosed communications. Plaintiff has further limited

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)                                                                                    - 8 -
4891-0949-8021.v1

that scope only to logged communications referencing "backlog disclosures," "backlog reporting," or "backlog definition." Motion at 2-3, 9; Joint Discovery Letter, Ex. 2. Accordingly, the 52 documents detailed in Exhibit 2 to the Joint Discovery Letter must be produced.

### C.    Implied Waiver Clearly Occurred

The factual record, which will of course be more fully developed at the upcoming depositions, already makes clear that Defendants have relied on, and will continue to rely on, the conduct of in-house counsel in support of the defenses raised in this case. *See, e.g.*, Ex. G at LAMARTINA-VMW00000485 ("VMware's Finance and Legal Professionals, as Well as PwC, Reviewed and Approved the Company's Use of Backlog and Its Backlog Disclosure."). For that reason, fairness again requires that waiver extend to the subject matter of the implied waiver – both the backlog disclosure and the approval of the Individual Defendants' insider transactions, each of which concerned in-house counsel's review and approval.[10]

Defendants acknowledge that VMware "'may preserve the confidentiality of the privileged communications by [abandoning] the claim that gives rise to the waiver condition.'" Oppo. at 13 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003)). While it may be true that "VMware has disclaimed any intent to rely on the advice of counsel in this case and will not otherwise put its privileged communications in issue" (Oppo. at 9), Defendants have not "abandon[ed]" the defenses that necessitate waiver. *Bittaker*, 331 F.3d at 721. Those defenses – that "Defendants are not liable because VMware fully satisfied its disclosure obligations" (Fifth

---

[10]    Remarkably, Defendants continue to claim that VMware's lawyers were merely "consulted" in drafting the backlog disclosure. Oppo. at 12. The emails and correspondence produced directly contradict that assertion. Motion at 7-9; Ex. 3 at LAMARTINA-VMW00253573 (referencing the "integral role that attorneys have in providing legal advice throughout the company's drafting process"). Accordingly, *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) is distinguishable. *See also* Motion at 13 n.10.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)                                                                      - 9 -
4891-0949-8021.v1

Defense); and, "Defendants are not liable because they did not act with scienter" (Eighth Defense) are still very much at issue here. Motion at 3, 12. Defendants have to make a choice: either they abandon the defenses, or they must allow discovery into those defenses. *Abdo v. Fitzsimmons*, 2022 WL 2276898, at *1 (N.D. Cal. June 23, 2022) ("[Advice of counsel] doesn't have to be a formal defense. It can be a shorthand for saying that if certain things are shown, scienter (an element of the claim) has been negated.").

Further, Plaintiff is entitled to probe those defenses at deposition, at which point, Plaintiff and the Court will better understand whether, to what extent, and in what circumstances Defendants are using attorney-client privilege as both a sword and a shield. Absent withdrawal of those defenses, fairness requires that any documents concerning the implied waiver subject matter – the backlog disclosure and scienter (including as to insider transactions) – must be produced. *Sanmina*, 968 F.3d at 1117; *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *4 (N.D. Cal. Mar. 31, 2021) ("[F]airness dictates that Defendants not be able to introduce evidence implying that its lawyers passed on the adequacy of Defendants' communications," while also withholding documents on the "subjects of its public statements on the grounds of privilege."); *SNK Corp. of Am. v. Atlus Dream Ent. Co., Ltd.*, 188 F.R.D. 566, 571 (N.D. Cal. 1999) ("Fairness dictates that a party may not use the attorney-client privilege as both a sword and a shield. A party, therefore, may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject.").

### D.    VMware Waived Work-Product Protections When It Disclosed the Substance of the Berthier Memoranda to the SEC and Plaintiff

This District is replete with case law confirming that VMware's production to the SEC and Plaintiff of the substance of Stephane Berthier's interview memoranda waived work-product protection as to the disclosed interview statements. *See, e.g.*, *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4286325, at *1 (N.D. Cal. Sept. 22, 2017) ("Marvell waived any work-product or attorney-client privilege over [interview memoranda] by presenting its findings to the SEC . . . ."); *United States v. Reyes*, 239 F.R.D. 591, 602 (N.D. Cal. 2006) (waiver where the substance of "investigative

interviews, reports, and conclusions" were disclosed to the SEC); *Rubalcava v. City of San Jose*, 2022 WL 484988, at *4 (N.D. Cal. Feb. 16, 2022) (DeMarchi, M.J.) ("Mr. Rubalcava waived work-product protection regarding the contents of the witness statements described in Ms. Kaneb's declaration.").

Waiver here likewise extends to the subject matter of the intentional disclosure – the Company's backlog disclosure. *See* Transcript of Proceedings at 16:9-19, *Luna v. Marvell Tech. Grp.*, No. 3:15-CV-05447 (N.D. Cal. Sept. 21, 2017), ECF 197 ("I would say anything that related to one of the statements that were made to the SEC . . . is waived, and you've got to produce the interview memos"); *Tennison v. City & Cnty. of S.F*, 226 F.R.D. 615, 621 (N.D. Cal. 2005) (discussing subject matter waiver of fact work-product); *In re Banc of Cal. Sec. Litig.*, 2018 WL 2373860, at *1 (C.D. Cal. May 23, 2018) ("disclosure of [oral] summaries of the witness interviews [to the SEC] acted to waive any work-product or attorney-client privilege over any notes or memoranda memorializing those interviews"). Any of the "approximately 20" interview memoranda that concern the Company's backlog disclosure must be produced. Motion at 16 n.13.

