1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    WILLIAM LAMARTINA,

Case No.  20-cv-02182-EJD (VKD)

Plaintiff,

9
**ORDER RE PLAINTIFF'S MOTION
TO COMPEL PRODUCTION OF
DOCUMENTS WITHHELD AS
PRIVILEGED, AND MOTION TO
SEAL**

v.

10

11    VMWARE, INC., et al.,

Defendants.

Re: Dkt. Nos. 136, 137, 152, 162

12

13

14          Lead plaintiff Eastern Atlantic States Carpenters Pension Fund ("plaintiff") moves to

15   compel the production of documents that defendants have withheld from discovery as privileged

16   and/or attorney work product.  *See* Dkt. Nos. 137, 146.  Defendants oppose the motion.  *See* Dkt.

17   No. 144.  Upon consideration of the moving and responding papers, as well as the oral arguments

18   presented, the Court grants plaintiff's motion in part and denies it in part.

19   **I.      BACKGROUND**

20          This is a federal securities action, filed on behalf of a putative class, alleging violations of

21   §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.  Defendants are

22   VMware, Inc. ("VMware"), Patrick P. Gelsinger (VMware's former Chief Executive Officer), and

23   Zane Rowe (VMware's former Chief Financial Officer).  The complaint[1] alleges that defendants

24   violated federal securities laws by deceptively recording sales as backlog in order to delay revenue

25   recognition, thereby creating a false impression of steady sales that did not reflect VMware's

26   actual performance and concealed potential risks regarding future revenue.  *See* Dkt. No. 85.  The

27   _____

28   [1] The operative pleading is the Third Amended Consolidated Complaint, Dkt. No. 85.

complaint also alleges that "[p]rior to the disclosure of the Company's declining license backlog at the end of Q1 2020, Individual Defendants and other executives unloaded millions in VMware stock . . . at inflated prices[]."  Further, the complaint asserts a claim against Mr. Gelsinger alleging that he engaged in improper insider trading of VMware stock.  *See id.* ¶¶ 49, 50, 179-182, 242-251.  The class is defined as "all persons who purchased VMware common stock during the Class Period [August 24, 2018 to February 27, 2020] and were harmed thereby."  *See id.* ¶¶ 1, 217.

The present litigation was preceded by an investigation by the Securities and Exchange Commission ("SEC"), culminating in a fine against VMware and a cease-and-desist order stating that VMware's disclosure in Form 10-Q for Q1 2019 "omitted material information regarding the discretionary nature of VMware's backlog, the extent to which VMware controlled the amount of its backlog, and how backlog was used to manage the timing of the company's recognition of total and license revenue."  Dkt 77-1 at 2.  Plaintiffs maintain that VMware's backlog disclosure remained the same throughout the Class Period.

The parties dispute whether VMware expressly or impliedly waived the attorney-client privilege or work product protection during the SEC's investigation and/or in defense of this action, and if so, the scope of any such waiver.  In the present discovery motion, plaintiff asks the Court to resolve four issues:  (1) whether there has been subject-matter waiver of the attorney-client privilege that extends to 52 documents relating to VMware's backlog disclosure,[2] (2) whether the attorney-client privilege has been waived with respect to all documents VMware's

---

[2] Plaintiff also argued that by disclosing to the SEC statements reportedly made by PricewaterhouseCoopers partner, Stephane Berthier, in an interview with VMware's counsel, VMware waived the work product protection, not only with respect to counsel's memo re Mr. Berthier's interview, but also to "any withheld interview memoranda concerning [the backlog] disclosure[.]"  Dkt. No. 137 at 16 n.13; *see also* Dkt. No. 146 at 10-11.  This issue has been resolved.  As discussed at the March 5, 2024 hearing, defendants offered to produce counsel's memo regarding Mr. Berthier's interview, with any opinion work product redacted.  The Court ordered defendants to do so, stating that the appropriate result was for defendants to produce the fact work product from that memo.  *See* Dkt. No. 151 at 61-62; *see also id.* at 36-37.  Plaintiff has not convincingly demonstrated that defendants have broadly waived the work product protection as to every interview memo concerning VMware's backlog disclosure.  As the Court finds no basis for it, plaintiff's motion for leave to submit additional documents—namely, the memo re Mr. Berthier's interview and a notice for Mr. Berthier's deposition—is denied.

