1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  shawnw@rgrdlaw.com
        – and –
6  SPENCER A. BURKHOLZ (147029)
   THEODORE J. PINTAR (131372)
7  LAURIE L. LARGENT (153493)
   LAURA ANDRACCHIO (187773)
8  SCOTT H. SAHAM (188355)
   ASHLEY M. KELLY (281597)
9  TING H. LIU (307747)
   STEPHEN JOHNSON (347822)
10 655 West Broadway, Suite 1900
   San Diego, CA  92101
11 Telephone:  619/231-1058
   619/231-7423 (fax)
12 spenceb@rgrdlaw.com
   tedp@rgrdlaw.com
13 llargent@rgrdlaw.com
   landracchio@rgrdlaw.com
14 scotts@rgrdlaw.com
   ashleyk@rgrdlaw.com
15 tliu@rgrdlaw.com
   sjohnson@rgrdlaw.com
16
   Lead Counsel for Lead Plaintiff
17
                    UNITED STATES DISTRICT COURT
18
                  NORTHERN DISTRICT OF CALIFORNIA
19

20  WILLIAM LAMARTINA, Individually and on    ) Case No. 5:20-cv-02182-EJD (VKD)
    Behalf of All Others Similarly Situated,    )
21                                              ) CLASS ACTION
                                 Plaintiff,     )
22                                              ) LEAD PLAINTIFF'S NOTICE OF MOTION,
            vs.                                 ) MOTION FOR FINAL APPROVAL OF
23                                              ) CLASS ACTION SETTLEMENT AND
    VMWARE, INC., et al.,                       ) APPROVAL OF PLAN OF ALLOCATION,
24                                              ) AND MEMORANDUM OF POINTS AND
                                 Defendants.    ) AUTHORITIES IN SUPPORT THEREOF
25  _____  )
                                                  DATE:  March 31, 2025
26                                                TIME:  9:00 a.m.
                                                  JUDGE: Honorable Edward J. Davila
27                                                CTRM: 4, 5th Floor

28

4902-0135-9634.v1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. PROCEDURAL AND FACTUAL BACKGROUND.........................................................3

III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTS.........................................................................................................6

    A. The Settlement Warrants Final Approval ................................................6

    B. The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)................8

        1. Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have Adequately
Represented the Class ..................................................................................8

        2. Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
Arm's Length After Mediation with an Experienced Mediator.................8

        3. Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
Considering the Costs, Risk, and Delay of Trial and Appeal ....................9

            a. The Costs and Risks of Summary Judgment, Trial, and
Appeal Support Approval of the Settlement................................9

            b. The Proposed Settlement Eliminates the Additional Cost
and Delay of Continued Litigation ................................................10

        4. Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
Is Effective .................................................................................................11

        5. Rule 23(e)(2)(C)(iii): Attorneys' Fees .......................................................12

        6. Rule 23(e)(2)(C)(iv): Other Agreements ...................................................12

        7. Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
Members Equitably......................................................................................12

    C. The Remaining Ninth Circuit Factors Are Satisfied...........................................13

        1. Discovery Completed and Stage of the Proceedings .................................13

        2. Counsel Views This Good-Faith Settlement as Fair, Reasonable,
and Adequate ..............................................................................................13

        3. The Positive Reaction of Class Members to the Settlement.......................14

        4. The Settlement Amount ...............................................................................14

        5. The Risk of Maintaining Class Certification .............................................14

IV. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........................15

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 5:20-cv-02182-EJD (VKD)
4902-0135-9634.v1

- i -

1

2                                                                                                          **Page**

3
V.      NOTICE TO THE CLASS SATISFIES DUE PROCESS ..................................................15

VI.     CONCLUSION.................................................................................................................16
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ...........................................................................6

5

6

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)..........................................................8

7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................7, 9

8

9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ......................................................................15

10

11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..................................................................................9

12

*Fleming v. Impax Laby's Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022) ......................................................16

13

14

*Foster v. Adams & Assocs., Inc.*,
    2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ..................................................13, 14

15

16

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ....................................................16

17

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
    *aff'd sub nom. Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) ....................................................................9

18

19

20

*Hsu v. Puma Biotechnology, Inc.*,
    No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022)...........................10

21

22

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019)........................................................7

23

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ........................................................................8

24

25

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................12

26

27

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ......................................................................12

