ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
          – and –
SPENCER A. BURKHOLZ (147029)
THEODORE J. PINTAR (131372)
LAURIE L. LARGENT (153493)
LAURA ANDRACCHIO (187773)
SCOTT H. SAHAM (188355)
ASHLEY M. KELLY (281597)
TING H. LIU (307747)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
tedp@rgrdlaw.com
llargent@rgrdlaw.com
landracchio@rgrdlaw.com
scotts@rgrdlaw.com
ashleyk@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> VMWARE, INC., et al., <br><br> Defendants. | Case No. 5:20-cv-02182-EJD (VKD) <br><br> <u>CLASS ACTION</u> <br> LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO CLASS REPRESENTATIVE PURSUANT TO 15 U.S.C. §78u-4(a)(4), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:  March 31, 2025 <br> TIME:   9:00 a.m. <br> JUDGE: Honorable Edward J. Davila <br> CTRM:  4, 5th Floor |

4937-0156-0594.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND..........................................3

III.    THE REQUESTED FEE IS FAIR AND REASONABLE...................................3

        A.      A Reasonable Percentage of the Fund Is the Appropriate Method for
                Awarding Attorneys' Fees in Common Fund Cases...................................3

        B.      The Requested Fee Is Consistent with the Benchmark in the Ninth Circuit
                and Warrants Approval ................................................................................5

                1.      Lead Counsel Achieved an Exceptional Result for the Class.....................6

                2.      The Litigation Was Uncertain and Highly Complex ..................................7

                3.      The Skill Required and Quality of Work.....................................................9

                4.      The Contingent Nature of the Fee and the Financial Burden
                        Carried by Lead Counsel ..........................................................................10

                5.      Awards Made in Similar Cases Support the Fee Request..........................11

                6.      The Class's Reaction to Date Supports the Fee Request ...........................12

                7.      A Lodestar Crosscheck Confirms that the Requested Fee Is
                        Reasonable .................................................................................................13

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED ........................................................................................................15

V.      CLASS REPRESENTATIVE'S REQUEST FOR AN AWARD PURSUANT TO
        15 U.S.C. §78u-4(a)(4) IS REASONABLE .......................................................16

VI.     CONCLUSION....................................................................................................16

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Akins, et al. v. Facebook, Inc.*,
No. 23-3550, slip op. (9th Cir. Feb. 13, 2025)..................................................................6

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...........................................................................................7

*Andrews v. Plains All Am. Pipeline L.P.*,
2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ..........................................................6, 11

*Baird v. BlackRock Institutional Tr. Co.*,
2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ...................................................................5

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ...................................................................................16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..........................................................................................................4

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)............................................................7, 13

*Farrell v. Bank of Am. Corp., N.A.*,
827 F. App'x 628 (9th Cir. 2020) ...................................................................................13

*Fleming v. Impax Laby's Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022).......................................................6, 14, 16

*Fosbre v. Las Vegas Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017),
*aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
732 F. App'x 543 (9th Cir. 2018) ...................................................................................10

*Franco v. Ruiz Food Prods., Inc.*,
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)................................................................15

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................................9

*Hatamian v. Advanced Micro Devices, Inc.*,
2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)..................................................................12

LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND
AWARD TO CLASS REPRESENTATIVE, AND MEMORANDUM OF POINTS AND AUTHORITIES - 5:20-cv-02182-EJD (VKD)
4937-0156-0594.v1

- ii -

**Page**

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom. Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020) ...................................................................................... *passim*

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).............................................................................................................6

*In re Am.-Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014)....................................................................4

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)...................................................................13

*In re Amkor Tech. Inc. Sec. Litig.*,
  2009 WL 10708030 (D. Ariz. Nov. 19, 2009)..................................................................4, 9

*In re Apollo Grp., Inc. Sec. Litig.*,
  2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
  *rev'd*, 2010 WL 5927988 (9th Cir. June 23, 2010)................................................................8

