ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
          – and –
SPENCER A. BURKHOLZ (147029)
THEODORE J. PINTAR (131372)
LAURIE L. LARGENT (153493)
LAURA ANDRACCHIO (187773)
SCOTT H. SAHAM (188355)
ASHLEY M. KELLY (281597)
TING H. LIU (307747)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
tedp@rgrdlaw.com
llargent@rgrdlaw.com
landracchio@rgrdlaw.com
scotts@rgrdlaw.com
ashleyk@rgrdlaw.com
tliu@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LAMARTINA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> VMWARE, INC., et al., <br><br> Defendants. | Case No. 5:20-cv-02182-EJD (VKD) <br><br> CLASS ACTION <br><br> DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF MOTIONS FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO CLASS REPRESENTATIVE PURSUANT TO 15 U.S.C. §78u-4(a)(4) <br><br> DATE:    March 31, 2025 <br> TIME:     9:00 a.m. <br> JUDGE: Honorable Edward J. Davila <br> CTRM:  4, 5th Floor |

4921-5602-1010.v1

I, ASHLEY M. KELLY, declare as follows:

1.       I am an attorney duly licensed to practice before all courts of the State of California. I am a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Class Counsel"), and counsel for Eastern Atlantic States Carpenters Pension Fund ("Lead Plaintiff" or "Class Representative").  I have been actively involved in the prosecution and settlement of this action since June 2020 and am closely familiar with its proceedings (the "Litigation").[1]  I have personal knowledge of the majority of the matters set forth herein based upon my active participation in all material aspects of this Litigation.  As to the remaining matters, I have reviewed our litigation files and consulted with other attorneys and support staff who have worked on this case.  I could and would testify competently to the matters set forth herein if called upon to do so.

2.       I submit this declaration in support of Lead Plaintiff's motion for approval of: (a) the $102,500,000.00 all-cash settlement reached on behalf of the Class (the "Settlement"); (b) the proposed Plan of Allocation (the "Plan"); (c) Class Counsel's application for an award of attorneys' fees and expenses; and (d) an award to Class Representative in accordance with 15 U.S.C. §78u-4(a)(4).

## I.    PRELIMINARY STATEMENT

3.       This declaration is not intended to detail every event that occurred since the commencement of this Litigation in 2020.  Rather, it provides the Court with key highlights of the Litigation, the extensive fact discovery, the events leading up to the Settlement, and the bases upon which Class Counsel and Class Representative recommend the Settlement's approval.

4.       The $102,500,000.00 proposed Settlement is the culmination of over four years of tireless, hard-fought litigation.  As detailed below, Class Counsel zealously prosecuted Lead Plaintiff's and the Class's claims at every stage of the Litigation and defended these claims against

---

[1]    Unless otherwise noted, all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated October 4, 2024 (the "Stipulation").  ECF 181-2.

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)                                                                          - 1 -
4921-5602-1010.v1

Defendants' repeated attacks.  The Settlement is estimated to represent 10.7% to 34% of the estimate of damages recoverable at trial, and is an excellent result for the Class as it falls significantly above the typical range of recoveries.

5.    As detailed herein, proceeding to a jury trial presented substantial risks.  In agreeing to settle the Litigation after extensive fact discovery and on the eve of expert discovery, Class Representative and Class Counsel were fully informed about the various strengths of their case, as well as the substantial risks they would face at summary judgment and trial and, if successful, during the appellate process.  In opting to settle, Class Representative and Class Counsel concluded that settlement on the terms they obtained was in the Class's best interest and in fact was a remarkable recovery for the Class.  The Class Representative remained well-informed throughout the Litigation and settlement negotiations and ultimately approved the Settlement.  *See generally* Declaration of Pete Tonia ("Tonia Decl."), attached hereto as Ex. A.

6.    Class Counsel achieved the proposed Settlement after four years of litigation, during which time Class Counsel, *inter alia*:

- successfully moved for appointment of Eastern Atlantic States Carpenters Pension Fund as Lead Plaintiff and Robbins Geller as Lead Counsel in July 2020;[2]

- conducted an extensive investigation, including the review of publicly available information, trading data, and interviews of confidential witnesses, culminating in the filing of the detailed Consolidated Complaint for Violations of the Federal Securities Laws ("Amended Complaint") on September 18, 2020 (ECF 50);

- prepared extensive briefing in 2020 and early 2021 in opposition to Defendants' motion to dismiss the Amended Complaint;

- conducted further investigation, which yielded additional detail surrounding key meetings attended by Individual Defendants and other high-level Company insiders, insider stock sales, and the booking system and processes utilized by VMware to input and track executed sales, and added new allegations in the Second Amended Consolidated Complaint for Violations of the Federal Securities Laws

---

[2]    Eastern Atlantic States Carpenters Pension Fund was then known as the Northeast Carpenters Pension Fund.

("Second Amended Complaint") (ECF 63) following the Court's Order Granting in Part and Denying in Part Motion to Dismiss with Leave to Amend (ECF 60);

- opposed Defendants' subsequent motion to dismiss the Second Amended Complaint and extensively prepared for oral argument concerning same;

- submitted supplemental briefing in further opposition to Defendants' motion to dismiss the Second Amended Complaint following the U.S. Securities and Exchange Commission's ("SEC") September 12, 2022 Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("SEC Order") (attached hereto as Ex. C), and submitted a redlined version of the Second Amended Complaint to account for the SEC Order;

- successfully opposed Defendants' motion to dismiss the Second Amended Complaint with regard to Lead Plaintiff's §§20(a) and 20A claims, as well as certain of its §10(b) and Rule 10b-5 claims and filed the Third Amended Consolidated Complaint for Violations of the Federal Securities Laws ("Third Amended Complaint") (ECF 85);

- conducted extensive party and third-party fact discovery, including: (a) reviewing over a half a million pages (more than 100,000 documents) from over a dozen custodians associated with VMware; (b) taking 10 fact witness depositions; (c) responding to Defendants' discovery requests; (d) issuing subpoenas to 30 third parties, which yielded the production of an additional nearly 25,000 documents (approximately 175,000 pages); and (e) crafting dozens of Requests for Production of Documents, Requests for Admission, and Interrogatories and reviewing Defendants' responses to same;

- identified, reviewed, and produced documents in response to Defendants' requests for production of documents;

- achieved certification, in July 2024, of a class of all persons who purchased the publicly traded Class A common stock of VMware during the period from August 24, 2018, through February 27, 2020, inclusive (the "Class Period"), and were damaged thereby (the "Class");

- moved successfully for appointment of Eastern Atlantic States Carpenters Pension Fund as Class Representative and Robbins Geller as Class Counsel;

- engaged in multiple lengthy and contentious discovery-related disputes and Court hearings concerning the scope of fact discovery and document production, Defendants' assertions of attorney-client privilege and work product protections, and several other issues discussed below; and

- consulted with experts and prepared to exchange expert reports on a variety of issues (including loss causation, damages, SEC disclosures, and insider trading).