### E. Plaintiff Is Entitled to Communications Concerning In-House Counsel's Preclearance of the Individual Defendants' Insider Transactions

Defendants' sole justification for blocking discovery into its in-house counsel's communications concerning their approval (or denial) of the Individual Defendants' highly relevant insider transactions is that the disclosed communications reveal only the Company's internal policy and processes for preclearing trades, but not its counsel's substantive legal advice provided in making those determinations. Oppo. at 13. But that is precisely the problem.

Defendants have admitted that VMware's legal team precleared each of the insider transactions at issue in this case, and the Court has ***already*** found the Individual Defendants' insider sales to be indicative of scienter. Motion at 9-10; MTD Order at 23-24. Defendants have also previously pointed to in-house counsel's review and approval of insider transactions in an attempt to negate scienter during the course of the SEC investigation, and the Court has already acknowledged Plaintiff's concern that Defendants will follow suit here. Ex. G at LAMARTINA-VMW00000498

("all of the trades at issue were executed within the applicable trading window and were precleared by VMware's legal team"); Motion at 10.

What in-house counsel reviewed or considered in preapproving the insider transactions in this case (including whether they met the requirements of the Rule 10b5-1 trading plans) directly bears on Defendants' scienter (or lack thereof). *Bittaker*, 331 F.3d at 719 ("parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege"); *Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*, 2011 WL 2559825, at *1 (N.D. Cal. June 28, 2011) ("'[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege.'").  Plaintiff is entitled to discovery concerning the insider transactions in order to probe Defendants' lack of scienter defenses.

### F. VMware Has Failed to Demonstrate the Burden of Adding In-House Counsel as Custodians

As anticipated, VMware's sole justification for excluding attorneys Olli, Norris, and Wainblat as custodians is that VMware would have to undertake a privilege review of their documents.  Oppo. at 15.  That is not enough to justify their exclusion:

> Defendants have failed to quantify the burden of production of a Privilege Log. In fact, they are not really asserting the burden of production, but merely the burden of reviewing the emails to decide if and how they are privileged and separating out enough information to identify the documents in a Privilege Log. This kind of objection doesn't qualify as burdensomeness – it's just one of the costs of litigation.

*Sia Chue Yang v. Schwarzenegger*, 2010 WL 11587074, at *12 (N.D. Cal. May 12, 2010).  It is irrelevant that Defendants have not formally asserted an advice of counsel defense – the attorneys' files are nevertheless relevant to Plaintiff's claims and the existing defenses that call into question the conduct of the Company's counsel. *See, e.g.*, *Wisk Aero LLC v. Archer Aviation Inc.*, 2022 WL 524065, at *3-*4 (N.D. Cal. Feb. 22, 2022).

Defendants' burden argument is further belied by a prior hit report they produced, which reveals that in total, Olli's, Norris's, and Wainblat's custodial files contain fewer than 1,800

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)
4891-0949-8021.v1

documents hitting on agreed-upon terms concerning backlog, and just over 1,000 unique communications hitting on the agree-upon term related to the Individual Defendants' insider transactions.[11]  And, Defendants' claim that relevant communications would already be captured by other custodians (Oppo. at 15), ignores that Plaintiff only seeks documents **unique** to those custodians, and that Plaintiff has already agreed to allow Defendants to de-duplicate documents prior to production.  Motion at 11 n.8; *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213, at *4 (N.D. Cal. Nov. 14, 2021) (compelling the addition of custodians because "they possess unique and critical information directly relevant to Plaintiffs' claims and [Defendant's] defenses").

## III.    CONCLUSION

VMware waived attorney-client privilege for documents concerning: (1) in-house counsel's drafting and approval of the Company's backlog disclosure, which were produced to PwC, the SEC, and to Plaintiff; and (2) in-house counsel's approval of insider transactions. In fairness, the 52 withheld documents in the privilege log excerpt (Joint Discovery Letter, Ex. 2) and those concerning the preclearance of the Individual Defendants' insider transactions must be produced, and attorneys Craig Norris, Amy Olli, and Larry Wainblat must be included as document custodians.  Defendants also waived any work-product protections over interview memoranda relating to the backlog

---

[11]    An August 29, 2023 hit report produced by Defendants reflects that the custodial files of Olli, Norris, and Wainblat contain 400, 613, and 755 documents, respectively, concerning agreed-upon backlog terms ("managed pipe," "managed pipeline," "backlog," and "MPL").  The term targeting the Individual Defendants' insider transactions (related to Rule 10b5-1) yields just 59, 290, and 678 unique documents, respectively, for Olli, Norris, and Wainblat.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-5:20-cv-02182-EJD (VKD)

- 13 -

4891-0949-8021.v1

disclosure by producing substantive interview witness statements to the SEC and Plaintiff, and any interview memoranda concerning the backlog disclosure must likewise be produced.

DATED:  February 16, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
LAURIE L. LARGENT
SCOTT H. SAHAM
ASHLEY M. KELLY
TING H. LIU
STEPHEN JOHNSON


                              s/ Scott H. Saham
                            SCOTT H. SAHAM

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
llargent@rgrdlaw.com
scotts@rgrdlaw.com
ashleyk@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Lead Counsel for Lead Plaintiff

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL DEFENDANT VMWARE TO PRODUCE DOCUMENTS PREVIOUSLY WITHHELD AS PRIVILEGED AND/OR PROTECTED AND TO ADD CERTAIN INDIVIDUALS AS CUSTODIANS-
5:20-cv-02182-EJD (VKD)                                                                              - 14 -
4891-0949-8021.v1