1  in-house counsel reviewed or considered before issuing any pre-clearance of the individual

2  defendants' insider transactions, (3) whether VMware's in-house counsel—Craig Norris, Amy

3  Olli, and Larry Wainblat—should be included as custodians for discovery purposes, and

4  (4) whether the Court should revisit plaintiff's implied waiver arguments after VMware's Rule

5  30(b)(6) deposition has been taken.  The parties principally dispute the first and second issues, as

6  to which plaintiff contends that VMware expressly or impliedly waived the attorney-client

7  privilege with respect to certain documents in its response to the SEC's investigation and in its

8  defense of this action.

9  **II.      PLAINTIFF'S MOTION TO SEAL**

10          In connection with the present motion to compel discovery, plaintiff moves to seal

11  information designated "Confidential" or "Highly Confidential — Attorneys' Eyes Only" by

12  defendant VMware and its auditor, non-party PricewaterhouseCoopers LLP ("PwC").  Dkt. No.

13  136.  Specifically, plaintiff moves to seal designated portions of its motion to compel (Dkt. No.

14  136-3) and Exhibits A-E and G-J appended to the declaration of Scott Saham (Dkt. Nos. 136-4 to

15  136-12).  In response, defendants confirm that they do not seek to seal any portion of plaintiff's

16  motion or Exhibits A, C-E, and G-J to Mr. Saham's declaration.  Dkt. No. 143.  Defendants take

17  no position on whether sealing is warranted as to Exhibit B, which is a document produced and

18  designated "Confidential" by PwC.  *Id.*

19          There is a strong presumption in favor of access by the public to judicial records and

20  documents accompanying dispositive motions that can be overcome only by a showing of

21  "compelling reasons supported by specific factual findings."  *Kamakana v. City & Cnty. Of*

22  *Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal quotation marks and citation omitted).

23  However, the presumption does not apply equally to a motion addressing matters that are only

24  "tangentially related to the merits of a case," *Ctr. For Auto Safety v. Chrysler Group, LLC*, 809

25  F.3d 1092, 1101 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. For Auto Safety*, 137 S. Ct.

26  38 (2016).  A party seeking to seal documents or information in connection with such a motion

27  must meet the lower "good cause" standard of Fed. R. Civ. P. 26(c).  *Id*. at 1098-99; *Kamakana*,

28  447 F.3d at 1179-80.

As defendants have confirmed that sealing is not required for any portion of plaintiff's motion or Exhibits A, C-E, and G-J, plaintiff's motion to seal those documents is denied.  By **June 24, 2024**, plaintiff shall post unredacted versions of those documents on the public docket.

With respect to Exhibit B to Mr. Saham's declaration, the Court has received no response from PwC regarding plaintiff's sealing request; it is not clear whether plaintiff provided notice to PwC regarding the submission of that document in connection with the present motion to compel discovery.  In an abundance of caution, as the document in question appears to comprise internal email communications and good cause appearing, the Court grants plaintiff's motion to seal Exhibit B to Mr. Saham's declaration.  That document shall remain under seal.  In any event, it is not apparent that plaintiff has disclosed the substance of Exhibit B in its motion.  The Court also finds it unnecessary to discuss or disclose the substance of that document in resolving the present discovery dispute.

### III.    LEGAL STANDARD

As this action is premised on federal question jurisdiction, federal common law governs issues of privilege.  Fed. R. Evid. 501; *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *United States v. Sanmina Corp*., 968 F.3d 1107, 1116 (9th Cir. 2020).  The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures.  *Ruehle*, 583 F.3d at 607 (citations and quotations omitted).

The work product doctrine, codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation or for trial.  Fed. R. Civ. P. 26(b)(3); *Sanmina*, 968 F.3d at 1119 (citation omitted).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  The doctrine protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself," *id*. at 238-39, and its primary purpose is to "prevent exploitation of a party's efforts in preparing for

4

United States District Court
Northern District of California

1    litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989).  Typically,

2    work product protection extends to interview notes, memoranda, summaries, and analyses, as well

3    as to verbatim witness statements.  *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Hatamanian*

4    *v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR (JSC), 2016 WL 2606830 at *3 (N.D.