28

**Page**

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010) ...................................................................................10

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007) ...........................................................................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) .............................................................................................6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2020 WL 4212811 (N.D. Cal. July 22, 2020),
*aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ..........................................................11

*Kastler v. Oh My Green, Inc.*,
2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) ....................................................................6

*Longo v. OSI Sys., Inc.*,
2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022)............................................9, 13

*Mauss v. NuVasive, Inc.*,
2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)....................................................................15

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) .........................................................................................7, 9

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) ..................................................................10

*Rodriguez v. Nike Retail Servs., Inc.*,
2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ....................................................................13

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................................8, 13, 15

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................................12

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ............................................................................................11

*Vataj v. Johnson*,
2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .................................................................15

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 5:20-cv-02182-EJD (VKD)
4902-0135-9634.v1

- iv -

Page

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b).................................................................................................................4, 9
    §78t(a)....................................................................................................................4
    §78t-1.....................................................................................................................4

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................................16
    Rule 23(c)(1)........................................................................................................14
    Rule 23(c)(2)(B)...................................................................................................15
    Rule 23(e)(1)(B)...................................................................................................15
    Rule 23(e)(2).................................................................................................7, 8, 9
    Rule 23(e)(2)(A)....................................................................................................8
    Rule 23(e)(2)(B)....................................................................................................8
    Rule 23(e)(2)(C)....................................................................................................9
    Rule 23(e)(2)(C)(i)................................................................................................9
    Rule 23(e)(2)(C)(ii).............................................................................................11
    Rule 23(e)(2)(C)(iii)............................................................................................12
    Rule 23(e)(2)(C)(iv)............................................................................................12
    Rule 23(e)(2)(D)..................................................................................................12
    Rule 23(e)(3)..........................................................................................................7

17 C.F.R.
    §240.10b-5.............................................................................................................4

**SECONDARY AUTHORITIES**

Edward Flores and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
    (NERA Jan. 22, 2025) .........................................................................................14

# NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT at 9:00 a.m. on March 31, 2025, in the courtroom of the Honorable Edward J. Davila, at the United States District Court, Northern District of California, Courtroom 4, 5th floor, 280 South 1st Street, San Jose, CA 95113, lead plaintiff Eastern Atlantic States Carpenters Pension Fund ("Lead Plaintiff" or the "Fund") will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the proposed Settlement and entry of an order granting approval of the proposed Plan of Allocation.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Ashley M. Kelly in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Class Representative Pursuant to 15 U.S.C. §78u-4(a)(4) ("Kelly Declaration" or "Kelly Decl."), with attached exhibits, all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on March 24, 2025, after the March 10, 2025 deadline for Class Members to opt out of the Class or object to the Settlement or Plan of Allocation has passed.

LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - 5:20-cv-02182-EJD (VKD)
4902-0135-9634.v1

- 1 -

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should grant final approval of the Settlement.

2.    Whether the Court should approve the Plan of Allocation.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The $102,500,000 all-cash Settlement, achieved after over four years of hard-fought litigation, is a tremendous result for the Class.[1]  The Settlement is the result of a "mediator's proposal," is 13 times the amount which the SEC recovered from VMware,[2] and represents approximately 10.7%-34% of the estimate of damages recoverable at trial.  It is exceptional and many multiples above the median percentage recovery for 2024 securities class action settlements.

Moreover, the Settlement was agreed to only after the proceedings had reached a stage where a careful evaluation of the Action and the propriety of Settlement could be (and was) made.  For example, Lead Plaintiff had, among other things: (i) filed a detailed Consolidated Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (ECF 50); (ii) litigated Defendants' motion to dismiss the Amended Complaint; (iii) conducted further investigation and added new allegations in the Second Amended Consolidated Complaint for Violations of the Federal Securities Laws ("Second Amended Complaint") (ECF 63) following the Court's Order Granting in Part and Denying in Part Motion to Dismiss with Leave to Amend (ECF 60); (iv) successfully

---

[1]    The terms of the Settlement are set forth in the Stipulation of Settlement dated October 4, 2024 ("Stipulation") (ECF 181-2).  All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation and in Lead Plaintiff's Notice of Motion and Motion for Preliminary Approval of Proposed Class Action Settlement and Memorandum of Points and Authorities in Support Thereof (ECF 181).