*In re Apple Inc. Device Performance Litig.*,
  2023 WL 2090981 (N.D. Cal. Feb 17, 2023) ............................................................6, 9, 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................................................4, 5

*In re Broadcom Corp. Sec. Litig.*,
  2005 WL 8153006 (C.D. Cal. Sept. 12, 2005) ....................................................................6

*In re Broiler Chicken Antitrust Litig.*,
  2021 WL 5709250 (N.D. Ill. Dec. 1, 2021)........................................................................6

*In re Capacitors Antitrust Litig.*,
  2017 WL 9613950 (N.D. Cal. June 27, 2017)..............................................................4, 5, 14

*In re Capacitors Antitrust Litig.*,
  2023 WL 2396782 (N.D. Cal. Mar. 6, 2023)......................................................................6

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ......................................................................6

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021),
  *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ..............................................................14

**Page**

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ........................................................................................5

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........................................................................8

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ..............................................................11

*In re Lidoderm Antitrust Litig.*,
2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ...............................................................6

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
*aff'd*, 768 F. App'x 651 (9th Cir. 2019)........................................................................14

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) ...................................................................................4

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................4, 6, 7

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010)..............................................................................10

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...........................................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)............................................................................................5

*In re Tesla, Inc. Sec. Litig.*,
2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) .................................................................11

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)...............................................................................13

*In re Verifone Holdings, Inc. Sec. Litig.*,
2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) .............................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)........................................................ *passim*

**Page**

*In re Wash. Mut., Inc. Sec. Litig.*,
    2011 WL 8190466 (W.D. Wash. Nov. 4, 2011)....................................................................12

*Jaffe v. Household Int'l, Inc.*,
    2016 WL 10571774 (N.D. Ill. Nov. 10, 2016) ....................................................................11

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)........................................................................5

*McPhail v. First Command Fin. Plan., Inc.*,
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .......................................................................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)........................................................................................12

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................................15

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..............................................................................................13

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ....................................................................6

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013).......................................................................16

*Savani v. URS Pro. Sols. LLC*,
    2014 WL 172503 (D.S.C. Jan. 15, 2014) ............................................................................10

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ..............................................................................................10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................................................16

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ........................................................................5

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................................................4

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .......................................................................15

**Page**

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................................8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................................... *passim*

*Wing v. Asarco Inc.*,
  114 F.3d 986 (9th Cir. 1997) .................................................................................................9

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(4) ....................................................................................................................2, 16
  §78u-4(a)(6) ...........................................................................................................................4

**SECONDARY AUTHORITIES**

Edward Flores and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
  (NERA Jan. 22, 2025).............................................................................................................7

## NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that at 9:00 a.m. on March 31, 2025, in the courtroom of the Honorable Edward J. Davila, at the United States District Court, Northern District of California, Courtroom 4, 5th floor, 280 South 1st Street, San Jose, CA 95113, Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") will and hereby does respectfully move the Court for an order awarding attorneys' fees and providing for payment of litigation expenses and an award to lead plaintiff Eastern Atlantic States Carpenters Pension Fund ("Lead Plaintiff" or "Class Representative").

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Ashley M. Kelly in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Class Representative Pursuant to 15 U.S.C. §78u-4(a)(4) ("Kelly Declaration" or "Kelly Decl."), with attached exhibits, the Declaration of Spencer A. Burkholz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Class Counsel Decl."), all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply submission on March 24, 2025, after the March 10, 2025 deadline for Class Members to object to the motion for fees and expenses has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award to Lead Counsel in the amount of 25% of the Settlement Amount, plus all interest accrued thereon.

2.      Whether the Court should approve Lead Counsel's request for payment of $806,188.95 in litigation expenses and charges incurred by Lead Counsel in the Action, plus all interest accrued thereon.