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

- 3 -

7.    The substantial discovery and motion practice outlined herein informed Class Counsel of the case's many strengths, but also its potential weaknesses.  Class Counsel considered this information in determining the best course of action for the Class.

8.    The proposed Settlement of $102,500,000.00 cash is the direct product of Class Representative's and Class Counsel's efforts over the past four years, including those described in this declaration.   The Settlement is also the product of the parties' numerous arm's-length negotiations and mediation sessions facilitated by the Honorable Layn R. Phillips (Ret.), one of the nation's foremost mediators, over the course of several months.   These negotiations were conducted by experienced counsel with an intimate understanding of the case and ultimately resulted in a mediator's proposal that was accepted by both sides just prior to the parties' exchange of expert reports.

9.    Class Counsel also seeks approval of the proposed Plan of Allocation, which Class Counsel submits is fair and reasonable.  Class Counsel drafted the Plan based on consultation with and the analysis of Lead Plaintiff's damages and loss causation expert.  As further described below and in the Notice, the Plan provides formulas for calculating the recognized claim of each Class Member that submits a Proof of Claim and Release based on when the claimant purchased and/or sold their VMware Class A common stock on the open market.   Each Authorized Claimant, including the Class Representative, will receive a *pro rata* distribution pursuant to the Plan, and the Class Representative will be subject to the same formula for distribution of the Net Settlement Fund.  Importantly, the Plan does not treat the Class Representative nor any other Class Member preferentially.

10.    Class Counsel prosecuted the Litigation on a wholly contingent and "at risk" basis, advancing and incurring substantial litigation expenses, charges, and costs over the years.  Class Counsel shouldered substantial risk in doing so, and, to date, have not received any compensation for its efforts.  Accordingly, in consideration of Class Counsel's extensive efforts on behalf of the Class, Class Counsel is applying for an award of attorneys' fees in the amount of 25% of the Settlement Amount and an award of $806,188.95 in litigation expenses, and any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.

11. As set forth in the accompanying Memorandum of Points and Authorities in Support of an Award of Attorneys' Fees and Expenses and Award to Class Representative Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee Memorandum"), the requested fee is within the range of fees awarded in large Private Securities Litigation Reform Act of 1995 ("PSLRA") securities class action settlements, is in accord with the Ninth Circuit's presumptively reasonable 25% benchmark rate, and is justified in light of the substantial benefits conferred on the Class, the risks undertaken, the quality of representation, and the nature and extent of the legal services Class Counsel performed in this complex litigation.  To date, no Class Member has objected.  Class Counsel submits that the fee application is fair to the Class under all applicable standards and warrants the Court's approval.

12. Class Counsel also seeks an award in the amount of $806,188.95 (plus interest accrued thereon) for expenses and charges reasonably and necessarily committed to the prosecution of the Litigation over the last five years.  These expenses include: (a) the substantial fees and expenses of experts and consultants whose services were required for the successful prosecution and resolution of this case, which settled just as the parties were preparing to exchange expert reports; (b) the costs of conducting a number of fact depositions, which included court reporter and videographer fees and travel expenses; (c) photocopying, imaging, shipping, and managing a database of over 900,000 pages of documents;[3] (d) online factual and legal research; and (e) mediation expenses.

13. Class Representative seeks an award in the amount of $4,375.00 pursuant to 15 U.S.C. §78u-4(a)(4), directly relating to its representation of the Class, including time spent discussing litigation strategy, case development, and settlement negotiations with Class Counsel. Class Representative actively monitored the Litigation and supervised Class Counsel.  Class Representative also dedicated time and resources to discovery, which included gathering

---

[3]    Over 825,000 pages of the 900,000 pages of documents Robbins Geller hosted on its discovery platform were produced in the Litigation by Defendants and third parties.

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

- 5 -

documents and information responsive to Defendants' discovery requests. After detailed discussions with Class Counsel, the Class Representative approved the Settlement.

## II. HISTORY OF THE ACTION

14. The following summarizes the principal events during the Litigation and the legal services Class Counsel provided to Class Representative and the Class.

### A. Appointment of Lead Plaintiff and Lead Counsel

15. On March 31, 2020, William Lamartina filed a class action complaint, asserting violations of the federal securities laws, and seeking to recover on behalf of a class of investors who purchased or otherwise acquired VMware securities between March 30, 2019 and February 27, 2020. ECF 1. Pursuant to the PSLRA, on June 1, 2020, Eastern Atlantic States Carpenters Pension Fund (then known as Northeast Carpenters Pension Fund) moved for appointment as lead plaintiff and to appoint Robbins Geller as Lead Counsel. ECF 17. One other movant also sought appointment as lead plaintiff and for approval of lead counsel. ECF 23. That movant subsequently filed a notice of non-opposition to Eastern Atlantic States Carpenters Pension Fund's motion. ECF 33. On July 20, 2020, the Court appointed Eastern Atlantic States Carpenters Pension Fund as Lead Plaintiff and appointed Robbins Geller as Lead Counsel. ECF 45.

### B. Lead Plaintiff's Factual Investigation, the Amended Complaint, and Successful Opposition to Defendants' Motion to Dismiss

16. Following the appointment of Eastern Atlantic States Carpenters Pension Fund as Lead Plaintiff and Robbins Geller as Lead Counsel, Robbins Geller conducted an extensive factual investigation consisting of the review of VMware's earnings conference call transcripts, VMware's public filings with the SEC, trading data, analyst reports, and news articles, covering the span of several years. Robbins Geller also interviewed percipient witnesses believed to have first-hand knowledge of the facts of the case and the alleged fraud and submitted Freedom of Information Act requests to the SEC pertaining to the SEC's investigation into the Company's backlog. Following that extensive investigation, Lead Plaintiff filed the Amended Complaint on September 18, 2020. ECF 50.