5    Cal. May 6, 2016).

6         The attorney-client privilege may be impliedly or expressly waived.  A party "may

7    implicitly waive the privilege by asserting a claim or defense that relies on privileged materials as

8    its basis." *Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252 CRB (JSC), 2013 WL 1282892, at *6

9    (N.D. Cal. Mar. 26, 2013) (citing *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th

10   Cir. 1981).  "In practical terms, this means that parties in litigation may not abuse the privilege by

11   asserting claims the opposing party cannot adequately dispute unless it has access to the privileged

12   materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *see also Chevron Corp. v.*

13   *Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in

14   fairness requires disclosure of the protected communication, the privilege may be implicitly

15   waived.").  By contrast, "[a]n express waiver occurs when a party discloses privileged information

16   to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege

17   by making the information public." *Bittaker*, 331 F.3d at 719.  "A party need not have intended to

18   waive privilege when it made the disclosure," *Dukes*, 2013 WL 1282892 at *7 (citing *Weil*, 647

19   F.2d at 24), and "an express waiver need not be effectuated by words or accompanied by the

20   litigant's subjective intent," *Bittaker*, 331 F.3d at 720 n.4.

21        Work product may be discoverable if the materials meet the requirements of Rule

22   26(b)(1)—i.e., they are relevant and proportional to the needs of the case—and if the party seeking

23   production shows a "substantial need for the materials to prepare its case and cannot, without

24   undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A).

25   Upon such a showing, a court must nevertheless "protect against disclosure of the mental

26   impressions, conclusions, opinions, or legal theories of a party's attorney or other representative

27   concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

28        When a disclosure "is made in a federal proceeding or to a federal office or agency and

waives the attorney-client privilege or work product protection, the waiver extends to an

undisclosed communication or information in a federal or state proceeding only if" three

conditions are met:  "(1) the waiver is intentional; (2) the disclosed and undisclosed

communications or information concern the same subject matter; and (3) they ought in fairness to

be considered together."  Fed. R. Evid. 502(a).  "The last requirement—fairness—aims to prevent

prejudice to a party and distortion of the judicial process that may be caused by the privilege-

holder's selective disclosure during litigation of otherwise privileged information."  *Dukes*, 2013

WL 1282892 at *8 (quotations and citation omitted).

## IV.    DISCUSSION

### A.    Backlog Disclosure[3]

The parties' dispute focuses on the overlapping email strings dated June 4-5, 2018

submitted as Exhibit D to plaintiff's motion and as Exhibit 4 to defendants' opposition.  *See* Dkt.

No. 151 at 13:4-21.  As plaintiff's Exhibit D appears to be entirely subsumed within defendants'

Exhibit 4, the Court will refer to the subject documents simply as "Exhibit 4."[4]  VMware concedes

that it waived the attorney-client privilege when (as demonstrated in Exhibit 4) emails containing

privileged communications about VMware's backlog disclosure were forwarded to VMware's

outside auditor at PwC.  *See* Dkt. No. 145-4.  However, VMware contends that the disclosure to

PwC was an "extrajudicial" waiver that did not waive the privilege beyond the disclosed

communications themselves.

The "extrajudicial disclosure of an attorney-client communication—one not subsequently

used by the client in a judicial proceeding to his adversary's prejudice—does not waive the

privilege as to the undisclosed portions of the communication."  *In re von Bulow*, 828 F.2d 94, 102

---

[3] In resolving this issue, the Court finds it unnecessary to consider any documents beyond those submitted by the parties in their original briefing.  Defendants' motion for leave to file supplemental papers in support of their opposition (Dkt. No. 152) is denied.

[4] As the bases for the claimed waiver of the attorney-client privilege, plaintiff originally identified documents submitted with its motion as Exhibits A, H, I, and D.  However, as discussed at the hearing, Exhibits A, H, and I do not contain privileged communications in the first instance.  *See* Dkt. No. 151 at 6.  Accordingly, there has been no waiver (express or implied) by virtue of disclosure to the SEC or otherwise, or by virtue of defendants' reliance on those documents for any purpose.

United States District Court
Northern District of California

(2d Cir. 1987).  "Although it is true that disclosures in the public arena may be 'one-sided' or 'misleading,' so long as such disclosures are and remain extrajudicial, there is no *legal* prejudice that warrants a broad court-imposed subject matter waiver."  *Id*. at 103.  "The reason is that disclosures made in public rather than in court—even if selective—create no risk of *legal* prejudice until put at issue in the litigation by the privilege-holder."  *Id*.; *see also Dukes*, 2013 WL 1282892 at *8-9 (no subject-matter waiver where disclosure of privileged communications made to a newspaper, rather than as part of litigation); *Wi-LAN, Inc. v. LG Elecs., Inc.*, No. 10-mc-80254 JF (PSG), 2013 WL 685339, at *4 (N.D. Cal. Feb. 25, 2013) (extrajudicial disclosure of privileged letter waived privilege only as to the disclosed letter itself where privilege holder did not use letter in underlying litigation).