[2]    *See In the Matter of VMware, Inc.*, Securities Act Release No. 11099, Exchange Act Release No. 95744, Accounting & Auditing Enforcement Release No. 4333, Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order (Sept. 12, 2022), at 9 (SEC order instituting cease and desist proceedings and order to pay $8 million civil money penalty), attached to Kelly Decl. as Ex. C.

opposed Defendants' motion to dismiss the Second Amended Complaint; (v) filed the Third Amended Consolidated Complaint for Violations of the Federal Securities Laws ("Third Amended Complaint") (ECF 85); (vi) engaged in extensive fact discovery, including the review and analysis of approximately 825,000 pages of documents produced by VMware and certain third parties, and 10 fact depositions; (vii) litigated numerous lengthy and contentious discovery disputes, including Lead Plaintiff's motion to compel certain documents withheld on the basis of attorney-client privilege; (viii) identified, reviewed, and produced documents in response to Defendants' requests for production of documents; (ix) successfully obtained class certification; (x) prepared to exchange expert reports on a variety of issues, including loss causation, damages, and insider trading; and (xi) participated in two formal mediation sessions and numerous teleconferences with the Hon. Layn R. Phillips (Ret.) of Phillips ADR, the mediator, to reach the proposed Settlement.  There is no question that as a result of these extensive litigation efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Class's claims and the propriety of settlement.

While Lead Counsel believes the Class's claims have significant merit, from the outset and throughout the Action, Defendants adamantly denied liability and asserted they possessed absolute defenses to the Class's claims.  Indeed, Defendants moved to dismiss Lead Plaintiff's Amended Complaint, arguing that Lead Plaintiff failed to plead: (i) an actionable misrepresentation; (ii) scienter; and (iii) loss causation.  ECF 51.  In response to Lead Plaintiff's Second Amended Complaint, Defendants again moved to dismiss arguing that many of the alleged misrepresentations were non-actionable puffery, and again challenged Lead Plaintiff's scienter allegations and its loss causation theory.  ECF 64 at 14-19.  While Lead Plaintiff overcame these and other of Defendants' arguments at the pleading stage, Defendants no doubt would have continued to assert these arguments at summary judgment and at trial.

Lead Plaintiff – the type of institutional investor Congress envisioned serving in that role when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") – fully supports the Settlement.  *See* Declaration of Pete Tonia ("Fund Decl."), ¶¶8-9, attached as Ex. A to Kelly Declaration.  The Class's reaction to date similarly reflects approval of the Settlement.  Notice was

provided to potential Class Members pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF 188), commencing December 16, 2024. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶5-13, attached as Ex. B to the Kelly Declaration. While the March 10, 2025 deadline to object to the Settlement and Plan of Allocation has not yet passed, to date no objections have been received.[3]

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was detailed in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") provided to Class Members. The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation is based on the analysis of Lead Plaintiff's damages expert and subjects all Class Members to the same formulas for calculating out-of-pocket damages, *i.e.*, the difference between what Class Members paid for their VMware Class A common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made.

In short, the $102.5 million Settlement and the Plan of Allocation are fair and reasonable. The Settlement is an exceptional result for the Class.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The initial complaint in this Action was filed in this Court on March 31, 2020. ECF 1. On June 1, 2020, the Fund moved for appointment as Lead Plaintiff and for approval of its selection of counsel. ECF 17. On July 20, 2020, the Court appointed the Fund as Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.[4] ECF 45.

---

[3] Lead Counsel will address any timely objections in its reply brief, which is due on March 24, 2025.

[4] At the time the Fund moved for appointment as Lead Plaintiff, it was known as the Northeast Carpenters Pension Fund.

Lead Plaintiff filed the Amended Complaint on September 18, 2020 (ECF 50), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against all Defendants, and alleging a violation of §20A against defendant Gelsinger.  Lead Plaintiff alleged that Defendants deceptively recorded VMware's sales as backlog so that the revenue from those sales could be recognized in subsequent quarters as opposed to the quarter in which they were actually made.  Defendants filed their motion to dismiss the Amended Complaint on November 17, 2020.  ECF 51.  On September 10, 2021, the Court issued an Order Granting in Part and Denying in Part Motion to Dismiss with Leave to Amend.  ECF 60.