3.      Whether the Court should award Lead Plaintiff Eastern Atlantic States Carpenters Pension Fund $4,375.00 pursuant to 15 U.S.C. §78u-4(a)(4) based on its representation of the Class.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

After over four years of hard-fought litigation, Lead Counsel secured a remarkable settlement of $102,500,000 on behalf of the Class (the "Settlement").  The all-cash Settlement represents an exceptional recovery – approximately 10.7%-34% of the estimate of damages recoverable at trial – and is many times greater (on a percentage recovery basis) than the median recoveries in securities class action cases of this size.  It is also 13 times the amount which the SEC recovered from VMware.[1]

At all times, Lead Counsel remained dedicated to achieving a result in the Class's best interest – and the Settlement would not have been achieved without Lead Counsel's tireless pursuit, skill, and relentless advocacy on behalf of the Class.[2]  In litigating this case, Lead Counsel expended substantial resources – over 26,660 hours in professional time and over $806,000 in expenses – all without any assurance of recovery.  As compensation for its efforts, Lead Counsel requests that the Court award attorneys' fees consistent with the Ninth Circuit's fee percentage benchmark of 25% of the Settlement Amount, plus the interest earned thereon.

---

[1]    *See In the Matter of VMware, Inc.*, Securities Act Release No. 11099, Exchange Act Release No. 95744, Accounting & Auditing Enforcement Release No. 4333, Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order (Sept. 12, 2022), at 9 (SEC order instituting cease and desist proceedings and order to pay $8 million civil money penalty), attached as Ex. C to the Kelly Declaration.

[2]    All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation of Settlement dated October 4, 2024 (ECF 181-2) and in Lead Plaintiff's Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Final Approval Memorandum"), filed herewith.

In addition to the exceptional recovery obtained for the Class, Lead Counsel's fee request is reasonable considering the extent of counsel's efforts and the *ex-ante* risks of this case. *See generally* Kelly Decl. Indeed, Lead Counsel conducted a thorough investigation, drafted several complaints, and litigated (and largely defeated) Defendants' motions to dismiss, paving the way for exhaustive fact discovery efforts, including Lead Plaintiff's motion to compel certain documents withheld on the basis of attorney-client privilege and other numerous fiercely contested discovery disputes. Lead Counsel, among other things, conducted the review and analysis of nearly 650,000 pages of documents from over a dozen VMware custodians, and issued 30 subpoenas to third-parties, which culminated in the receipt and review of approximately 175,000 additional pages of documents. During the course of the litigation, Lead Counsel spent many hours preparing for and taking 10 fact depositions and was preparing to take additional depositions when the Settlement was reached. Lead Counsel successfully moved for class certification and prepared to exchange expert reports from three experts on the areas of damages, loss causation, and insider trading.

A lodestar cross-check also confirms the reasonableness of the requested fee. The lodestar multiplier of 1.5 of Lead Counsel's time falls well within the range of multipliers awarded in the Ninth Circuit. The fee request is also supported by Lead Plaintiff, a sophisticated institution, a fact that is afforded significant weight in the analysis. *See* §III.B.6, *infra*; Declaration of Pete Tonia ("Fund Decl."), ¶¶10, 11, attached as Ex. A to the Kelly Declaration. Likewise, Lead Counsel's litigation expenses and charges of $806,188.95 (plus interest accrued thereon) should be awarded in full, as they were reasonably and necessarily incurred in the prosecution of the Action. Class Counsel Decl., Ex. C. Finally, the Class Representative should also be awarded its modest time and expenses as provided by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), in connection with its representation of the Class and its significant contribution to the result. 15 U.S.C. §78u-4(a)(4).