17. The Amended Complaint asserted violations of §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and included additional scienter allegations, including a number of Class Period insider stock transactions. Defendants filed their motion to dismiss the Amended Complaint on November 17, 2020, asserting a number of arguments, including that Lead Plaintiff failed to plead (1) an actionable misstatement or omission; (2) scienter; and (3) loss causation. *See* ECF 51. Defendants also challenged Lead Plaintiff's §§20(a) and 20A claims. Lead Plaintiff opposed the motion. ECF 54. On September 10, 2021, the Court issued an Order Granting in Part and Denying in Part Motion to Dismiss with Leave to Amend, noting that while Lead Plaintiff's manipulated backlog theory may be viable, additional particularity was needed to sustain those claims. ECF 60 at 12. The Court also determined that Lead Plaintiff's loss causation allegations were sufficient "enough to give rise to a plausible inference that Defendants' disclosures were at least partially responsible for Lead Plaintiff's and other putative class members' economic losses." *Id*. at 28.

18. On October 8, 2021, following its continued investigation, Lead Plaintiff filed the Second Amended Complaint, adding additional detail and allegations, including allegations pertaining to dozens of key meetings attended during the Class Period by Individual Defendants and other executives, temporal proximity of those key meetings to insider stock sales, Individual Defendants' motives for inflating backlog, and allegations concerning the processes by which VMware fulfilled (and held) executed orders. ECF 63. On November 5, 2021, Defendants again moved for dismissal, asserting, *inter alia*, that "[w]ith the exception of statements of historic fact about backlog and predictions of future performance, all of VMware's statements" were non-actionable puffery. ECF 64 at 14. Defendants again challenged the sufficiency of Lead Plaintiff's scienter allegations and its loss causation theory. *Id.* at 14-19.

19. On September 12, 2022, while Defendants' motion to dismiss the Second Amended Complaint was pending, the SEC issued the SEC Order and instituted an $8 million civil money penalty against VMware following the SEC's investigation to VMware's backlog and associated disclosures. *See* ECF 77. The Court thereafter permitted the parties to provide additional briefing on Defendants' motion to dismiss concerning the effect of the SEC Order on the allegations in the

Second Amended Complaint. ECF 81. On March 14, 2023, Lead Plaintiff filed its Supplemental Memorandum in Further Opposition to Defendants' Motion to Dismiss and submitted a redlined version of the Second Amended Complaint incorporating allegations related to the SEC Order. ECF 82, 82-1. A week later, Defendants filed their Supplemental Memorandum in Support of Motion to Dismiss the Second Amended Complaint. ECF 83.

20. After the supplemental briefing, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Consolidated Complaint, holding that Lead Plaintiff had adequately pled its §§20(a) and 20A claims, as well as certain of its §10(b) and Rule 10b-5 claims, finding that "Lead Plaintiff has plausibly stated with the requisite particularity a theory that Defendants enacted a practice that allowed them to understate a current quarter's revenue in favor of a future quarter in order to 'smooth' revenues." ECF 84 at 16. The Court also ordered Lead Plaintiff to file the redlined Second Amended Complaint as a Third Amended Complaint. *Id.* at 31. Lead Plaintiff filed the Third Amended Complaint on April 6, 2023. ECF 85.

21. The Third Amended Complaint alleges that during the Class Period (August 24, 2018, through February 27, 2020), Defendants made materially false or misleading statements in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, which caused the price of VMware stock to trade at artificially inflated prices. The Third Amended Complaint also alleges violations of §20(a) of the Exchange Act against the Individual Defendants, and for violations of §20A of the Exchange Act against defendant Gelsinger due to the contemporaneity of his insider sales with Lead Plaintiff's Class Period purchases of VMware stock.

22. The Third Amended Complaint alleges that Defendants deceptively recorded VMware's sales that were not needed to meet current period guidance throughout fiscal year ("FY") 2019 as backlog so that the revenue from those sales could be recognized in subsequent quarters as opposed to the quarter in which they were actually made. The Third Amended Complaint further alleges that Defendants treated the inflated backlog – which was nearly half a billion dollars at the end of FY 2019 – as a slush fund, drawing down on it throughout FY 2020 rather than recognizing the revenue in FY 2019 when the sales were executed. The Third Amended

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

Complaint alleges that by deferring revenue to FY 2020, VMware was able to continue to deliver double-digit earnings growth in FY 2020, despite operational challenges affecting the Company that year, including an industry-wide shift away from license products.

23.     The Third Amended Complaint further alleges that when the true facts regarding the alleged misstatements and omissions were revealed through a series of partial disclosures throughout FY 2020, the artificial inflation dissipated from VMware's share price, causing the Class to suffer damages.  The Third Amended Complaint alleges that the truth was fully and finally made known on February 27, 2020, when the Company revealed that: (1) VMware's total backlog had declined 96% from its peak just one year prior; (2) VMware poorly managed the industry-shift to subscription and SaaS products; and (3) VMware could not meet Q4 2020 or FY 2020 revenue guidance issued just three months prior.  The same day, VMware also announced that in December 2019, the SEC launched an investigation into the Company's backlog and associated accounting and disclosures, on the heels of the sudden resignation of the Company's Chief Accounting Officer.

24.     On April 20, 2023, Defendants filed their Answer to the Third Amended Complaint (the "Answer") (ECF 86), and the parties thereafter began formal fact discovery.

**C.     Lead Plaintiff Successfully Obtains Class Certification**

25.     In the Answer, Defendants substantially denied the Third Amended Complaint's allegations and raised a number of affirmative defenses.  ECF 86.  The parties exchanged initial disclosures on May 15, 2023.  On May 26, 2023, the parties filed a joint case management statement setting forth their positions concerning the timing and scope of discovery and proposals concerning case scheduling.  ECF 96.

26.     On June 8, 2023, the Court held an initial case management conference and subsequently issued a Case Management Order setting forth deadlines for Lead Plaintiff's motion for class certification, fact and expert discovery, dispositive motion briefing, and the trial setting conference. ECF 103.  The parties subsequently sought, via joint stipulation, a modification of the case management order to include deadlines for substantial completion of Defendants' document production, Defendants' opposition to Lead Plaintiff's motion for class certification, and Lead

Plaintiff's reply in support of same. ECF 120. The Court entered an Order amending the Case Management Order to reflect the parties' agreement. ECF 122.