The Court agrees with defendants that the disclosure of the subject emails to PwC was an extrajudicial waiver of the attorney-client privilege, but that the waiver did not extend beyond the disclosed communications themselves.  When VMware later produced those same emails to the SEC during the agency's investigation, the emails remained non-privileged.  The fact that VMware produced the emails to the SEC did not, as plaintiff seems to suggest, result in a *separate* waiver of the privilege.  (Defendants have already produced these same emails to plaintiffs in the present litigation.)  Thus, the Court finds that the disclosure of these emails to PwC and later to the SEC does not, without more, require a subject matter waiver that extends beyond the emails that were actually disclosed.

Plaintiff responds that during the SEC investigation, VMware did not merely disclose these privilege-waived emails to the SEC, but relied on them to defend its position.  Plaintiff points out that in VMware's response to the SEC, VMware cited Exhibit 4, among other documents,[5] in support of the following statement:

> Further, as part of VMware's process for drafting the disclosure, the Company sought feedback from a number of internal and external

---

[5] There is no indication that other documents VMware cited in footnote 34 of its response to the SEC are or were privileged communications, as descriptions of those documents indicate that they comprise communications that include non-legal personnel.  *See* Dkt. No. 137, Ex. G at 16 n.34.

1

2

> stakeholders, including multiple accounting, financial, and legal professionals.  The record contains numerous emails, an internal memorandum, and other documents that reflect these individuals' thoughtful consideration of the disclosure.

3

4   Dkt. No. 137, Ex. G at 16 & n. 34.  In other words, the Exhibit 4 emails are cited as examples of

5   this "thoughtful consideration."  *See id.*  Additionally, in its response to the SEC, VMware stated

6   that it "acted in good faith" based, in part, on "the reasonable judgment of the Company's finance

7   and legal professionals[.]"  *Id.* at 2.  Plaintiff contends that the waiver of the privilege in the

8   disclosed Exhibit 4 emails extends to 52 undisclosed documents listed on VMware's privilege log

9   (*see* Dkt. No. 105, Ex. 2) concerning the same subject matter—namely, the drafting of VMware's

10  backlog disclosure in the weeks leading up to the June 11, 2018 filing of VMware's 10-Q with the

11  SEC.  *See* Dkt. No. 137 at 8.

12          As discussed above, VMware is correct that none of the Exhibit 4 emails were privileged

13  when they were provided to the SEC.  Thus, the mere fact that VMware cited to those already-not-

14  privileged documents in its response to the SEC does not constitute an express waiver beyond the

15  disclosed communications themselves.

16          A closer question is whether an implied waiver was effected by VMware's reliance on its

17  attorneys' "thoughtful consideration," as reflected in Exhibit 4.  The Court concludes that this

18  reliance was not an implied waiver.  VMware's response to the SEC indicates that VMware was

19  not relying on the substance of underlying legal opinion or advice in Exhibit 4 or elsewhere, but

20  rather on *the fact of consideration* by counsel.  *See* Dkt. No. 137, Ex. G at 16.  Thus, the Court still

21  finds that the waiver of attorney-client privilege as to Exhibit 4, even as cited in VMware's SEC

22  response, does not extend beyond the disclosed emails themselves.

23          An even closer question is presented by VMware's reliance on the "judgment of the

24  Company's finance and legal professionals," in connection with its arguments to the SEC that

25  VMware "acted in good faith[.]"  Dkt. No. 137, Ex. G at 2.  This statement does not cite directly

26  to Exhibit 4.  However, the statement could be read to imply that VMware's legal counsel, in

27  addition to others, made a judgment that the backlog disclosure would not mislead investors and

28  VMware acted in good faith in relying on that judgment, at least in part.  Unlike *Dukes* (which

United States District Court
Northern District of California

1    concerned disclosure to a newspaper) and *In re von Bulow* (which concerned disclosure in a book),

2    VMware's disclosure regarding its reliance on the judgment of "legal professionals" is not

3    extrajudicial; that disclosure was one made to a federal agency in an adversarial context.  Thus, the

4    question is whether VMware impliedly waived privilege with respect to the underlying legal

5    advice and communications between and among the Company's in-house attorneys and its senior

6    executives relating to the drafting, editing, and approval of the backlog disclosure, such as the 52

7    logged documents at issue here.