On October 8, 2021, Lead Plaintiff filed the Second Amended Complaint (ECF 63), and again, Defendants moved for dismissal (ECF 64).  Lead Plaintiff filed its opposition to that motion to dismiss on December 3, 2021.  ECF 66.  On September 12, 2022, while Defendants' motion to dismiss the Second Amended Complaint was pending, the U.S. Securities and Exchange Commission issued an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("SEC Order") against defendant VMware.  *See* ECF 77.  The Court thereafter permitted the Parties to provide additional briefing on Defendants' motion to dismiss concerning the effect of the SEC Order on the allegations in the Second Amended Complaint.  ECF 81.

On March 14, 2023, Lead Plaintiff filed a Supplemental Memorandum in Further Opposition to Defendants' Motion to Dismiss to address the effect of the SEC Order on Lead Plaintiff's allegations, and attached a redline version of the Second Amended Complaint.  ECF 82, 82-1.  After the supplemental briefing, the Court held that Lead Plaintiff adequately pled its §§20(a) and 20A claims, as well as certain of its §10(b) and Rule 10b-5 claims, and ordered Lead Plaintiff to file the redlined Second Amended Complaint as a Third Amended Complaint.  *See* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Consolidated Complaint. ECF 84.  The Third Amended Complaint was filed on April 6, 2023, and alleges that Defendants inflated backlog with sales that were not required to meet current period guidance throughout Fiscal Year ("FY") 2019, which misled investors as to the likelihood that FY 2020 guidance would be met.

The Third Amended Complaint further alleges that Defendants treated the inflated backlog – nearly half a billion dollars at the end of FY 2019 – as a slush fund, drawing on it throughout FY 2020 rather than recognizing the revenue in FY 2019.  The Third Amended Complaint alleges that by deferring revenue to FY 2020, VMware was able to continue to deliver double-digit earnings growth in FY 2020, despite operational challenges that year.  On April 20, 2023, Defendants filed their Answer to the Third Amended Complaint and therein pleaded 14 affirmative defenses and other defenses to Lead Plaintiff's claims.  ECF 86.

The Parties thereafter began formal fact discovery, which culminated in the exchange and review of more than 100,000 documents (encompassing nearly 650,000 pages) from over a dozen custodians associated with VMware and the production of nearly 25,000 documents (over 175,000 pages) from 30 third parties subpoenaed to produce documents.  Lead Plaintiff took 10 fact witness depositions, and propounded dozens of Requests for Production of Documents, Requests for Admission, and Interrogatories on Defendants.  Lead Plaintiff also produced documents in response to Defendants' requests.

On January 16, 2024, Lead Plaintiff moved to certify the Class.  ECF 132.  Defendants did not oppose the motion.  ECF 154.  On July 2, 2024, the Court issued its Order Granting Motion for Class Certification and appointing Lead Plaintiff as Class Representative and appointing Robbins Geller as Class Counsel.  ECF 171.  The Class Members are persons who purchased the publicly traded Class A common stock of VMware during the Class Period, and who were damaged thereby.  At the time the Settlement was achieved, the Parties were in the process of preparing to exchange expert reports on various issues.  A trial setting conference was scheduled to occur on October 31, 2024.

During the course of the Action, the Parties engaged a neutral, third party mediator, Judge Phillips, to aid in settlement negotiations.  Judge Phillips has extensive experience mediating complex class action litigations such as this Action.  The Parties engaged in two mediation sessions (the first in person and the second over Zoom) and numerous teleconferences with Judge Phillips in an effort to resolve the Action.  The Parties also exchanged mediation briefs ahead of their in-person mediation session, setting forth their respective arguments concerning liability and damages and the

1    merits of the Action.   Though the Parties' initial mediation session on March 1, 2024 was

2    unsuccessful in resolving the Action, the Parties continued to have telephonic and email exchanges

3    with Judge Phillips regarding a potential resolution.   The Parties and the Court thereafter agreed to a

4    stay of the Action to allow settlement discussions to continue in a good-faith attempt to resolve the

5    Action.   ECF 174, 176, 178, 180.

6          On July 19, 2024, the Parties attended a remote mediation session over Zoom with Judge

7    Phillips.   That mediation session paved the way for additional discussions that day between the

8    Parties, resulting in a "mediator's proposal" to settle the Action for $102,500,000.00, which the

9    Parties agreed to, subject to the negotiation of the terms of a stipulation of settlement and approval

10   by the Court.   The Stipulation (together with the Exhibits thereto) reflects the final and binding