An estimated 137,925 Postcard Notices and 44 Claim Packages were provided to potential Class Members in accordance with the Preliminary Approval Order. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶13, attached as Ex. B to the Kelly Declaration. The Postcard Notice advised

potential Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, payment of litigation expenses in an amount not to exceed $950,000, and a PSLRA award to the Class Representative.  *See* Murray Decl., Exs. A (Postcard Notice) and B (Notice at ¶5).  The deadline set by the Court to object to the requested attorneys' fees and expenses has not yet passed, but, to date, no objections have been received. Kelly Decl., ¶82.[3]  Lead Counsel respectfully submits that the requested fee is fair and reasonable and that it should therefore be granted.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Lead Counsel has invested substantial time and resources in the prosecution of the Action, including investigating background facts, interviewing witnesses, drafting several complaints, briefing multiple rounds of motions to dismiss, conducting fact discovery, litigating discovery disputes, reviewing and analyzing approximately 825,000 pages of documents from Defendants and third parties, preparing for and taking 10 fact depositions, and working with experts in preparing to exchange three expert reports, all in furtherance of, and resulting in, the Settlement now before this Court.  Consistent with this District's Procedural Guidance for Class Action Settlements ("Northern District Guidelines"), relevant history and facts are set out in Lead Plaintiff's Final Approval Memorandum and the Kelly Declaration and are not repeated here.   *See* Northern District Guidelines, Final Approval, §2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions.  The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.").

## III.    THE REQUESTED FEE IS FAIR AND REASONABLE

### A.     A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

---

[3]     The deadline for the filing of objections is March 10, 2025.  Should any objections be received, Lead Counsel will address them in its reply papers, due on March 24, 2025.

fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[4]  Under the common fund doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019).  "'The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel.'" *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017).

Although courts have discretion to employ either the percentage of recovery or lodestar method (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)), the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases, *see, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002), and use of this method "appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  *See also In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 ("The percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class."); *In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (stating percentage-of-recovery method most appropriate to award attorneys' fees in securities class action).

The PSLRA also contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Am.-Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of

---

[4]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARD TO CLASS REPRESENTATIVE, AND MEMORANDUM OF POINTS AND AUTHORITIES - 5:20-cv-02182-EJD (VKD)
4937-0156-0594.v1

- 4 -

attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

The rationale for compensating counsel on a percentage basis in common fund cases is sound. "[C]ourts try to . . . [tie] together the interests of class members and class counsel" by "tether[ing] the value of an attorneys' fees award to the value of the class recovery. . . . The more valuable the class recovery, the greater the fees award. And vice versa." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013).

Use of the percentage-of-recovery method is particularly appropriate in common fund cases like this because "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *Baird v. BlackRock Institutional Tr. Co.*, 2021 WL 5113030, at *6-*7 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar crosscheck); *Vataj v. Johnson*, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (same). Conversely, the Ninth Circuit has recognized that the lodestar method creates the perverse incentive for counsel to "expend more hours than may be necessary on litigating a case." *Vizcaino*, 290 F.3d at 1050 n.5; *see also Bluetooth*, 654 F.3d at 942; *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'[I]n practice, the lodestar method is difficult to apply [and] time consuming to administer.'") (quoting *Manual for Complex Litigation (Fourth)* §14.121 (2004)).

**B.  The Requested Fee Is Consistent with the Benchmark in the Ninth Circuit and Warrants Approval**

Consistent with the Ninth Circuit's "benchmark" in common fund cases, Lead Counsel seeks a fee of 25% of the Settlement Fund. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) ("*Volkswagen* Fee Order"); *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *3 ("Courts in the Ninth Circuit applying the 'percentage of the fund' approach use a twenty-five percent benchmark."). Adjustments to the Ninth Circuit benchmark may be made upon consideration of the following factors:

> (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*Volkswagen* Fee Order, 2017 WL 1047834, at *1 (citing *Vizcaino*, 290 F.3d at 1048-52).