27. Class Counsel drafted and filed a motion for class certification and for the appointment of Class Representative and approval of Class Counsel on January 16, 2024. ECF 132. In the motion, Class Counsel detailed how the requirements for class certification under Fed. R. Civ. P. 23 were readily satisfied. In particular, Class Counsel described how the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) were met, in addition to the superiority and predominance mandates posed by Rule 23(b). In answering the Rule 23(b) inquiry, Class Counsel addressed the fraud-on-the-market presumption of reliance, and in so doing, described how the market for VMware's Class A common stock was efficient during the Class Period. That undertaking required Class Counsel's thorough review and consideration of all five of the *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) factors – which courts routinely consider in addressing class certification. *Id.* Class Counsel also filed the expert report of Steven P. Feinstein, Ph.D., CFA, in connection with the motion for class certification. ECF 132-2. In addition to the *Cammer* factors, Dr. Feinstein also gave thoughtful consideration to the additional factors included in *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001), before ultimately opining that the market for VMware Class A common stock was efficient during the Class Period. *Id.* Dr. Feinstein also opined that class-wide damages could be calculated using a common damages methodology.

28. On March 15, 2024, Defendants filed a Response to Lead Plaintiff's motion to certify the Class, indicating that Defendants did not oppose Lead Plaintiff's motion for class certification. ECF 154.

29. On June 27, 2024, the Court heard oral argument on Lead Plaintiff's motion to certify the Class, and on July 2, 2024, the Court issued its Order Granting Motion for Class Certification ("Class Certification Order") and appointing Lead Plaintiff as Class Representative and appointing Robbins Geller as Class Counsel. ECF 171. Settlement was achieved just weeks after the Court's Class Certification Order.

**D.    Lead Plaintiff Sought Significant Discovery from Defendants and Third Parties**

30.    Fact discovery in this Litigation was thorough.  Shortly after defeating Defendants' motion to dismiss the Second Amended Complaint (and filing the redlined version as the Third Amended Complaint), Class Counsel drafted and propounded on Defendants its first set of document requests, which were later followed by additional document requests and requests for admission and interrogatories.  Class Counsel served a total of four sets of requests for production of documents on VMware and Individual Defendants Patrick Gelsinger and Zane Rowe, seeking document discovery in response to 71 separate requests.

31.    Class Counsel crafted the requests, which were tailored to seek various categories of documents necessary for proving the alleged fraud and its impact on VMware's share price. The requests sought documents concerning a variety of relevant topics, including the SEC's investigation, the Company's backlog and its backlog disclosure, revenue recognition, and Individual Defendants' insider transactions.

32.    The parties conferred extensively over each set of requests, negotiating over such matters as Defendants' objections to the requests, the temporal and subject matter scope of document discovery with respect to each of the requests, relevant production custodians and search terms, Defendants' assertions of privilege, work product protections, and the contours of discovery based on the Federal Rules of Civil Procedure and Lead Plaintiff's claims and Defendants' defenses.  The parties also disputed whether text message or other electronic data must be produced, with Class Counsel successfully negotiating for the inclusion of responsive text messages.  Given the scope of the issues on which discovery was sought, as well as the disputes that arose regarding relevancy, burden, and privilege, from the outset the discovery process required extensive coordinated efforts and expenditures of substantial time and money on Class Counsel's part.

33.    Class Counsel also served 38 requests for admission on Defendants seeking not only substantive admissions, but also admissions concerning hearsay and authenticity of documents produced by VMware in this case in preparation for trial.  Class Counsel also crafted

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

- 11 -

and served 25 interrogatories on each of the three defendants, which resulted in additional negotiations and a discovery dispute concerning the sufficiency of Defendants' responses, including as to the investigation Defendants performed in order to respond to Lead Plaintiff's interrogatories as required by the Federal Rules of Civil Procedure.

34.     Class Counsel also spent a significant amount of time understanding the scope of the Company's prior productions to the SEC, and the sufficiency of those productions in both substance and timing, in light of Lead Plaintiff's document requests.  Class Counsel also negotiated for the expedited production of documents previously produced to the SEC, including presentations and correspondence between VMware (and its counsel) and the SEC during the course of the SEC's investigation.  The parties thereafter negotiated the form of production and sources of potentially relevant electronically stored information, which required Class Counsel to identify relevant custodians and areas for supplemental discovery beyond the SEC production in both scope and timeframe.  The parties also spent considerable time negotiating the terms of a protective order.

35.     As a result of Lead Plaintiff's discovery requests and efforts, Defendants made 18 rolling productions over a 13 month period (June 2023 through July 2024).  To effectively prosecute this complex action, Class Counsel organized a team of skilled attorneys to assist with the document review and discovery efforts.  Class Counsel's team of attorneys endeavored to review and analyze all documents produced for use in advancing the claims in this Litigation.  To that end, Class Counsel undertook to identify documents that proved (or undermined) Lead Plaintiff's allegations and identified additional documents and sources of relevant discovery (including additional custodians) to obtain from Defendants.  Given the nature of the allegations, including those concerning the treatment of and accounting for backlog and revenue recognition, Class Counsel also had its in-house forensic accounting team review and analyze dense financial presentations, spreadsheets, and communications.

36.     In addition to requests for production to Defendants, Class Counsel prepared and propounded document request subpoenas on 30 non-parties in an effort to obtain additional documentary evidence of the alleged fraud.  These non-parties included former employees of

VMware, the Company's auditor, PricewaterhouseCoopers LLP, the SEC, and various analysts covering VMware's common stock. Class Counsel diligently worked to identify the non-parties most likely to possess relevant information, drafted the document requests, and located and served the non-parties. Class Counsel then negotiated the scope of document productions with each non-party and reviewed the extensive information those non-parties produced.

37. Defendants also served a dozen document requests on Lead Plaintiff. In responding to Defendants' requests, Class Counsel worked closely with Lead Plaintiff in identifying, reviewing, and producing to Defendants documents and information responsive to Defendants' requests. Class Counsel also formulated responses and objections to Defendants' requests, and engaged in numerous written and telephonic conferrals with Defendants regarding various discovery issues.

38. In all, over 125,000 documents (encompassing over 825,000 pages) were produced in this Litigation by the parties and third-parties.