8         Plaintiff does not distinguish between a waiver of privilege with respect to the Exhibit 4

9    documents shared with the SEC and a waiver of privilege implied from arguments VMware made

10   to the SEC.  The Court finds this distinction important here.  While the cat is clearly out of the bag

11   with respect to the particular communications in Exhibit 4 that VMware sent to PwC and

12   subsequently produced to the SEC, the Court is not persuaded that the waiver extends to

13   undisclosed communications merely because VMware cited Exhibit 4 in a response that also

14   includes a statement that VMware "acted in good faith" based in part on "the reasonable judgment

15   of the Company's . . . legal professionals."  In opposing plaintiff's motion, VMware acknowledges

16   that an implied waiver could arise based on arguments it made to the SEC, but it says that it did

17   not assert an advice of counsel defense in the SEC investigation, and the SEC did not treat

18   VMware's statements regarding reliance on the judgment of "legal professionals" as a subject

19   matter waiver or demand production of documents beyond the no-longer-privileged documents

20   VMware disclosed.  In support of this argument, VMware relies on *United States v. White*, 887

21   F.2d 267 (D.C. Cir. 1989), in which the D.C. Circuit held that a similar statement regarding a

22   "thorough[] review[]" by counsel did not waive the attorney-client privilege as to undisclosed

23   communications concerning that review.  *See* 887 F.2d at 270.  As the *White* court observed:

24        A general assertion lacking substantive content that one's attorney
         has examined a certain matter is not sufficient to waive the attorney-
25       client privilege.  The government acknowledged as much when it
         admitted at oral argument that if the GSA investigators had followed
26       up [defendant]'s undetailed assertion by asking what his attorneys
         had told him, [defendant] at that point still would have been able to
27       claim his privilege and refuse to answer.

28

1    *Id.* at 271.

2          While VMware did not merely advise the SEC that it had consulted counsel for advice

3    regarding the backlog issue,[6] nothing in the record indicates that VMware disclosed to the SEC the

4    substance of the advice it received or that it intended to waive the privilege as to that advice in the

5    SEC investigation.  *See* Fed. R. Evid. 502(a) (requiring not only disclosure, but intentional

6    waiver).  Moreover, plaintiff has not shown that anything about VMware's disclosures or

7    arguments before the SEC prejudices plaintiff in *this action*.  *See id.* (requiring consideration of

8    fairness).  In these circumstances, the Court is not persuaded that VMware impliedly waived its

9    attorney-client privilege beyond the already-disclosed communications in Exhibit 4 by asserting

10   before the SEC that it "acted in good faith" based in part on "the reasonable judgment of the

11   Company's . . . legal professionals."

12         Plaintiff next argues that VMware has taken positions in this action that require a finding

13   of waiver.  In the present litigation, VMware asserts affirmative defenses that it "fully satisfied its

14   disclosure obligations" and that "[d]efendants are not liable because they did not act with

15   scienter."  *See* Dkt. No. 86 at ECF 38 (fifth and eighth affirmative defenses).  However, neither of

16   these defenses expressly relies on advice of counsel, and VMware has disavowed any intention to

17   do so.  *See* Dkt. No. 144 at 2, 9.  Circumstances may change as the record develops.  If VMware

18   later chooses to rely on the judgment of "legal professionals" in this action, such reliance may well

19   result in a waiver of the privilege that would require disclosure of the underlying advice.

20   Alternatively, it may develop that VMware's decision-making necessarily depended on advice of

21   counsel, and that it cannot rely on a "lack of scienter" defense by pretending it did not.  As Judge

22   Orrick explained in *In re Lidoderm Antitrust Litigation*:

23                 [D]efendants cannot avoid waiver by offering to rely at summary
                   judgment or trial solely on non-legal justifications for certain
24                 subjective beliefs.  There is no doubt—given the question at issue is
                   whether anticompetitive goals motivated defendants' settlement—
25

26

27   ───────────────────────
     [6] VMware's statement to the SEC regarding the "reasoned judgment" of its "legal professionals"
28   goes beyond a mere statement that VMware consulted its attorneys.  For this reason, the Court
     finds that the other cases on which VMware relies, *Planet Aid* and *Aristocrat Leisure*, are
     distinguishable.