11   agreement of the Parties.   On October 10, 2024, Lead Plaintiff moved for preliminary approval of the

12   Settlement.   ECF 181.   The Court heard oral argument on November 22, 2024, and granted Lead

13   Plaintiff's motion on November 26, 2024.   ECF 188.

14   **III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

15        **A.    The Settlement Warrants Final Approval**

16        The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly

17   where complex class action litigation is concerned.'"   *Campbell v. Facebook, Inc.*, 951 F.3d 1106,

18   1121 (9th Cir. 2020). [5]   "Deciding whether a settlement is fair is . . . best left to the district judge."

19   *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611

20   (9th Cir. 2018).   Courts, however, should not convert settlement approval into an inquiry into the

21   merits, as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated

22   between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

23   that the agreement is not the product of fraud or overreaching by, or collusion between, the

24   negotiating parties.'"   *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19,

25

26

27   _____
     [5]     Citations are omitted and emphasis is added throughout unless otherwise indicated.

28

1   2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625

2   (9th Cir. 1982)).

3          Federal Rule of Civil Procedure ("Rule") 23(e) requires judicial approval for the settlement

4   of claims brought as a class action and provides "the court may approve [a proposed settlement] only

5   after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

6   To determine whether a settlement is "fair, reasonable, and adequate," the Court must

7          consider[] whether: (A) the class representatives and class counsel have adequately
           represented the class; (B) the proposal was negotiated at arm's length; (C) the relief
8          provided for the class is adequate, taking into account: (i) the costs, risks, and delay
           of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief
9          to the class, including the method of processing class-member claims; (iii) the terms
           of any proposed award of attorney's fees, including timing of payment; (iv) and any
10         agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
           class members equitably relative to each other.

11  *Id.*

12         In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the

13  following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

14         (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
15         duration of further litigation; (3) the risk of maintaining class action status
           throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
16         completed and the stage of the proceedings; (6) the experience and views of counsel;
           (7) the presence of a governmental participant; and (8) the reaction of the class
17         members to the proposed settlement.

18  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

19         The Court's Preliminary Approval Order found that the Settlement was fair, reasonable, and

20  adequate, subject to further consideration at the Settlement Hearing. *See* ECF 188, ¶1. The Court's

21  conclusion on preliminary approval is equally true now, as nothing has changed between November

22  26, 2024 and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods.*

23  *Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at

24  preliminary approval] stand and counsel equally in favor of final approval now.").

25

26

27

28

1

### B.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)

2

#### 1.    Rule 23(e)(2)(A): Lead Plaintiff and Its Counsel Have Adequately Represented the Class

3

4        Lead Plaintiff and Lead Counsel have more than adequately represented the Class as required

5    by Rule 23(e)(2)(A).  Lead Counsel is highly qualified and experienced in securities litigation, *see*

6    Kelly Decl., ¶79, actively pursued the claims of VMware investors in this Court, and zealously

7    advocated for the Class's best interests throughout the Action.  *See generally* Kelly Decl.; *Cheng*

8    *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor

9    satisfied where lead counsel "has significant experience in securities class action lawsuits").  The

10   Settlement is the result of Lead Counsel's diligent prosecution of this Action for over four years,

11   including briefing multiple rounds of motions to dismiss, nearly completing fact discovery,

12   achieving class certification, and working with their experts to prepare to exchange expert reports.

13   *See, e.g.*, *id.* (finding this factor satisfied where lead counsel vigorously pursued plaintiff's claims

14   through multiple rounds of motions to dismiss and amended complaints).

15        In addition, Lead Plaintiff and its counsel have no interests antagonistic to those of other

16   Class Members; rather, their claims "arise from the same alleged conduct: the purchase of [VMware]

17   stock at inflated prices based on Defendants' alleged . . . misstatements."  *Id.*  Accordingly, Lead

18   Plaintiff shares the common interest in obtaining the largest possible recovery for Lead Plaintiff and

19   the Class.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To

20   determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel

21   have any conflicts of interest with other class members and (2) will the named plaintiffs and their

22   counsel prosecute the action vigorously on behalf of the class?'").  This factor weighs in favor of

23   final approval.