Though the 25% benchmark is the starting point, in fact, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047. Accordingly, Lead Counsel's 25% fee request is well within the range of (or indeed, below) percentage fees that this Court and other courts in this Circuit have awarded in other complex class actions of similar size. *See, e.g.*, *Akins, et al. v. Facebook, Inc.*, No. 23-3550, slip op. at 6 (9th Cir. Feb. 13, 2025) (affirming award of 25% on $725 million recovery); *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *16 (N.D. Cal. Feb 17, 2023) (awarding 26% fee in $310 million settlement) (J. Davila); *Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *4 (N.D. Cal. Sept. 26, 2023) (awarding 25% of $300 million settlement); *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *1-*2 (N.D. Cal. Mar. 6, 2023) (awarding 40% of $165,000,000 partial settlement, resulting in cumulative 31% award of total $604,550,000 settlement); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-*3 (N.D. Cal. Sept. 20, 2018) (awarding 33% of $104.75 million settlement); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of $576 million settlement); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *5 (C.D. Cal. Sept. 12, 2005) (awarding 25% of $150 million settlement). As discussed below, application of each of the enumerated factors confirms that the requested 25% fee, where no upward adjustment is sought, is fair and reasonable.

**1.    Lead Counsel Achieved an Exceptional Result for the Class**

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Fleming v. Impax Laby's Inc.*, 2022 WL 2789496, at *8 (N.D. Cal. July 15, 2022); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar.").

Here, against substantial risks, Lead Counsel obtained an exceptional recovery for the Class, both in terms of overall amount ($102,500,000) and as a percentage of the estimated recoverable damages at trial (10.7%-34%). While "[a] 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases," *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019), the Settlement goes well beyond that. This recovery is also many times the 1.7% median percentage recovery for cases settled with estimated damages of between $600 and $999 million from January 2015 through December 2024. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 26, Fig. 23 (NERA Jan. 22, 2025), attached as Ex. D to the Kelly Declaration. The Settlement is also 13 times the amount recovered by the SEC from VMware as a civil money penalty. *See* n.1, above. The outstanding result obtained for the Class here strongly supports Lead Counsel's fee request.

### 2.     The Litigation Was Uncertain and Highly Complex

The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13; *Rentech, Inc.*, 2019 WL 5173771, at *6 ("In general, securities fraud class actions are complex cases that are time-consuming and difficult to prove."). Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). For these reasons, in securities class actions, fee awards often exceed the 25% benchmark recognized in the Ninth Circuit. *Omnivision*, 559 F. Supp. 2d at 1047.

Lead Counsel assumed significant risk at every procedural step of the litigation. *See generally* Kelly Decl. Defendants sought outright dismissal of the Action through multiple motions to dismiss. Defendants challenged whether the alleged misrepresentations were actionable, that even

if actionable, whether they caused Lead Plaintiff's alleged losses, and that Lead Plaintiff suffered any legally cognizable damages. Kelly Decl., ¶¶55, 56, 75.

Obtaining the necessary discovery in order to prove its claims was also uncertain, as Defendants resisted producing certain categories of documents, including purportedly privileged materials related to the SEC investigation, in-house counsel's approval of the Company's backlog disclosure and outside counsel's investigative interview memoranda, among other documents. Kelly Decl., ¶¶42-45. Accordingly, the Parties had a number of discovery disputes which resulted in the filing of several discovery motions. Lead Counsel's diligence and pursuit of this discovery paid off as the Court ordered the production of certain of the disputed discovery. *Id.*, ¶45.

Even with this discovery, there was certainly no guarantee that Lead Plaintiff would be successful on summary judgment and at trial. The case would have turned largely on expert testimony concerning highly technical economic issues, including loss causation and the credibility of fact witnesses – many of whom remained employed by VMware. Defendants needed only to defeat one element of Lead Plaintiff's claims to prevail, and there was a significant risk the jury would agree with Defendants' experts and find no liability, no damages, or award far less than Lead Plaintiff sought to recover. *See, e.g.*, *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (Noting, in securities class action, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law. The outcome of that analysis is inherently difficult to predict and risky."). Throughout the duration of the litigation, Defendants raised numerous challenges disputing the falsity of their alleged misstatements and vigorously disputed (and continue to dispute) their scienter. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and difficult to establish at trial.").