39. This universe of documentary evidence proved critical in Class Counsel's preparation for the 10 fact witness depositions taken by Class Counsel between February and June 2024, and the preparation of additional depositions that was underway at the time the Settlement was achieved. The deponents in this matter included Individual Defendants Patrick Gelsinger and Zane Rowe, and various current and former VMware executives and employees, including one key witness located in London, England. The parties also engaged in extensive correspondence, telephonic conferences, and written submissions concerning the scope and timing of Lead Plaintiff's deposition of the Company itself pursuant to Federal Rule of Civil Procedure 30(b)(6).

40. Each of the 10 fact depositions Class Counsel took required extensive preparation on Class Counsel's part. Class Counsel capably and efficiently reviewed and analyzed large volumes of documents in compressed timeframes, while preparing to take a host of fact witness depositions on a variety of topics concerning the Company's practices concerning backlog, Defendants' knowledge of those practices, and the circumstances surrounding the SEC's investigation into VMware's backlog and associated disclosures. Class Counsel's preparation likewise included review and analyses of a number of insider transactions, Rule 10b5-1 trading

plans, and consideration of Individual Defendants' possession of material non-public information as of the time of the execution of Rule 10b5-1 trading plans and the transactions themselves.

41. Class Counsel's preparation included spending months searching for, identifying, and analyzing documentary evidence that could be used during depositions or otherwise utilized in preparing for them, preparing witness files, and reviewing thousands of pages of testimony from the SEC's investigation.

**E. Class Counsel Litigated Multiple Discovery Disputes and Vigorously Pursued Additional Discovery on Behalf of the Class**

42. A number of fact discovery disputes arose between the parties, requiring extensive written correspondence, countless telephonic conferrals, and days of negotiations between the parties. Throughout the course of fact discovery, VMware produced a number of privilege logs, which required Class Counsel to devote substantial time reviewing and analyzing hundreds of rows of data to ascertain the propriety of VMware's privilege assertions. Numerous discovery motions were ultimately filed, requiring the Court to evaluate the sufficiency of VMware's privilege assertions.

43. The discovery disputes throughout the Litigation primarily concerned: (1) VMware's voluntary disclosure of purportedly privileged and/or work product protected materials to the SEC during the pendency of the SEC's investigation into VMware's backlog, and the scope of waiver concerning: (a) in-house counsel's drafting and approving of the Company's backlog disclosure; (b) in-house counsel's approval of Individual Defendants' insider transactions and consideration of possession of material non-public information at the time of those transactions; (c) VMware's outside counsel's investigative interview memoranda; and (d) various affirmative defenses asserted by Defendants during the course of the SEC investigation and in this Litigation (ECF 105); (2) the timing and scope of Lead Plaintiff's Rule 30(b)(6) deposition of VMware (ECF 115); and (3) VMware's assertion of attorney-client privilege over portions of communications produced in this Litigation by a third-party and former employee of VMware (ECF 116).

44.     These disputes required Class Counsel to research, analyze, and craft various arguments, including those related to "sword and shield" and other equitable justifications for production of withheld documents based on Defendants' state of mind and various affirmative defenses, including an informal advice of counsel defense, the scope and potential for subject matter waiver and exceptions to attorney-client privilege and work product protections, and the parties' obligations under the Federal Rules of Civil Procedure to produce information that support the claims and defenses at issue.

45.     Magistrate Judge DeMarchi held a hearing on the parties' attorney-client privileged/work product protection dispute on November 14, 2023, and on January 16, 2024, held a telephonic hearing concerning VMware's assertion of privilege over certain portions of documents produced by its former employee.  Following the November 14, 2023 hearing, on January 26, 2024, Lead Plaintiff filed a formal motion to compel Defendants to produce documents previously withheld as privileged and/or otherwise protected and to add certain of VMware's in-house counsel as custodians for discovery purposes.  ECF 137.  Defendants opposed the motion, and Lead Plaintiff filed a reply brief.  ECF 144, 146.  On June 17, 2024, Magistrate Judge DeMarchi issued an Order Re Plaintiff's Motion to Compel Production of Documents Withheld as Privileged, and Motion to Seal.  ECF 165.  Though Magistrate DeMarchi declined to extend subject matter waiver of attorney-client privilege to withheld communications concerning the drafting of the Company's backlog disclosure, the Court agreed that Lead Plaintiff was entitled to discovery concerning in-house counsel's conclusions that Individual Defendants did not have access to material non-public information at the time of relevant transactions (*i.e.*, "pre-clearance review"), and ordered VMware to produce non-privileged documents in its in-house counsel's custodial files.

**F.      The Parties Settled on the Eve of the Deadline for Expert Reports**

46.     The Court's October 3, 2023 Case Management Order set forth the deadlines by which the parties were to complete fact and expert discovery and file dispositive motions.  ECF 103.  At the time the Settlement was achieved, fact discovery was complete (aside from a handful of depositions) and the parties were working toward exchanging initial expert reports.

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

- 15 -

47. In addition to the expert report of Dr. Feinstein submitted with Class Counsel's motion to certify the Class, Class Counsel anticipated expert discovery would encompass a wide range of areas, including loss causation, damages, SEC disclosures, and insider transactions. Class Counsel engaged various experts to consult and opine on those issues, and spent considerable time with those experts with the expectation that expert reports would be produced on August 2, 2024 with expert depositions to follow shortly thereafter. Settlement was achieved just two weeks prior to that exchange, when Class Counsel was well aware of the strengths and weaknesses of proceeding to trial.

## III. THE SETTLEMENT

48. The Settlement of $102,500,000.00 was the result of extensive arm's-length negotiations between the parties. The Settlement unquestionably provides the Class with a substantial benefit and eliminates the significant risks of a jury trial. Class Counsel believes that the Settlement is fair, reasonable, and adequate and an excellent result for Class Members, considering the risk of recovering much less, or even nothing, with a dispositive decision at summary judgment, or after a jury trial. Further, even if a verdict in favor of Lead Plaintiff was obtained and ultimately upheld on appeal, this post-trial process would have taken years and substantially delayed any recovery for the Class.

### A. Reaching the Settlement

49. The parties engaged the Honorable Layn R. Phillips (Ret.) in direct settlement discussions during the course of the Litigation. Counsel appeared in-person and over Zoom mediation sessions and convened multiple additional teleconferences with Judge Phillips over the course of the Litigation.

50. The parties attended an in-person mediation session on March 1, 2024. In advance of that session, Class Counsel drafted and provided Judge Phillips a comprehensive mediation statement and presentation outlining the alleged fraud, citing relevant testimony and various documents Defendants had produced in discovery which supported Class Counsel's claims. Defendants, meanwhile, submitted their own mediation statement, emphasizing what they perceived to be the strengths of their case and the weaknesses in Class Counsel's case. Class

Counsel also prepared its views on the merits of the Litigation and the estimated damages incurred by the Class.