United States District Court
Northern District of California

10

> that business advice and non-legal facts were considered by
> settlement decision-makers.  But if defendants inject their subjective
> beliefs on specific topics as part of their defense of the Watson
> settlement—like a subjective belief that patent litigation is
> inherently uncertain—*where evidence establishes that the subjective
> belief was also informed by attorney advice*, it would be unfair to
> not allow plaintiffs access to defendants' contemporaneous attorney-
> client information to test the veracity of the defendants'
> justifications in this litigation even though that belief is based in part
> on business judgment and executive experience.

*In re Lidoderm Antitrust Litig*., No. 14-MD-02521-WHO, 2016 WL 4191612, at *5 (N.D. Cal. Aug. 9, 2016) (emphasis added).

At this time, however, the Court concludes that VMware has not waived its attorney-client privilege, expressly or impliedly, by asserting the fifth and eighth affirmative defenses.  Its privileged communications are not discoverable merely because they are related to matters at issue in the litigation.  *See id*. at *4 ("[A] simple showing of relevance to a case will not suffice" for waiver); *1st Security Bank of Washington v. Eriksen*, No. 06-cv-1004 RSL, 2007 WL 188881, at *3 (W.D. Wash. Jan. 22, 2007) ("Mere relevance to defendants' case is not sufficient" for waiver).

As an additional basis for waiver, plaintiff emphasizes that VMware attorneys drafted the backlog disclosure.  *See* Dkt. No. 137 at 2, 4, 6.  This argument is not persuasive.  Attorneys regularly draft documents that are intended to and do become public, and nothing in the record indicates that the privilege has been waived by virtue of the fact that the backlog disclosure was drafted by VMware's attorneys and then publicly disclosed.

On this record, the Court denies plaintiff's motion to compel discovery of the 52 undisclosed communications on defendants' privilege log that purportedly concern the backlog disclosure.

### B.    Pre-clearance Review

Plaintiff argues that when VMware told the SEC that all trades at issue were pre-cleared by attorneys, the Company, in effect, relied on the advice of its counsel—i.e., the trades were reviewed and cleared by counsel because they complied with applicable legal requirements—and thus waived the attorney-client privilege with respect to that advice and the basis for that advice. *See* Dkt. No. 137 at 9-10 & Ex. G at 28; *see also id*., Ex. J.  VMware maintains that its written

United States District Court
Northern District of California

1    response and its presentation to the SEC merely described the fact of its counsel's review and

2    VMware's procedures and processes for the pre-clearance of the subject trades, and did not reveal

3    the substance of any legal advice.  VMware maintains that there has been no waiver of the

4    privilege, either express or implied.  *See* Dkt. No. 144 at 13.

5          The Court agrees with plaintiff.  Although VMware did not reveal to the SEC the actual

6    contents of its attorney-client communications, VMware also did not rely on *the mere fact* that its

7    attorneys conducted and completed a pre-clearance review of the trades at issue.  Rather, in its

8    written response and its presentation to the SEC, VMware relied on its counsel's conclusions that

9    the trades were in fact legal because the executives did not have material nonpublic information.

10   Specifically, VMware argued to the SEC that "[a]ll of the trades at issue were executed within the

11   applicable trading window and were precleared by VMware's legal team.  *That preclearance was*

12   *predicated on the Company executives not having access to [material nonpublic information] at*

13   *the time of the trades*."  Dkt. No. 137, Ex. G at 28 (emphasis added); *see also id.*, Ex. J

14   (presentation collecting counsel's pre-clearance emails).

15         In this action, defendants have previously taken the position that they lacked scienter, in

16   part, because certain insider trades were executed pursuant to a 10b5-1 trading plan or were

17   otherwise not suspicious.  *See* Dkt. No. 64 at 17-18 (motion to dismiss SAC); Dkt. No. 67 at 8

18   (reply re motion to dismiss SAC).  At the hearing on the present discovery motion, defendants

19   insisted they will not rely on counsel's pre-clearance of any trades that occurred outside of the

20   trading plan to show lack of scienter.  *See* Dkt. No. 151 at 48:9-51:7.  The problem is that

21   VMware has already shared with the SEC its counsel's conclusions that certain trades were "pre-

22   cleared" and the bases for those conclusions—i.e., that company executives did not have access to

23   material nonpublic information at the time of those trades.  Unlike VMware's statements to the

24   SEC about its backlog disclosure, VMware's statements to the SEC about pre-clearance review

25   reveal the substance of counsel's legal advice.  In so doing, VMware waived its attorney-client

26   privilege before the SEC with respect to counsel's pre-clearance review and the conclusion that

27   company executives did not have access to material nonpublic information at the time of the trades

28   in question.