#### 2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator

24

25        Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P.

26   23(e)(2)(B).  "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-

27   collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

28   The parties here reached the Settlement only after multiple formal mediation sessions and numerous

teleconferences with the mediator, following the Court's decisions on Defendants' motions to dismiss and undertaking extensive discovery, and several weeks of additional negotiations overseen by Judge Phillips.  Ultimately, the case was resolved on July 19, 2024, following a remote mediation session with Judge Phillips and in response to a "mediator's proposal."  *See* Kelly Decl., ¶51.  Given the Parties' efforts over the last four years, there can be no question that counsel "'had a sound basis for measuring the terms of the settlement.'"  *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022).  These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Just.*, 688 F.2d at 625.

### 3.    Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Trial and Appeal

Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation."  Fed. R. Civ. P. 23(e)(2); *Churchill*, 361 F.3d at 575.  While Lead Plaintiff believes its claims have merit and that the Class would prevail on Defendants' summary judgment motion, it nevertheless recognizes the numerous risks and uncertainties in proceeding to summary judgment and trial.  In fact, securities class actions "'are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  As discussed below, the benefits conferred on Class Members by the Settlement far outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

### a.    The Costs and Risks of Summary Judgment, Trial, and Appeal Support Approval of the Settlement

To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the defendants were responsible for materially false and misleading statements.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Lead Plaintiff would be required to prove each of these elements to prevail, whereas Defendants would need only to succeed on one defense to defeat the entire Action.  Although Lead Plaintiff is confident in the

abilities of Lead Counsel to prove its case, the risk of loss was still real. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'"").  There are numerous examples of plaintiffs in securities class actions litigating for years only to lose at summary judgment and trial. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (summary judgment granted to defendants after eight years of litigation during which plaintiffs' counsel (Robbins Geller) worked over 100,000 hours representing approximately $40 million (in 2010 dollars)), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *see also* the accompanying Memorandum of Points and Authorities in Support of an Award of Attorneys' Fees and Expenses and Award to Class Representative Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), at 10-11 (citing examples of losses at summary judgment and trial).

Defendants have denied, and continue to deny, any liability in the case.  Moreover, they advanced several plausible arguments in their motions to dismiss disputing both liability and damages.  For instance, Defendants have denied that they made any material misstatements or omissions or engaged in any fraudulent scheme or that Lead Plaintiff has suffered any damages. Lead Counsel anticipates that Defendants would have continued to make these arguments and to continue challenging loss causation and damages, supported by expert testimony, on summary judgment, at trial, and on appeal.

### b.    The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

Although this case was thoroughly litigated, much work remained and even if Lead Plaintiff prevailed on summary judgment and at trial, it would have taken potentially years to resolve any resulting appeals. *See, e.g.*, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial); *Glickenhaus & Co. v. Household Int'l, Inc.*, Lead Case No. 1:02-cv-05893, ECF 1611, 2267 (N.D. Ill.) (granting final

approval of securities class action settlement seven years after a May 7, 2009 jury verdict for plaintiffs).

"By contrast, the Settlement provides . . . timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022). The Settlement at this juncture results in an immediate, substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case" – key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). The Settlement is a far better option for the Class.

### 4.    Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

Lead Plaintiff and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii). Pursuant to the Preliminary Approval Order, more than 137,900 Postcard Notices were emailed or mailed to potential Class Members and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*; and the website created for this Action contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *See generally* Murray Decl.

The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements. The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation, discussed further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[6]

---

[6]    Once Notice and Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation. *See* Stipulation, ¶5.4. These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*. *Id.*, ¶5.9. If there are any *de minimis* residual funds that are not feasible or economical to reallocate, Lead Plaintiff proposes that such funds be donated to the Council of Institutional Investors.

### 5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Memorandum, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount and expenses of $806,188.95, plus interest on both amounts. This fee request was fully disclosed in the Postcard Notice and Notice (Murray Decl., Exs. A (Postcard Notice) and B (Notice at ¶5)), approved by Lead Plaintiff (Fund Decl., ¶¶10, 11), and is consistent with the benchmark for attorneys' fee awards in this Circuit. *See* Fee Memorandum, §III.B.