And even if Lead Plaintiff survived summary judgment and obtained a favorable verdict at trial, it would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (granting motion for a judgment as a matter of law, overturning $277 million verdict in favor of plaintiffs based on insufficient evidence of loss causation), *rev'd*, 2010 WL 5927988 (9th Cir. June 23, 2010); *see also*

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (overturning $2.4 billion judgment and ordering new trial 13 years after case was commenced). There existed a significant risk that class-wide recoverable damages would have been far less than $102.5 million, including the risk of **no** recovery at all. *Volkswagen* Fee Order, 2017 WL 1047834, at *2 ("Class Counsel 'recognize there are always uncertainties in litigation[.]' It is possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit of its claims . . . .'") (alteration in original). And any recovery absent the Settlement "'would come years in the future and at far greater expense to the . . . Class.'" *Id.*

The $102.5 million Settlement, achieved in the face of these significant risks, amply supports the requested 25% fee award. *See, e.g.*, *Amkor*, 2009 WL 10708030, at *2 (approving fee award of 25% where class counsel had "borne all the ensuing risk").

### 3. The Skill Required and Quality of Work

The quality of Lead Counsel's representation further supports the reasonableness of the requested fee. Lead Counsel successfully and thoroughly litigated the case. Indeed, "the case withstood two motions to dismiss" and Lead Counsel thereafter "diligently developed the facts," including moving to compel discovery when necessary, "all of which was of great benefit to the Class." *Apple*, 2023 WL 2090981, at *14. Lead Counsel is a nationally recognized leader in securities class actions and complex litigation. *See* Kelly Decl., ¶54; Class Counsel Decl., Ex. G. The firm has a track record of trying cases, or settling cases at a premium. Clients retain Lead Counsel to benefit from its experience and resources in order to obtain the largest possible recovery for the class in question. Here, Lead Counsel's skill and experience brought about an exceptional result, further supporting the requested fee award.

The standing of opposing counsel should also be weighed because such standing reflects the challenge faced by Lead Counsel. *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997); *Apple*, 2023 WL 2090981, at *14. Defendants chose well-known and highly capable representation by a team of experienced attorneys from Debevoise & Plimpton LLP, a well-regarded law firm. The Debevoise firm spared no effort or expense on behalf of Defendants in their zealous defense. Lead Counsel's ability to obtain a favorable result for the Class while litigating against this formidable

defense firm and its well-financed clients further evidences the quality of Lead Counsel's work and weighs in favor of awarding the requested fee.

### 4.     The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *Volkswagen* Fee Order, 2017 WL 1047834, at *3; *Apple*, 2023 WL 2090981, at *15 (finding contingent nature of the representation supports upward adjustment from benchmark).   This "practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Volkswagen* Fee Order, 2017 WL 1047834, at *3.  "This incentive is especially important in securities cases." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014).  There have been many class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. *Supra*, §III.B.2.  For example, in *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Robbins Geller prosecuted, the court granted summary judgment to defendants after eight years of litigation, during which plaintiff's counsel incurred over $7 million in out-of-pocket expenses and worked over 100,000 hours, representing a lodestar of approximately $40 million (in 2010 dollars). *See Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878 (D. Nev. Jan. 3, 2017) (another Robbins Geller case in which summary judgment granted to defendants after more than six years of litigation where plaintiff's counsel incurred over $2.3 million in expenses and worked over 38,600 hours, representing lodestar of approximately $21.4 million), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018).  In another Ninth Circuit PSLRA case, after a lengthy trial involving securities claims against Tesla, the jury reached a verdict in defendants' favor – despite the Court previously granting summary judgment on certain

elements in the ***plaintiff's*** favor, evincing the strength of the claims. *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *Tesla*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023); *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict).