51.     Though the parties' initial mediation session on March 1, 2024 was unsuccessful in resolving the Litigation, the parties continued to have telephonic and email exchanges with Judge Phillips regarding a potential resolution amid ongoing fact discovery and depositions.  On July 19, 2024, the parties attended a videoconference mediation session with Judge Phillips.  Following a detailed evidentiary presentation, including deposition testimony and key evidence obtained in discovery, the mediation session resulted in a "mediator's proposal" to settle the Litigation for $102.5 million in cash, which the parties accepted.  The July 19, 2024 session came at a time when the parties had the benefit of more complete fact discovery (with the exception of a few remaining depositions) and the parties were preparing to exchange expert reports.

52.     While on July 19, 2024, the case was settled in principal, Class Counsel continued meeting-and-conferring with counsel for Defendants, facilitated by Judge Phillips, to negotiate additional terms of the settlement.  That negotiation process took several weeks, and required zealous advocacy by Class Counsel to obtain the best possible settlement terms for the Class.  Those terms were finalized over the coming weeks.

53.     Through that arm's-length process, the parties achieved the Stipulation of Settlement, which was filed along with its exhibits on October 10, 2024.  ECF 181-2.  That same day, Class Counsel filed its motion for preliminary approval of the Settlement.  ECF 181.  The Court held a preliminary approval hearing on November 22, 2024, and on November 26, 2024, the Court issued an Order Preliminarily Approving Settlement and Providing for Notice, granting preliminary approval of the parties' Stipulation of Settlement, approving the form and manner of notice to the Class, and scheduling the final approval hearing for March 31, 2025.  ECF 188 (the "Preliminary Approval Order").

**B.      Reasons for the Settlement**

54.     Class Representative and Class Counsel both strongly endorse the Settlement. Class Representative is a sophisticated institutional investor who has actively overseen the prosecution of this Litigation since 2020.  Class Counsel specializes in complex securities

litigation and is highly experienced in such litigation. *See* accompanying Declaration of Spencer A. Burkholz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Class Counsel Declaration"), Ex. G. Based on their experience and intimate knowledge from litigating this case for four years, Class Counsel and Class Representative together determined that the Settlement is in the best interest of the Class.

55. An all cash payment of $102,500,000.00 represents a significant recovery for the Class in light of the opportunities to limit, or dispose of completely, the case that were still available to Defendants through summary judgment, trial, or appeal. Defendants have denied and continue to deny the claims, contentions, and allegations made by Lead Plaintiff in the Litigation. They have expressly denied and continue to deny that they have violated the federal securities laws, or have otherwise misled investors as alleged. Defendants have denied and continue to deny the allegations that any of the Defendants made any material misstatements or omissions or engaged in any fraudulent scheme, and that any member of the Class has suffered damages resulting from the conduct alleged. Defendants also maintain that they have meritorious defenses to the claims asserted.

56. Class Counsel faced numerous risks throughout the Litigation, including up to the date they agreed to the proposed settlement. One such risk concerned the amount of damages that could be recovered at trial. Class Counsel anticipated offering an expert on market efficiency, loss causation, and damages at trial. However, even assuming Class Counsel prevailed at trial, a jury could have awarded much less than the Class's estimated total damages, or no damages at all. Under prevailing case law, damages under §10(b) may be reduced or eliminated if a portion (or all) of the damages are attributable to causes other than the misstatements or omissions. In this case, Defendants repeatedly contended that the alleged fraud did not cause the alleged stock price declines, and thus the Class's losses. Defendants undoubtedly planned to press this defense at trial. Indeed, based on its experience, Class Counsel anticipated that Defendants would offer their own damages and loss causation expert to testify that there was no evidence that the alleged fraud caused any portion of VMware's stock price to decline for one or more of the corrective disclosure dates, or that alternatively, that only a portion of the decline was attributable to the alleged fraud.

57.     In addition to challenging loss causation and damages at trial, Class Counsel expected Defendants to present evidence that Defendants' alleged misstatements and omissions were not materially false or misleading.  Through the duration of the Litigation, Defendants also maintained that the alleged scheme was not a fraud at all – that VMware publicly disclosed the amount and composition of its backlog each quarter, and that investors could readily determine whether reported revenue was driven by new sales or backlog.  Defendants have also challenged the applicability of the SEC Order in this Litigation, and have argued that the SEC Order actually undercuts Lead Plaintiff's theory of fraud.  Defendants have also sought to distinguish between the allegations here and the SEC's findings concerning the sufficiency of VMware's backlog disclosure.  Defendants have also repeatedly asserted that loss causation could not be established because quarterly reports of declining backlog were not "corrective" in that they did not reveal that backlog had been improperly inflated as Lead Plaintiff alleged, and thus would not have caused any of Lead Plaintiff's (or the Class's) losses.

58.     Lead Plaintiff also faced considerable challenges in demonstrating Defendants' scienter, even with regard to Individual Defendants' insider transactions, which Defendants claim were preapproved by counsel.  While Lead Plaintiff believed it would have been able to support its claims regarding scienter with persuasive evidence and expert testimony at summary judgment and/or trial, it is impossible to predict the Court's or jury's reactions, interpretations, and inferences gleaned from the evidence and testimony concerning Defendants' stock sales and state of mind.  Indeed, the SEC Order, which corroborated Lead Plaintiff's allegations, did not require a finding of scienter.  Class Counsel expected Defendants to rely heavily on these and other arguments at trial, posing a risk that one or more of those arguments would gain traction with a jury and result in a verdict in Defendants' favor.

59.     The fact that many of the fact witnesses retained relationships with one or more Defendants, were represented by Defendants' counsel, or in the case of Patrick Gelsinger and Zane Rowe, were Defendants themselves, posed additional considerable risk should the Litigation proceed to trial.

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

- 19 -

60.     While Defendants did not oppose Lead Plaintiff's motion for class certification, there remained the possibility that Defendants would seek to decertify the Class at a later time. The Settlement eliminates these and other risks, enabling the Class to promptly obtain a sizeable recovery, while avoiding continued litigation and the unpredictability of a jury trial that could potentially diminish the Class's opportunity for recovery.