United States District Court
Northern District of California

VMware's waiver of the privilege in the SEC investigation "extends to an undisclosed communication or information in a federal or state proceeding only if (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). With respect to the first factor, VMware's statements to the SEC regarding its counsel's pre-clearance review, on their face, demonstrate that VMware's waiver was intentional. *See generally Dukes*, 2013 WL 1282892 at *8 (concluding that defendant intentionally disclosed privileged information by making public statements regarding its counsel's methodology and conclusions). With respect to the second factor, plaintiff seeks more than just information showing the basis for VMware's counsel's conclusion that company executives did not have access to material nonpublic information at the time of the subject trades. Plaintiff wants all information that VMware's counsel considered and reviewed in making the pre-clearance determinations in question. *See* Dkt. No. 146 at 12; Dkt. No. 151 at 38:13-15. With respect to the third factor, it remains to be seen how defendants proceed in this present litigation, although they disclaim any intent to rely on the advice of counsel or VMware's statements or presentation to the SEC. However, Judge Davila has already found that "the timing and amounts of the sales of [Mr.] Gelsinger's and [Mr.] Rowe's trading histories support an inference of scienter." Dkt. No. 84 at 23. In these circumstances, the Court finds that fairness supports a subject-matter waiver encompassing, at a minimum, the undisclosed communications underlying or reflecting the conclusions of Messrs. Norris and Wainblat and/or Ms. Olli that there was no access to material nonpublic information as to the trades at issue. However, the waiver does not extend to all trades; nor does it extend to all reasons for counsel's pre-clearance determinations or to all materials reviewed or considered in making those determinations.

Accordingly, the Court finds that defendants have relied on the advice of counsel before the SEC, and, in fairness, plaintiff is entitled to discovery of communications underlying the conclusions of Messrs. Norris and Wainblat and/or Ms. Olli that there was no access to material nonpublic information as to the trades at issue.. *See* Dkt. No. 137 at 10. By **July 17, 2024**, defendants shall produce all such discovery to plaintiffs.

United States District Court
Northern District of California

1

### C.    Lawyer Custodians

Plaintiff argues that the conduct of VMware's in-house counsel—Craig Norris, Amy Olli, and Larry Wainblat—is at issue in this case and that they should each be included as document custodians for discovery purposes. Plaintiff seeks only documents unique to these lawyers and agrees that defendants may de-duplicate documents prior to production. VMware does not dispute plaintiff's assertion that these lawyers possess relevant information. Rather, VMware's principal objection is one of burden. VMware argues that adding its in-house counsel as custodians would only "impose an enormous burden by requiring privilege review and logging of every relevant document[.]" Dkt. No. 144 at 15. Defendants previously produced a "hit" report based on agreed search terms, apparently covering the Class Period, indicating that files for Ms. Olli and Messrs. Norris and Wainblat total about 2800 documents. *See* Dkt. No. 146 at 13 n.11; *see also* Dkt. No. 151 at 62-63, 76.

As there is no apparent dispute that these attorneys possess relevant information, *see, e.g., Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450-WHO (DMR), 2022 WL 524065, at *4 (N.D. Cal. Feb. 22, 2022), the Court grants plaintiff's motion to the following extent: By **July 17, 2024**, VMware shall (1) review the documents identified for Ms. Olli and Messrs. Norris and Wainblat in the previously produced "hit" report, (2) log, as appropriate, any documents claimed to be privileged or otherwise protected from discovery, on its privilege log, and (3) otherwise produce any non-privileged responsive documents to plaintiff.

### D.    Request to Defer Ruling re Implied Waiver

Although the Court declines plaintiff's request to defer ruling on plaintiff's implied waiver arguments pending the completion of VMware's Rule 30(b)(6) deposition, the Court will not foreclose or preclude plaintiff from seeking further relief regarding VMware's privilege claims if further discovery demonstrates that such relief is warranted.

**IT IS SO ORDERED.**

Dated: June 17, 2024



Virginia K. DeMarchi
United States Magistrate Judge