### 6.    Rule 23(e)(2)(C)(iv): Other Agreements

The Parties have entered into a standard supplemental agreement to the Stipulation of Settlement as explained in the Stipulation (¶7.3) and Lead Plaintiff's preliminary approval memorandum. ECF 181 at 20. Importantly, the terms, including the termination threshold are properly kept confidential. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement).

### 7.    Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Assessment of the Settlement's Plan of Allocation "'is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'" *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008). The Plan of Allocation details how the Settlement proceeds will be distributed among Authorized Claimants and provides formulas for calculating the recognized claim of each Class Member based on each such Person's purchases of VMware Class A common stock during the Class Period and if or when they sold. It is fair, reasonable, and adequate because all eligible Class Members (including Lead Plaintiff) will be subject to the same formulas for distribution of the Settlement and each Authorized Claimant will receive his, her, or its *pro rata*

1    share of the distribution. *See, e.g.*, *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically,

2    each authorized claimant's share of the net settlement amount will be based on when the claimant

3    acquired and sold the subject securities. Accordingly, this factor also weighs in favor of final

4    approval.").

5    **C.    The Remaining Ninth Circuit Factors Are Satisfied**

6        **1.    Discovery Completed and Stage of the Proceedings**

7        The Parties reached the Settlement at an advanced stage of the Action, after discovery was

8    nearly complete, after a class had been certified, and as they were preparing to exchange expert

9    reports. Kelly Decl., ¶¶46, 47, 51. That discovery provided significant insight into the strengths and

10   challenges of the case, and the Parties had a thorough understanding of the arguments, evidence, and

11   potential witnesses that would inform summary judgment and the trial. *See id.*, ¶7. There can be no

12   question that Lead Plaintiff and Lead Counsel had sufficient information to evaluate the case and the

13   merits of the Settlement by the time it was reached. *See Foster v. Adams & Assocs., Inc.*, 2022 WL

14   425559, at *6 (N.D. Cal. Feb. 11, 2022) (finding "[p]laintiffs were 'armed with sufficient

15   information about the case' to broker a fair settlement" given extensive discovery, years of litigation,

16   and multiple settlement conferences). This factor strongly weighs in favor of final approval of the

17   Settlement.

18       **2.    Counsel Views This Good-Faith Settlement as Fair,
            Reasonable, and Adequate**

19

20       The Ninth Circuit recognizes that parties "'represented by competent counsel are better

21   positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

22   litigation.'" *Rodriguez*, 563 F.3d at 967. Thus, courts accord great weight to the recommendations

23   and opinions of experienced counsel. *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at

24   *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the

25   settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of

26   th[e] case and their extensive experience litigating prior . . . class action cases").

27       Lead Counsel has extensive experience representing plaintiffs in securities and other complex

28   class action litigation and has negotiated numerous substantial class action settlements across the

1  country.  Kelly Decl., ¶79.  As a result of this experience, and with the assistance of sophisticated

2  consultants and experts when appropriate, Lead Counsel possessed a firm understanding of the

3  strengths and weaknesses of the claims by the time the Settlement was reached, and based thereon,

4  Lead Counsel concluded that the Settlement is an outstanding result for the Class.

5  **3.  The Positive Reaction of Class Members to the Settlement**

6  While the deadline to object to the Settlement is March 10, 2025, to date, no objections have

7  been received.  Lead Plaintiff will address objections by Class Members, if any, in its reply papers.

8  Further, only one Class Member has opted out of the Class.  The Class's overwhelmingly positive

9  reaction to the Settlement to date supports final approval.  *See Foster*, 2022 WL 425559, at *6

10  ("[The] Court 'may appropriately infer that a class action settlement is fair, adequate, and reasonable

11  when few class members object to it.'").

12  **4.  The Settlement Amount**

13  The $102.5 million Settlement far exceeds the median securities settlement in terms of both

14  dollar amount and as a percentage of estimated damages.  As noted previously, the Settlement

15  represents approximately 10.7%-34% of the estimate of damages recoverable at trial.  This recovery

16  is many times the median percentage recovery (1.7%) for cases like this one with estimated damages

17  of between $600 and $999 million from January 2015 through December 2024.  *See* Edward Flores

18  and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*,

19  at 26, Fig. 23 (NERA Jan. 22, 2025), attached as Ex. D to the Kelly Declaration.  The Settlement

20  also far exceeds the median settlement value for securities class actions of $14 million in 2024.  *Id.*

21  at 23, Fig. 22.  The Settlement is also 13 times the amount which the SEC recovered from VMware

22  as a civil money penalty.  *See* n.2, above.