Even in cases with successful outcomes, Lead Counsel has to wait years to be compensated. As noted, in *Jaffe v. Household Int'l, Inc.*, 2016 WL 10571774, at *2 (N.D. Ill. Nov. 10, 2016), Lead Counsel litigated for 14 years before reaching a settlement. Because the fee in this matter was entirely contingent, the only certainty was that Lead Counsel would have to commit to years of work without pay, knowing that there would be no fee without a successful result and that such a result would be realized only after considerable effort and expense. In fact, Lead Counsel invested over 26,660 hours for a total lodestar of $16,976,314.50 and incurred substantial expenses in prosecuting this case largely through fact discovery and class certification. Additional (uncompensated) work in connection with the Settlement and claims administration already has been undertaken and will be required going forward. Any fee award has always been contingent on the result achieved and on this Court's discretion. The only certainty was that there would be no fee without a successful result. Lead Counsel committed significant resources of both time and money to vigorously prosecute this Action, and successfully brought it to a highly favorable conclusion for the Class's benefit. *See generally* Kelly Decl. The contingent nature of counsel's representation thus supports approval of the requested fee. *See Plains All Am.*, 2022 WL 4453864, at *3 (in awarding 33% fee on $165 million settlement, court found "the substantial risks borne by Class Counsel in pursuing this class action for seven years with no guarantee of recovering fees or litigation expenses also militates in favor of finding the requested fee award reasonable").

### 5.    Awards Made in Similar Cases Support the Fee Request

Lead Counsel's fee request is also supported by awards made in similar cases. As discussed in §III.B, the 25% benchmark fee request is within the range of (if not below) fee percentages awarded in comparable settlements. As further addressed in §III.B.7., the resulting multiplier of 1.5 on Lead Counsel's lodestar is also well within the range of lodestar multipliers applied in cases of this nature.

### 6.    The Class's Reaction to Date Supports the Fee Request

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See, e.g.*, *Volkswagen* Fee Order, 2017 WL 1047834, at *4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested fees"); *In re Wash. Mut., Inc. Sec. Litig.*, 2011 WL 8190466, at *2 (W.D. Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses requested were filed"). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

Class Members were informed in the Postcard Notice and Notice that Lead Counsel would move the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and for payment of litigation expenses not to exceed $950,000. Class Members were also advised of their right to object to the fee and expense request, and that such objections are to be filed with the Court no later than March 10, 2025. While this deadline has not yet passed, to date, ***not a single*** objection has been received. Should any objections be received, Lead Counsel will address them in its reply papers. Finally, Lead Plaintiff has approved the percentage sought here. Fund Decl., ¶¶10-11. Lead Plaintiff's approval supports granting the requested fee. *See Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request "reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors").

**7.    A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable**

To assess the reasonableness of a fee awarded under the percentage-of-the-fund method, courts may (but are not required to) cross check the proposed award against counsel's lodestar. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit").  When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen* Fee Order, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "'it is well established that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records"'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'" *Rentech, Inc.*, 2019 WL 5173771, at *10 (second alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  In this case, the lodestar method demonstrates the reasonableness of the requested fee.  As detailed in the accompanying Class Counsel Decl., over 26,660 hours of attorney and paraprofessional time were expended prosecuting the Action for the benefit of the Class.  The hours spent to obtain the results are more than reasonable.  As detailed in the Kelly Declaration, there is no question that the hours expended were necessary.

Lead Counsel's hourly rates, too, are reasonable. In fact, Lead Counsel's rates received judicial approval by Judge Gilliam in *Fleming*, 2022 WL 2789496, at *9 (approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding Robbins Geller's "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation")[5]. Lead Counsel's lodestar, derived by multiplying the hours spent on the Action by each attorney and litigation professional by their current hourly rates, is $16,976,314.50.

The requested fee of 25% represents a multiplier of 1.5 on Lead Counsel's lodestar, which is comfortably within the range of lodestar multipliers courts in this Circuit regularly approve. *See, e.g.*, *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *6 (noting, "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7-*9 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 768 F. App'x 651 (9th Cir. 2019); *see generally Vizcaino*, 290 F.3d at 1050-52, 1051 n.6 (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (noting "over 80% of multipliers fall between 1.0 and 4.0" and awarding fee where multiplier was 4.3). As more fully explained in the Kelly Declaration, given the risk undertaken by Lead Counsel and the results achieved for the Class, a multiplier of 1.5 is reasonable here.