## IV.     THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

61.     The successful prosecution of this Litigation required Class Counsel and its para-professionals to perform more than 26,660 hours of work and incur $806,188.95 in expenses in the prosecution of this Action over the course of four years, as detailed in the accompanying Class Counsel Declaration, filed herewith.

62.     Based on Class Counsel's extensive efforts on behalf of the Class, including those described herein, Class Counsel is applying for compensation from the Settlement Fund on a percentage basis in the amount of 25% of the Settlement Amount, and for $806,188.95 in litigation expenses and charges, plus interest at the same rate and for the same time as that earned on the Settlement Fund.  In addition, Class Representative seeks an award in the amount of $4,375.00, pursuant to 15 U.S.C. §78u-4(a)(4), based on its representation of the Class.

63.     For the reasons set forth herein and in the Fee Memorandum, Class Counsel and Class Representative respectfully submit that the application for fees and expenses described above should be granted.

### A.     Application for Attorneys' Fees

#### 1.     The Requested Fee of 25% of the Settlement Amount Is Fair and Reasonable

64.     For its extensive efforts litigating this action and achieving the substantial monetary Settlement on behalf of the Class, Class Counsel is applying for compensation from the Settlement Fund on a percentage basis.  As set forth in the accompanying Fee Memorandum, the percentage method is the appropriate method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances, is supported by public

policy and the PSLRA, has been recognized as appropriate by the United States Supreme Court for cases of this nature, and represents the prevailing trend in the Ninth Circuit.

65.    The fact Class Counsel was able to obtain such an exceptional result for the Class supports the requested fee.  As explained in the Fee Memorandum, the $102,500,000.00 all cash Settlement represents approximately 10.7% to 34% of estimated damages recoverable at trial and is many times greater (on a percentage recovery basis) than the median percentage recovery for cases settled with estimated damages of between $600 and $999 million from January 2015 through December 2024.  *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 26, Fig. 23 (NERA Jan. 22, 2025), attached hereto as Ex. D.

66.    A 25% fee is fair and reasonable for attorneys' fees in common fund cases such as this, is consistent with the benchmark rate of 25% that courts in the Ninth Circuit find presumptively reasonable, and is well within the range of the percentages typically awarded in securities class actions in the Ninth Circuit.  *See* Fee Memorandum, §III.B.

### 2.    The Complexity and Risk Inherent in the Litigation

67.    The requested fee is also reasonable in light of the various risks Class Counsel faced over the years, as well as the complexity of the Litigation.

68.    The Litigation was highly complex, both procedurally and substantively, which rendered the path to resolution time-consuming, extremely challenging, and fraught with risk.  As set forth above, Class Counsel vigorously prosecuted the Class's claims for four years against a top-tier law firm with significant resources to defend the case.  In doing so, Class Counsel engaged in substantial briefing of complex legal and factual issues on, *inter alia*, motions to dismiss, jointly submitted discovery disputes and a formal motion to compel, and Lead Plaintiff's motion for class certification.  Class Counsel also undertook substantial consultations with various experts in preparation for the upcoming summary judgment motion and ultimately trial.

69.    Class Counsel conducted an extensive pre-filing investigation, filed a comprehensive Amended Complaint, Second Amended Complaint, and Third Amended Complaint, engaged in complex document discovery and discovery disputes, and deposed 10 fact

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

witnesses. The Litigation settled on the eve of the exchange of expert reports, only after Class Counsel already overcame a stream of complex legal and factual challenges, some of which could have proven case dispositive.

70. The requested fee is also reasonable considering the substantial risks Class Counsel faced. Defendants were given various opportunities to chip away at, or defeat entirely, the Class's claims, including at the pleadings stage in 2021-23 and class certification stage in 2024. Summary judgment and expert discovery were also on the horizon, which would have afforded Defendants further opportunity to challenge Lead Plaintiff's claims. There also remained the possibility that Defendants would later challenge the suitability of class action treatment.

71. Jury trials are notoriously unpredictable, and Class Counsel expected no shortage of risks at trial. As discussed above, Class Counsel expected Defendants to present to the jury a variety of defenses, a lineup of friendly witnesses, and highly qualified experts. Moreover, Class Counsel knew that Defendants had to defeat only a single element of the Class's §10(b) claim to prevail. Further, even if Class Counsel prevailed in proving fraud at trial, a jury could have awarded damages that paled in comparison to the damages Class Counsel sought. Finally, any favorable verdict could have been subjected to years of appeals or ultimate reversal.

72. In light of the uncertain nature and prolonged extent of the Litigation, the complexity of the factual and legal issues presented at all stages of the Litigation, the substantial risks that Class Counsel overcame at the pleading, class certification and fact discovery phases and perceived risks Class Counsel expected through the expert discovery, summary judgment, and pretrial phases of the Litigation, and the other factors described in the accompanying Fee Memorandum, Class Counsel submits that the requested 25% fee is fair, reasonable, and should be approved.

### 3. The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel

73. Class Counsel undertook and prosecuted this Litigation on a wholly contingent basis. At the outset in 2020, Class Counsel knew they were embarking on complex and expensive litigation with no guarantee of compensation for the time, resources, and effort they poured into

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

- 22 -

this case over its four-year lifespan. Accordingly, Class Counsel fully assumed the risk of an unsuccessful result and has received no compensation to date for services rendered or the significant expenses incurred in litigating this action.

74. In undertaking the responsibility for prosecuting the Litigation, Class Counsel assured that at all times, sufficient attorney resources were dedicated to advancing the Class's claims over the years, and that sufficient funds were available to advance the expenses required to zealously pursue such complex litigation. Class Counsel received no compensation and, in total, incurred $806,188.95 in litigation expenses in prosecuting this Litigation for the benefit of the Class.

75. As discussed above, this case had significant risk factors concerning liability, causation, and damages. Lead Plaintiff's success was by no means assured, as both sides claimed the evidence supported their assertions. There was no guarantee that Lead Plaintiff would succeed in convincing the Court or a jury that the statements made by Defendants during the Class Period were false, or, if such statements were found to be false, that they were material, or if they were false and material, that they were made with scienter, or that there were substantial damages. Indeed, Defendants have adamantly denied liability and are represented by experienced and very capable defense counsel. Success here hinged on Lead Plaintiff's ability to win challenging arguments on every element of the causes of action. Were this Settlement not achieved, Lead Plaintiff inevitably faced years of costly and risky litigation against Defendants, with ultimate success far from certain.