23  **5.  The Risk of Maintaining Class Certification**

24  Although the Court certified a litigation Class on July 2, 2024 (ECF 171), Defendants may

25  later have moved to decertify the Class or seek to shorten the Class Period.  Rule 23(c)(1) provides

26  that a class certification order may be altered or amended at any time before a decision on the merits.

27  This factors weighs in favor of approval.

28  *    *    *

1    In sum, Lead Counsel attained an excellent result for the Class.  The Court should find that

2  the Settlement is fair, reasonable, and adequate, and should grant final approval.

3  **IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

4    In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval of

5  the Plan of Allocation that the Court preliminarily approved on November 26, 2024.  ECF 188.  The

6  Plan of Allocation is considered separately from the fairness of the Settlement but is nevertheless

7  governed by the same legal standards: the plan must be fair and reasonable.  *See Class Plaintiffs v.*

8  *City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478,

9  at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a

10  reasonable, rational basis, particularly if recommended by experienced and competent counsel.'")

11  (alteration in original).  As noted, the Plan of Allocation here provides an equitable basis to allocate

12  the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable

13  Proof of Claim and Release and who have a recognized loss under the Plan of Allocation).

14  Individual claimants' recoveries will depend on when they bought VMware Class A common stock

15  during the Class Period and whether and when they sold their shares.  Authorized Claimants will

16  recover their proportional "*pro rata*" amount of the Net Settlement Fund.  This is the traditional and

17  reasonable approach to allocating securities settlements.  *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018

18  WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that reimburses class members

19  based on the extent of their injuries is generally reasonable.'").  To date there has been no objection

20  to the Plan of Allocation.  As a result, the Plan of Allocation is fair and reasonable and should be

21  approved.

22  **V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS**

23    A district court "must direct notice in a reasonable manner to all class members who would

24  be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

25  notice that is practicable under the circumstances, including individual notice to all members who

26  can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  The notice also must

27  describe "'''the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

28  investigate and to come forward and be heard.'''" *Rodriguez*, 563 F.3d at 962.  The PSLRA further

1   requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow

2   class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d

3   962, 969 (9th Cir. 2007).

4        The substance of the Notice satisfies Rule 23, the PSLRA, and due process.  The Claims

5   Administrator has emailed or mailed over 137,900 copies of the Court-approved Postcard Notice to

6   potential Class Members and their nominees who could be identified with reasonable effort.  *See*

7   Murray Decl., ¶13.  In addition, the Court-approved Summary Notice was published in *The Wall*

8   *Street Journal* and transmitted over *Business Wire*.  *Id.*, ¶14.  The Claims Administrator also

9   provided all information regarding the Settlement online through the Settlement website.  *Id.*, ¶16.

10  The Notice provides the necessary information for Class Members to make an informed decision

11  regarding the proposed Settlement, as required by the PSLRA.  The Notice further explains that the

12  Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely

13  Proofs of Claim and Release under the Plan as described in the Notice.  The notice program here

14  fairly apprises Class Members of their rights with respect to the Settlement, is the best notice

15  practicable under the circumstances, and complies with the Court's Preliminary Approval Order,

16  Rule 23, the PSLRA, and due process.  *See, e.g.*, *Fleming v. Impax Laby's Inc.*, 2022 WL 2789496,

17  at *5-*6 (N.D. Cal. July 15, 2022); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856,

18  at *4 (N.D. Cal. Nov. 21, 2016).

19  **VI.    CONCLUSION**

20       Lead Plaintiff and Lead Counsel achieved an outstanding settlement for the Class.  Lead

21  Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

22

23

24

25

26

27

28

1 | DATED:  February 24, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
THEODORE J. PINTAR
LAURIE L. LARGENT
LAURA ANDRACCHIO
SCOTT H. SAHAM
ASHLEY M. KELLY
TING H. LIU
STEPHEN JOHNSON


s/ Scott H. Saham
SCOTT H. SAHAM

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
tedp@rgrdlaw.com
llargent@rgrdlaw.com
landracchio@rgrdlaw.com
scotts@rgrdlaw.com
ashleyk@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Lead Counsel for Lead Plaintiff