*     *     *

---

[5] By comparison, in complex litigation certain defense firms against whom we litigate bill out their associates at $1,180 per hour. *See* https://www.latimes.com/california/story/2025-02-14/law-firm-1975-an-hour-defend-against-palisades-fire-lawsuits.

Each of the relevant factors supports an award of attorneys' fees of 25% of the Settlement Amount – the Ninth Circuit benchmark. Accordingly, this fee request is reasonable and should be approved.

## IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel further requests an award in the amount of $806,188.95 from the common fund for litigation expenses incurred in prosecuting and resolving the Action on behalf of the Class.[6] *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) ("Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class."). The amount sought is less than the $950,000 amount published in the Postcard Notice and Notice, to which no Class Member has objected to date. *See* Murray Decl., Exs. A (Postcard Notice) and B (Notice at ¶5). The expenses sought are also of the type that are routinely charged to hourly paying clients and, therefore, are properly paid out of the common fund. *Hefler*, 2018 WL 6619983, at *16 ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'"); *Vincent*, 2013 WL 621865, at *5 (granting award of costs and expenses for "'three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses'"); *see also*

---

[6]    These include expenses associated with, among other things, experts and consultants, service of process, online legal and factual research, travel, and mediation. A large component of Lead Counsel's expenses is for the costs of experts and consultants, all of whom were qualified and necessary to litigate this Action. Courts in this Circuit regularly approve reimbursements for expert fees. *See, e.g.*, *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (noting expert fees are among the "types of fees . . . routinely reimbursed"); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (granting expense reimbursement to class counsel and noting "itemized costs relating to . . . expert fees" were "reasonable litigation expenses").

*Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at \*9-\*10 (C.D. Cal. July 9, 2013); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013).

## V.    CLASS REPRESENTATIVE'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Class Representative seeks an award of $4,375.00 pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class, as detailed in the Fund Decl.  Under the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class.  *See* 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement).  Factors to consider include, "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation'" among others.  *Staton*, 327 F.3d at 977 (ellipse in original).

Consistent with the Northern District Guidelines, Class Representative has submitted a declaration herewith setting forth the time and effort it spent monitoring the Action and directing Lead Counsel, including discussing litigation strategy, collecting and reviewing materials for discovery, and discussing settlement negotiations and case filings with Lead Counsel, all of which provided value to the Class.  *See* Fund Decl., ¶¶5-7.  Class Representative was actively involved through every step of the Action, and accordingly, requests an award of $4,375.00 pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class.  *Fleming*, 2022 WL 2789496, at \*10 (approving awards for time spent working with counsel "reviewing documents, providing input into the case's prosecution, and engaging in meetings, phone conferences, and correspondence with Lead Counsel"); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at \*8 (S.D. Cal. Mar. 30, 2009) (noting "requested reimbursement is consistent with payments in similar securities cases").

## VI.    CONCLUSION

Lead Counsel obtained an exceptional result for the Class.  Based on the foregoing, Class Representative and Lead Counsel respectfully request that the Court: (i) award Lead Counsel

attorneys' fees of 25% of the Settlement Amount and payment of $806,188.95 in litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund; and (ii) an award to Class Representative of $4,375.00, as permitted by the PSLRA.

DATED:  February 24, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
THEODORE J. PINTAR
LAURIE L. LARGENT
LAURA ANDRACCHIO
SCOTT H. SAHAM
ASHLEY M. KELLY
TING H. LIU
STEPHEN JOHNSON


       s/ Scott H. Saham
       SCOTT H. SAHAM

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
tedp@rgrdlaw.com
llargent@rgrdlaw.com
landracchio@rgrdlaw.com
scotts@rgrdlaw.com
ashleyk@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Lead Counsel for Lead Plaintiff