76. Class Counsel also shouldered the risk that no recovery would be achieved after years of hard fought litigation. Class Counsel knows from experience that success in contingent-fee litigation is never assured, and that the commencement of a securities class action in no way guarantees a recovery. Instead, it takes diligence, commitment, and years of tireless work by skilled counsel to develop the facts, theories, and evidence necessary to prevail on the merits. The Class's claims could have been dismissed at the pleadings stage. Instead, its claims survived

Defendants' several motions to dismiss or challenged at class certification prior to settling. Each step forward for the Class was a result of Class Counsel's vigorous and unwavering efforts and litigation expertise.

77. Courts have repeatedly found that having experienced and able counsel enforce the securities laws promotes the public interest. Private enforcement of the federal securities laws can occur only if private plaintiffs – particularly institutional investors like Class Representative – can obtain some parity in representation to that which is available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, while accounting for the enormous risks inherent in prosecuting securities class actions on a contingent-fee basis to the degree of success shown here.

78. Class Counsel will continue to faithfully fulfill its duties to the Class following final approval and throughout the distribution process. Class Counsel has a long history of specializing in securities fraud class actions and other complex civil litigation, including the efficient and timely distribution of the proceeds of settlements and judgments, and is acutely familiar with its obligations to discharge its duties to the Class until distribution is completed.

### 4. The Standing and Expertise of Class Counsel

79. Class Counsel is among the most experienced and skilled securities litigation law firms in the field, as illustrated by Class Counsel's firm biography attached as Exhibit G to the Class Counsel Declaration. Indeed, Class Counsel has consistently obtained significant recoveries for defrauded investors in this District and others, including (among many others) in: *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) (recovering in excess of $7.2 billion for investors); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.) (largest securities class action settlement following a trial: $1.575 billion); *In re Am. Realty Cap. Props., Inc.*, No. 1:15-mc-00040 (S.D.N.Y.) (recovering $1.025 billion for investors); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.) (recovering $1.21 billion); *In re UnitedHealth Group, Inc. PSLRA Litig.*, No. 06-cv-1691 (D. Minn.) (recovering over $925 million); *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314 (N.D. Cal.) (recovering $809.5 million); *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio) (recovering $600 million); *In*

*re HealthSouth Corp. Sec. Litig.*, No. cv-03-BE-1500-S (N.D. Ala.) (obtaining a combined recovery of $671 million); *In re Citigroup Inc. Sec. Litig.*, No. 07 civ. 9901 (S.D.N.Y.) ($590 million settlement); *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033 (N.D. Cal.) ($490 million settlement); *Purple Mountain Trust v. Wells Fargo & Co.*, No. 18-cv-03948 (N.D. Cal.) ($300 million settlement); *In re Barrick Gold Sec. Litig.*, No. 1:13-cv-03851 (S.D.N.Y.) ($140 million settlement); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519 (D.N.J.) ($164 million settlement); *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122 (D. Kan.) ($131 million settlement); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-6324 (D. Minn.) ($85 million settlement).

80.    The quality of work Class Counsel provided in attaining the Settlement should also be evaluated by considering the quality of opposing counsel in this Litigation.  Over the course of the Litigation, Defendants were well represented by a team of experienced attorneys from Debevoise & Plimpton, a well-regarded law firm.  Faced with knowledgeable, experienced, and zealous opposing counsel, Class Counsel was nonetheless able to develop a strong case, advance largely through discovery, and successfully persuade Defendants to settle the action for $102,500,000.00.

### 5.    The Class's Reaction to the Settlement

81.    The Postcard Notice and Notice advised the Class that Class Counsel intended to request an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, for payment of litigation expenses reasonably incurred not to exceed $950,000 plus interest, and for an award to Class Representative (pursuant to 15 U.S.C. §78u-4(a)(4)).  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, Exs. A (Postcard Notice) and B (Notice at ¶5), attached as Ex. B hereto.  The Notice provides Class Members until March 10, 2025, to submit objections to Class Counsel's fee and expense application.

82.    While the time to object to the fee and expense application has not passed, to date, no Class Member has objected to the fee request.

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)    - 25 -
4921-5602-1010.v1

**B.     Application for Litigation Expenses, Charges, and Costs**

83.     In addition to fees, Class Counsel requests $806,188.95 for expenses, charges, and costs reasonably and necessarily incurred in prosecuting the Class's claims over the past five years. Class Counsel respectfully submits that this amount is appropriate, fair, and reasonable and should be approved.

84.     Since 2020, Class Counsel has known they may never recover any of the expenses they incurred in prosecuting this case. Class Counsel also understood that, even assuming the case was ultimately successful, an award of expenses would not compensate them for the lost use of the funds they had dedicated to this Litigation. Accordingly, Class Counsel was motivated to, and did, take steps to minimize expenses where practicable without jeopardizing the vigorous and efficient prosecution of this Litigation.

85.     As set forth in the Class Counsel Declaration, the expenses, charges, and costs incurred were necessary and appropriate in light of the complex nature of the action and were associated with, among other things, hiring experts and consultants, service of process, reporting services for depositions, travel, online legal and factual research, trial preparation, and mediation.

86.     Class Representative also seeks an award in the amount of $4,375.00, pursuant to 15 U.S.C. §78u-4(a)(4), for its time and expenses directly relating to its representation of the Class. In addition to monitoring the developments in the Litigation, Class Representative dedicated time and resources to gathering documents and information responsive to Defendants' discovery requests, reviewed and approved case filings, and participated in settlement negotiations. *See* Tonia Decl., attached hereto as Ex. A.

**V.     CONCLUSION**

87.     In light of the $102,500,000.00 cash Settlement obtained, the substantial risks Class Counsel faced, the exceptional quality of Class Counsel's work, the contingent nature of the requested fee, and the substantial complexity of the case, as described above and in the accompanying memoranda in support of its motions, Class Representative and Class Counsel respectfully submit that the Court should: (a) approve the Settlement and Plan of Allocation as fair, reasonable, and adequate; (b) approve Class Counsel's application for an award of attorneys'

fees and expenses; and (c) approve the award to Class Representative for its time and expenses pursuant to 15 U.S.C. §78u-4(a)(4).

*    *    *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of February, 2025, at San Diego, California.

ASHLEY M. KELLY

DECLARATION OF ASHLEY M. KELLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL - 5:20-cv-02182-EJD (VKD)
4921-5602-1010.v1

- 27 -